# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN KLOSTERMAN,
    Appellant/Plaintiff,

**RECEIVED**

MAR 11 2026

KELLY L. STEPHENS, Clerk

Case No. 26-3149

V.

RICHARD BOYDSTON, et al.,
    Appellees/Defendants.

---

*On Appeal from the United States District Court for the Southern District of Ohio Case No. 1:25-cv-00312-SJD-KLL*

---

## APPELLANT'S NOTICE OF SUPPLEMENTAL EVIDENCE
## RE: OHIO PUBLIC RECORDS ACT REQUEST AND
## HCLRC'S OBSTRUCTIVE RESPONSE

---

Appellant John Klosterman ("Appellant"), proceeding pro se, respectfully submits this Notice of Supplemental Evidence to advise the Court of significant developments bearing directly on the issues in this appeal, specifically HCLRC's continuing pattern of obstruction and concealment of records documenting the fraudulent disposition of Appellant's property portfolio.

**I. THE PUBLIC RECORDS REQUEST**

On March 6, 2026, Appellant served an Ohio Public Records Act request pursuant to R.C. § 149.43 upon Philip Denning, Vice President of the Hamilton County Land Reutilization Corporation ("HCLRC" or "The Port"), demanding production of all records of

communications between HCLRC personnel and court-appointed receivers manager Richard Boydston/Konza LLC. (See Exhibit A, attached hereto.)

This request was not speculative. Each record demanded is specifically documented in Boydston's own legal billing invoices submitted to the Hamilton County Court of Common Pleas in Case No. A-1905588. These billing entries establish, with date-and-time specificity, no fewer than 50 separate communications between Boydston/Konza LLC and HCLRC personnel—principally Kelley Allesee and Philip Denning—spanning February 2019 through August 2023.

The billing records further document three separate ex parte communications between Boydston and Alexis Royse, a Hamilton County court employee, totaling $1,330 in billed fees—communications that were never disclosed to Appellant and that constitute improper ex parte contact by a court-appointed fiduciary.

## II. HCLRC'S RESPONSE: OBSTRUCTION IN REAL TIME

On March 10, 2026—four days after receiving the request—Kelley Allesee, HCLRC's Senior Real Estate Counsel, responded on behalf of HCLRC. (See Exhibit B, attached hereto.) Her response is notable for what it reveals:

First, Allesee states HCLRC will "determine which records may be responsive." This framing signals an intent to narrow production through selective interpretation, despite the request targeting specifically identified records documented in Boydston's billing invoices.

Second, Allesee cites State ex rel. Wadd v. City of Cincinnati, 81 Ohio St. 3d 50, 53 (1998), for the "reasonable time" standard and invokes the need for "legal review." This

signals HCLRC's intent to claim exemptions—likely attorney-client privilege or deliberative process—over communications between a public agency and a court-appointed receivers manager, Mr. Boydston, not Konza, LLC the receiver regarding the disposition of a citizen's property in a public receivership proceeding. Such communications are quintessentially public records.

Third, and most critically, Allesee states HCLRC will determine "if any such responsive documents exist." This Court should mark this language carefully. HCLRC is preemptively laying the foundation to claim it possesses no records of literally dozens of documented communications. If HCLRC ultimately claims no responsive records exist, only two possibilities follow:

> (a) HCLRC destroyed records documenting the disposition of Appellant's $3.5 million property portfolio—constituting spoliation of evidence in active federal litigation; or
>
> (b) HCLRC confirms its own December 8, 2025 admission in state court proceedings that Lentine's record keeping is "woefully deficient" and "intentionally designed to conceal"—The same can now be said of HCLRC. An admission that itself establishes consciousness of guilt and corroborates Appellant's RICO allegations.

## III. RELEVANCE TO THIS APPEAL AND PENDING MOTIONS

This development is directly relevant to Appellant's pending Motion to Add HCLRC, Laura Brunner, and Kelley Allesee as Federal Defendants. The Court should note:

**1.** Allesee personally responded to the public records request in her capacity as "Senior Real Estate Counsel" for HCLRC—the very entity that acquired Appellant's properties through what receiver Boydston himself described as an "engineered" sale in his February 25, 2026 filing. Allesee's direct personal engagement with records pertaining to the very transactions at the heart of this appeal further supports her addition as a federal defendant.

**2.** Boydston's billing records—the same records documenting approximately $436,586.20 in billing irregularities—prove these communications occurred. HCLRC cannot credibly deny their existence without simultaneously confirming the systematic concealment Appellant alleges.

**3.** The "legal review" Allesee invokes is itself telling. HCLRC did not respond as a transparent public body would—by producing records of routine business communications with a court-appointed receiver. Instead, HCLRC immediately deployed Senior Real Estate Counsel to manage the response, citing case law for delay and signaling potential exemption claims. This is the conduct of an entity preparing to withhold evidence, not comply with Ohio's mandatory public records disclosure requirements.

## IV. BOYDSTON'S OWN WORDS FORECLOSE HCLRC'S ESCAPE

The Court is reminded that in his February 25, 2026 filing in the state receivership proceedings, Boydston used the words "deliver," "obtain," and "fix" in describing the receivership's operations—language constituting admissions against interest that the receivership was operated not as a neutral court instrument but as a mechanism to deliver Appellant's properties to a predetermined buyer. These admissions, combined with HCLRC's

emerging obstruction of the public records process, paint a clear picture of an ongoing enterprise conspiracy to conceal the evidence of a completed RICO scheme.

## V. CONCLUSION

Appellant respectfully submits this Notice to ensure the Court has a complete record of HCLRC's continuing conduct. The public records request and HCLRC's response are attached as Exhibits A and B, respectively. Appellant will supplement this Notice with HCLRC's ultimate production or non-production when the review period concludes.

Appellant reserves all rights under the Ohio Public Records Act, including the right to seek a writ of mandamus in state court and to present HCLRC's response—or non-response—as evidence of consciousness of guilt and furtherance of the enterprise conspiracy alleged herein.

Respectfully submitted,

*[signature]*

JOHN KLOSTERMAN
Appellant, Pro Se
5615 Sidney Road
513-250-2610
johncklosterman@gmail.com

Dated: March 11, 2026

*Case No. 26-3149*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a copy of the foregoing Appellant's Notice of Supplemental Evidence and all attached exhibits was served upon all counsel of record via the Court's CM/ECF electronic filing system and Email.

_____
**JOHN KLOSTERMAN**
**Appellant, Pro Se**

*Case No. 26-3149*

# EXHIBIT A

*Ohio Public Records Act Request to HCLRC*

*Dated March 6, 2026*

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

March 6, 2026

**Philip Denning, Vice President**
Hamilton County Land Reutilization Corporation (HCLRC)
138 East Court Street
Cincinnati, Ohio 45202

**RE:** FORMAL PUBLIC RECORDS REQUEST PURSUANT TO OHIO REVISED CODE § 149.43

RE: Cases: **Hamilton County Case No. A1905588; Case No. A2300473; Sixth Circuit Appeal No. 26-3149**

Dear Mr. Denning:

Pursuant to the Ohio Public Records Act, Ohio Revised Code § 149.43, John Klosterman hereby submits this formal public records request to Hamilton County Land Reutilization Corporation ("HCLRC"). This Request adds new categories of records that have become necessary in light of developments in the above-referenced proceedings, including Richard Boydston's February 25, 2026 court filing in Case No. A1905588 and Appellant's pending Sixth Circuit appeal, Case No. 26-3149.

You are required to respond within a reasonable time. Requestor designates thirty (30) calendar days from the date of this letter — on or before April 5, 2026 — as a reasonable time for compliance under R.C. § 149.43(B)(1). If HCLRC cannot produce all responsive records within thirty days, you must provide written notice of the estimated timeframe for production and the specific reasons for any delay.

Requestor notifies HCLRC that spoliation of any responsive records — including deletion, destruction, transfer, or alteration of any electronic or paper record — will be reported to the Hamilton County Prosecutor, the Ohio Attorney General, the United States Attorney for the Southern District of Ohio, and the Sixth Circuit Court of Appeals, and will constitute an independent basis for sanctions in the pending federal RICO appeal.IMMEDIATE PRODUCTION DEMAND — TEN BUSINESS DAYS: Requestor specifically identifies the following four records as requiring no search and capable of immediate production within ten (10) business days of receipt of this letter, as these are single known



documents that HCLRC either has in its files or does not: (1) the September 2022 intergovernmental funding agreement between HCLRC and the City of Cincinnati; (2) the complete July 25, 2023 Board of Directors Meeting Minutes; (3) the retainer agreement or engagement letter between HCLRC and counsel retained to prosecute the vexatious litigator petition in Case No. A2300473; and (4) the fully executed Purchase and Sale Agreement for the Klosterman properties including all exhibits and amendments. These four documents do not require any search — they are maintained in HCLRC's ordinary course of business and can be retrieved and produced immediately. Failure to produce these four documents within ten (10) business days will be treated as evidence of bad faith and will support an immediate mandamus filing in the Hamilton County Court of Common Pleas without further notice.

## I. BACKGROUND AND PURPOSE OF THIS REQUEST

This request arises from the receivership of Requestor's properties in Hamilton County Case No. A1905588 and the related vexatious litigator proceeding in Case No. A2300473. The following facts are established by the existing record and provide the foundation for each category of records requested below:

- Richard Boydston, sole member and manager of Konza LLC (the court-appointed receiver), stated in his February 25, 2026 filing in Case No. A1905588, Page 13: 'HCLRC obtained an order by this Court declaring Klosterman a vexatious litigator. That kind of a fix is not available to the Receiver.' This statement establishes that Boydston — a named defendant in federal RICO proceedings — characterized the vexatious litigator designation obtained by HCLRC as a 'fix.'
- HCLRC's own Vice President Philip Denning reported the vexatious litigator designation to the HCLRC Board of Directors in the July 25, 2023 Board Meeting Minutes as 'City legal actions against Mr. Klosterman' — despite the fact that HCLRC, not the City of Cincinnati, filed the petition.
- HCLRC is funded substantially through assignment fines and fees transferred from the City of Cincinnati, as well as ARPA funds, CDBG grants, Ohio Brownfield funds, and other public revenue streams under the intergovernmental arrangement between HCLRC and the City.
- HCLRC's counsel Kelly Allesee documented in her February 20, 2023 letter to Boydston that TSO/Lentine's recordkeeping was woefully deficient, yet HCLRC proceeded to finalize the Purchase and Sale Agreement without requiring those funds to be recovered or accounted for.
- Boydston's billing records document communications between Boydston and HCLRC personnel — including many with Kelly Allesee and 11+ with Philip Denning — for which Boydston billed Requestor's receivership estate. These communications are the predicate for each category of records requested below.

## II. RECORDS REQUESTED

Requestor requests all of the following records, whether in paper, electronic, email, text message, voicemail, calendar entry, memorandum, board minute, contract, invoice, wire transfer record, or any other format:

## CATEGORY A: VEXATIOUS LITIGATOR PETITION — FUNDING, AUTHORIZATION, AND COORDINATION

*These records are requested because Boydston's own court filing characterizes the VL designation as a 'fix,' and HCLRC's own board minutes characterize it as a 'City legal action' — suggesting the VL was funded, authorized, or coordinated with parties beyond HCLRC alone.*

1. All retainer agreements, engagement letters, fee agreements, or contracts between HCLRC and any law firm or attorney retained to file, prosecute, or defend the vexatious litigator petition in Case No. A2300473, including but not limited to the identity of counsel, the scope of engagement, and the fee arrangement.
2. All invoices, billing statements, and payment records for legal fees paid by HCLRC in connection with the vexatious litigator petition in Case No. A2300473, including the amounts paid, the dates of payment, and the accounts from which payment was made.
3. All records identifying the specific funding source used by HCLRC to pay legal fees associated with the vexatious litigator petition — specifically whether those fees were paid from: (a) City of Cincinnati assignment fines and fees transferred to HCLRC; (b) ARPA or CDBG funds; (c) Ohio Brownfield program funds; (d) HCLRC general operating funds; or (e) any other source.
4. All board resolutions, board meeting minutes, committee minutes, or written authorizations approving or ratifying HCLRC's decision to file the vexatious litigator petition against John Klosterman, including any minutes from 2022, 2023, or 2024 in which the petition, its filing, or its outcome was discussed.
5. All communications — including emails, text messages, letters, memoranda, and meeting notes — between HCLRC and the City of Cincinnati, including but not limited to the City Solicitor's Office, the Department of Buildings and Inspections, the City Manager's Office, and any elected official or their staff, regarding the decision to file the vexatious litigator petition against John Klosterman.
6. All communications between HCLRC and Richard Boydston or Dentons Bingham Greenebaum LLP regarding the vexatious litigator petition, including any discussions about the timing of the filing, the strategy for obtaining the designation, or the intended effect of the designation on Case No. A1905588.
7. All communications between Philip Denning and any City of Cincinnati official, HCLRC board member, or HCLRC staff member regarding 'City legal actions against Mr. Klosterman' as referenced in the July 25, 2023 Board of Directors Meeting Minutes.
8. The complete July 25, 2023 Board of Directors Meeting Minutes, including all attachments, exhibits, and supporting materials presented at that meeting.

9. All board meeting minutes from January 2022 through December 2024 in which John Klosterman, Case No. A1905588, the Sedamsville properties, or the vexatious litigator designation was mentioned or discussed.

## CATEGORY B: INTERGOVERNMENTAL FUNDING — CITY TRANSFERS TO HCLRC

*These records are requested because the City of Cincinnati is a co-defendant in the pending federal RICO appeal, and the financial relationship between the City and HCLRC is directly relevant to the associated-in-fact enterprise alleged in Case No. 26-3149.*

10. All intergovernmental agreements, memoranda of understanding, cooperative agreements, or contracts between HCLRC and the City of Cincinnati in effect during the period January 2019 through December 2025, governing the transfer of assignment fines, nuisance abatement fees, code enforcement fines, or any other City revenue streams to HCLRC.
11. All records of actual transfers of funds from the City of Cincinnati to HCLRC during the period January 2019 through December 2025, including wire transfer records, check registers, ACH records, or any other payment documentation, identifying the amount, date, source account, and designated purpose of each transfer.
12. All records identifying whether any City-transferred funds were used, directly or indirectly, to pay legal fees, court costs, or any other expenses associated with the vexatious litigator petition in Case No. A2300473.
13. The September 2022 funding agreement between the City of Cincinnati and HCLRC referenced in HCLRC's filings in Case No. A1905588, including all attachments, amendments, and related communications.
14. All ARPA, CDBG, Ohio Brownfield, or other federal or state grant fund records showing amounts received by HCLRC during 2020 through 2025 and the designated purposes of those funds, including any allocations related to the Sedamsville neighborhood or the Klosterman properties specifically.

## CATEGORY C: PURCHASE AND SALE AGREEMENT — CONSTRUCTION AND SIDE AGREEMENTS

*These records are requested because Boydston testified under oath that the $800,000 cash purchase price was reverse-engineered to cover receivership expenses rather than to reflect market value, and because Boydston referenced a separate agreement between himself and HCLRC regarding any amount shortages.*

15. All drafts, versions, redlines, and final executed copies of the Purchase and Sale Agreement between HCLRC and Konza LLC / Richard Boydston for the Klosterman properties, including all exhibits, schedules, and amendments.

16. All communications between Kelly Allesee and Richard Boydston regarding the negotiation, drafting, or execution of the Purchase and Sale Agreement, including specifically any communications regarding the provision directing that any remaining funds revert to HCLRC rather than to the property owner. Those communications are documented in Mr. Boydston's legal billings which identify who participated, the time spent, and the cost of each interaction.

17. Any separate agreement, side letter, memorandum of understanding, or other arrangement between HCLRC and Richard Boydston or Konza LLC regarding amounts owed to the receiver in excess of available escrow funds — as referenced by Boydston in his court testimony.

18. All communications regarding the $674,017 in-kind rehabilitation credit that HCLRC applied as part of the purchase price, including any appraisals, estimates, contractor bids, or other documentation supporting that valuation.

19. All communications between HCLRC and Jennifer Donathan or FRI Mason LLC / Keller Williams Advisors Realty regarding the commission paid in connection with the sale of the Klosterman properties, including any agreement regarding the commission rate or the basis on which the commission was calculated. Note: Although Konza/Boydston formally hired Donathan as the listing agent, HCLRC as the buyer and ultimate beneficiary of the transaction had direct communications with her that are separately subject to disclosure.

## CATEGORY D: COMMUNICATIONS WITH BOYDSTON AND KONZA LLC — FULL BILLING PERIOD

*These records are requested because Boydston's billing records document dozens of billable communications with HCLRC personnel for which he charged Requestor's receivership estate. Requestor requests the HCLRC-side counterparts to each of those communications.*

20. All emails, letters, text messages, and other written communications between HCLRC (including Kelly Allesee, Philip Denning, Laura Brunner, Kate Burroughs, Shannon Price, Erica Faaborg, and Amy Higgins) and Richard Boydston or Dentons Bingham Greenebaum LLP, from February 2019 through December 2025, relating to Case No. A1905588, the Klosterman properties, the receivership, or John Klosterman personally.

21. All communications between HCLRC and Alexis Royse or any other Hamilton County Court of Common Pleas staff member regarding Case No. A1905588 or Case No. A2300473, during the period February 2019 through December 2025.

22. All communications between Kelly Allesee and Richard Boydston documented in Boydston's billing records from December 2022 through August 2023, including specifically communications on or about: December 16, 2022; December 29, 2022; February 3, 2023; February 20, 2023; April 19, 2023; May 3, 2023; and May 8, 2023.

## CATEGORY E: RECORDKEEPING DEFICIENCIES AND THE $423,169 ACCOUNTING GAP

*These records are requested because HCLRC admitted in December 2025 to woefully deficient recordkeeping that failed to account for funds misappropriated by TSO/Lentine — a federally convicted felon — and because HCLRC's counsel documented those deficiencies in February 2023 yet HCLRC proceeded to close the purchase as the knowing beneficiary of that fraudulent transaction.*

23. All records, audits, reconciliations, or accounting analyses prepared by or for HCLRC attempting to account for the $423,169 in funds that TSO/Lentine collected from the Klosterman receivership properties and failed to account for, including any forensic accounting reports.
24. All communications between HCLRC and any federal or state law enforcement agency — including the FBI, the U.S. Attorney's Office, the Ohio Attorney General, or any other agency — regarding the misappropriation of receivership funds by Joseph Lentine or TSO.
25. All documents filed by HCLRC in Case No. A1905588 in December 2025 in which HCLRC described its recordkeeping as 'woefully deficient,' including all supporting documentation, accountings, and financial analyses attached to or referenced in those filings.
26. All records relating to HCLRC's knowledge of TSO/Lentine's accounting deficiencies prior to the closing of the Purchase and Sale Agreement, including but not limited to any communications following receipt of Kelly Allesee's February 20, 2023 letter to Boydston documenting the accounting failures.

## CATEGORY F: AUCTION PROCESS — PREFERENTIAL ACCESS AND KNOPPE BID

*These records are requested because Lentine and Boydston confirmed — including under oath — that HCLRC was given preferential pre-bid access to occupied buildings while independent bidder Ken Knoppe was denied equivalent access, and because the bidding documents contained inspection constraints that suppressed competitive bids.*

27. All communications between HCLRC and Boydston or Konza LLC regarding pre-auction access to the Klosterman properties, including any authorizations for HCLRC personnel to enter occupied buildings prior to the auction.
28. All versions of the auction bidding documents — including the first, second, and third versions of the bid package and instructions — including any provisions restricting bidder access to occupied properties, and all communications regarding those restrictions and any changes made between versions.
29. All records regarding the bid submitted by Ken Knoppe, including the amount of his bid, all communications between HCLRC and Boydston regarding Knoppe's bid, and any records reflecting the reason Knoppe's bid was not accepted. Note: Boydston stated his reasons under oath; HCLRC's internal communications regarding the same decision are separately subject to disclosure.

30. All records of HCLRC's pre-auction inspections of the Klosterman properties, including inspection reports, photographs, valuations, and assessments prepared by or for HCLRC prior to the auction, including records of any occupied-building access that was denied to other bidders.

## CATEGORY G: COMMUNITY ACTION AGENCY (CAA) RENTAL ASSISTANCE FRAUD

*These records are requested because Requestor has evidence that fraudulent CAA rental assistance applications were submitted in the names of Klosterman's tenants without their knowledge, with funds flowing to TSO, and that HCLRC had ongoing communications with Boydston during the period these applications were submitted.*

31. All records relating to Community Action Agency (CAA) rental assistance applications submitted in connection with any tenant at any of the Klosterman receivership properties during the period 2020 through 2023, including the names of applicants, amounts requested, amounts granted, and recipients of any funds awarded.
32. All communications between HCLRC and any CAA or social services agency regarding rental assistance applications for tenants at the Klosterman receivership properties.

**III. PRIVILEGE LOG REQUIREMENT**If HCLRC withholds any responsive record on the basis of attorney-client privilege, work product doctrine, or any other claimed exemption under R.C. § 149.43(A), HCLRC must provide Requestor with a written privilege log simultaneously with any partial production or written response. The privilege log must identify, for each withheld record: (1) the date of the document or communication; (2) the author and all recipients; (3) the general subject matter, described with sufficient specificity to allow Requestor to assess the privilege claim without revealing the privileged content; (4) the specific statutory exemption or privilege claimed; and (5) a brief explanation of why the exemption applies to that specific record.Requestor places HCLRC on notice of the following legal limitations on any privilege claims:A. Scope of Attorney-Client Privilege — Business Records Not Protected: Attorney-client privilege protects legal advice communicated between attorney and client. It does not protect underlying facts, business decisions, financial records, board minutes recording votes and actions taken, intergovernmental agreements, contracts, invoices, or payment records, even if an attorney was present when those matters were discussed. The following categories of records requested herein are not protected by attorney-client privilege regardless of any attorney involvement: board meeting minutes; intergovernmental funding agreements; wire transfer and payment records; the executed Purchase and Sale Agreement; auction bidding documents; CAA rental assistance records; and records of pre-auction property inspections.B. Crime-Fraud Exception — Privilege Stripped for Fraud Communications: Attorney-client privilege does not apply to communications made in furtherance of a crime or fraud. Ohio recognizes the crime-fraud exception, which strips privilege from any communication between attorney and client when

the communication was made to advance an ongoing or future crime or fraud. Richard Boydston's February 25, 2026 court filing in Case No. A1905588 — filed by HCLRC's co-defendant in pending federal RICO proceedings — explicitly characterizes the vexatious litigator designation as a 'fix.' Any communications between Kelly Allesee and HCLRC regarding the strategy, timing, or purpose of the vexatious litigator petition are potentially subject to the crime-fraud exception and are not protected by privilege. Requestor reserves the right to seek in camera review of any withheld communications related to the VL petition.C. Privilege Log Is Itself Evidence: Requestor notifies HCLRC that the privilege log, when produced, will be filed as an exhibit in the pending Sixth Circuit appeal, Case No. 26-3149. The existence of communications between Kelly Allesee and HCLRC regarding litigation strategy in Case No. A1905588 — even if withheld on privilege grounds — corroborates the associated-in-fact enterprise alleged in the federal RICO complaint, since the Receiver and the Buyer were sharing legal strategy at Requestor's expense as documented in Boydston's own billing records.D. Waiver by Selective Disclosure: To the extent HCLRC has already disclosed any communications with Boydston or Dentons Bingham Greenebaum LLP in court filings, public statements, or prior productions in any proceeding, HCLRC has waived privilege as to the subject matter of those disclosed communications and must produce all related records on the same subject.Failure to provide a privilege log simultaneously with any partial response will constitute a waiver of all privilege claims as to withheld documents.IV. FORM OF PRODUCTION AND COST

Requestor specifies the following regarding the form of production and associated costs:

## A. Form of Production

Requestor requests that responsive records be produced in one or more of the following formats, listed in order of preference:

- Electronic production via email to johncklosterman@gmail.com, in PDF, Word, or native file format. This is the preferred method for all electronic records including emails, text messages, and electronically stored documents.
- Electronic production via a secure file-sharing link (Google Drive, Dropbox, or equivalent) sent to johncklosterman@gmail.com, for productions too large for email attachment.
- Personal pickup at HCLRC's offices at 138 East Court Street, Cincinnati, Ohio 45202. Requestor is willing and available to personally inspect and receive records at HCLRC's offices during normal business hours. Requestor requests that HCLRC contact him at (513) 250-2610 or johncklosterman@gmail.com to schedule a mutually convenient time for inspection and pickup. Requestor will bring his own copying equipment or make arrangements for copying on-site.
- U.S. Mail delivery to: John Klosterman, 5615 Sidney Road, Cincinnati, Ohio 45238. This method is acceptable for physical records that cannot be scanned or transmitted electronically.

### B. Cost — Requestor Will Not Pay Duplication or Search Fees

Under Ohio Revised Code § 149.43(B)(1), a public office may charge only the actual cost of making copies, not the cost of searching for or retrieving records. Requestor hereby notifies HCLRC of the following regarding costs:

- Requestor will not pay any search fees, retrieval fees, staff time charges, or any other fee beyond the actual cost of physical duplication. Any attempt by HCLRC to impose search fees or staff time charges is contrary to R.C. § 149.43 and will be challenged.
- For electronic records produced via email or file-sharing link, the actual cost of duplication is zero. Requestor will not pay any fee for the electronic production of records that exist in electronic form.
- For physical records requiring photocopying, the actual cost of duplication under R.C. § 149.43 is the cost of paper and toner only — typically $0.05 to $0.10 per page. Requestor will pay reasonable actual duplication costs for physical records, not to exceed $0.10 per page, upon production. Requestor requests that HCLRC provide a written estimate of duplication costs before making copies, so that Requestor may elect personal pickup and self-copying if HCLRC's estimate is unreasonable.

  Requestor elects personal pickup.

- Any assertion by HCLRC that responsive records cannot be produced without payment of fees beyond actual duplication costs will be treated as a constructive denial of this request and will trigger the remedies set forth in Section IV below.

### C. Waiver of Costs — Public Interest Grounds

In the alternative, Requestor requests a full waiver of all costs on public interest grounds. This request concerns the use of public funds — specifically City of Cincinnati assignment fines and fees, ARPA funds, CDBG grants, and Ohio Brownfield funds — to fund litigation against a private citizen in connection with the fraudulent disposition of historic properties in the Sedamsville neighborhood. The records requested will shed light on the operations of a quasi-governmental entity and its use of public money. Disclosure serves the public interest and justifies a full cost waiver under R.C. § 149.43(B)(1).

## V. LEGAL NOTICE AND CONSEQUENCES OF NON-COMPLIANCE

Failure to comply with this request within thirty (30) days will result in:

- Filing of a Mandamus action in the Hamilton County Court of Common Pleas pursuant to O.R.C. § 149.43(C) compelling production and seeking statutory damages of $100 per day for each day of non-compliance;

- Notification to the Hamilton County Prosecutor, the Ohio Attorney General's Office, and the United States Attorney for the Southern District of Ohio of HCLRC's failure to comply;
- Submission of this request and HCLRC's non-compliance to the Sixth Circuit Court of Appeals in Case No. 26-3149 as evidence of HCLRC's ongoing pattern of concealment;
- A motion for adverse inference in the pending federal RICO proceedings based on HCLRC's failure to produce responsive records.

Requestor further notifies HCLRC that all responsive records are subject to a litigation hold as of the date of this letter. Any destruction, deletion, transfer, or alteration of responsive records after receipt of this letter will constitute spoliation of evidence and will be reported to all relevant authorities.

Please direct all responses, productions, and scheduling communications to:

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238
johncklosterman@gmail.com
(513) 250-2610


Respectfully submitted,

_____

John Klosterman, Pro Se
Requestor

Dated: March 6, 2026

**cc:**

Sixth Circuit Court of Appeals, Case No. 26-3149 (filed as exhibit)
Richard Boydston / Dentons Bingham Greenebaum LLP (for notice purposes)
Laura Brunner, HCLRC President/CEO (for notice purposes)

# EXHIBIT B

*Email Response from Kelley Allesee, Senior Real Estate Counsel, HCLRC*

*Dated March 10, 2026*

From: Kelley Allesee

To: John Klosterman
CC: Sabrina; Kara
Date: March 10, 2026, 3:08 PM
Subject: [Public Records Request Response]

Mr. Klosterman,

We are in receipt of your public records request dated March 6, 2026, and will begin our review to determine which records may be responsive to your request. As you may be aware, Ohio law requires the The Port to respond to your request in a reasonable amount of time based on the circumstances of your request and whether legal review of the records is appropriate. State ex rel. Wadd v. City of Cincinnati, 81 Ohio St. 3d 50, 53 (1998). We will let you know when this review is complete and if any such responsive documents exist. We will complete this review as soon as reasonably possible; if you have any questions in the meantime, please feel free to contact me.

Sincerely,

Kelley Allesee
Senior Real Estate Counsel

