IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John Klosterman, | : |
| | : Case No. 1:25-cv-312 |
| Plaintiff, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : Judgment |
| Konza, LLC, *et al.*, | : |
| | : |
| Defendants. | : |

Decision by Court: This action came to hearing before the Court. The issues have been heard and decisions have been rendered. **IT IS ORDERED AND ADJUDGED** that:

Defendants' Motions to Dismiss (Doc. 53–55, 74) are **GRANTED** and Klosterman's Request for Leave to Add Extortion Claims (Docs. 61–62) is **DENIED**. Klosterman's claims in the Amended Complaint are **DISMISSED WITH PREJUDICE** against Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan; and

Klosterman's claims against Defendants Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk are **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m).[1]

**IT IS SO ORDERED.**

BY THE COURT:

Susan J. Dlott
United States District Judge

---

[1] Federal Rule of Civil Procedure 54(b) certification is not necessary because the Court has resolved all claims against all parties. However, if the Sixth Circuit were to deem it necessary, the Court notes that there would not be any "just reason for delay" for an appeal of the Court's December 10, 2025 Dismissal Order (Doc. 89).



# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

John Klosterman,
    Plaintiff,

v.

Konza, LLC, et al.,

    Defendants.

Case No. 1:25-cv-00312-SJD-KLL

Judge Susan J. Dlott

---

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff John Klosterman hereby appeals to the United States Court of Appeals for the Sixth Circuit from the following orders entered in this case:

1. The Judgment entered on February 25, 2026 (Doc. #117), which granted Defendants' Motions to Dismiss (Doc. #53–55, 74), denied Plaintiff's Request for Leave to Add Extortion Claims (Doc. #61–62), and dismissed Plaintiff's claims in the Amended Complaint with prejudice against Defendants Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan;

2. The Order Dismissing Without Prejudice entered on February 25, 2026 (Doc. #116), which dismissed Plaintiff's claims against Defendants Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk under Federal Rule of Civil Procedure 4(m) for failure to timely effectuate service;

3. The Dismissal Order entered on December 10, 2025 (Doc. #89), which dismissed

Plaintiff's Amended Complaint with prejudice on Defendants' Motions to Dismiss;

4. The Order Denying Extension of Time to Serve entered on January 13, 2026 (Doc.

#103), which denied Plaintiff's request for additional time to serve Defendants Joseph

Lentine and Angel Strunk;

5. All other interlocutory orders, rulings, and decisions that merged into the final

judgment, including but not limited to orders denying Plaintiff's motions for preliminary

injunction, temporary restraining order, and emergency relief.

## PARTIES TO THE APPEAL

Appellant: John Klosterman, Plaintiff below.

Appellees (dismissed with prejudice): Keller Williams Realty, the City of Cincinnati,

Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and

Jennifer Donathan.

Appellees (dismissed without prejudice under Rule 4(m)): Tri-State Organization, Inc.,

Joseph Lentine, and Angel Strunk.

## BASIS FOR APPELLATE JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291, which grants the courts of appeals

jurisdiction over appeals from "all final decisions of the district courts." The Judgment

entered on February 25, 2026 (Doc. #117) is a final judgment disposing of all claims against all

parties. The Court certified under Federal Rule of Civil Procedure 54(b) that there is no just

reason for delay. This Notice of Appeal is timely filed within 30 days of the entry of the Judgment as required by Federal Rule of Appellate Procedure 4(a)(1)(A).

## NOTE REGARDING PRIOR APPEAL

On February 13, 2026, Appellant filed a Notice of Appeal that was docketed as Sixth Circuit Case No. 26-3118. On February 20, 2026, the Sixth Circuit dismissed that appeal for lack of jurisdiction because the district court had not yet entered a final judgment with Rule 54(b) certification. On February 25, 2026, the district court entered the Judgment (Doc. #117) curing the jurisdictional defect identified by the Sixth Circuit. This Notice of Appeal is filed from that clean final judgment.

## NOTICE OF INTENT TO FILE MOTIONS

Appellant intends to file the following emergency motions promptly upon docketing of this appeal:

- Emergency Motion to Freeze Escrow Funds ($87,000 in receivership proceeds at risk of disbursement; state court affidavits due March 6, 2026; ruling expected March 12, 2026)

- Motion for Partial Summary Judgment on Liability (based on Defendants' own admissions)

- Supplemental Motion for Constructive Trust and Return of Fraudulently Obtained Properties

- Motion for Emergency Injunctive Relief and Class Action Claims

**FILING FEE**

The required filing fee of $605.00 is submitted herewith.

Respectfully submitted,

John Klosterman, Pro Se
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

Dated: February 26, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, a true and accurate copy of the foregoing Notice of Appeal was filed via the Court's CM/ECF system, which provides electronic notice to all counsel of record.

John Klosterman, Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John Klosterman, | : | Case No. 1:25-cv-312 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Defendants' Motions to |
| | : | Dismiss Plaintiff's Amended Complaint |
| Konza, LLC, *et al.*, | : | and Denying Request for Leave to Add |
| | : | Extortion Claim |
| Defendants. | : | |

This matter is before the Court on four Motions to Dismiss the Amended Complaint filed

by *pro se* Plaintiff John Klosterman:

- Motion to Dismiss filed by Defendant Keller Williams Realty;[1]

- Motion to Dismiss filed by Defendants City of Cincinnati and Terry James (collectively, "the City Defendants");

- Motion to Dismiss filed by Defendants Konza, LLC, Richard Boydston, and Dentons Bingham Greenebaum LLP (collectively, the "Boydston Defendants"); and

- Motion to Dismiss filed by Jennifer Donathan.

(Docs. 53–55, 74.)  Also pending before the Court is Klosterman's Request for Leave to Add

Extortion Claims against the City Defendants.  (Docs. 61–62.)  For the reasons that follow, the

Court will **GRANT** Defendants' Motions to Dismiss and **DENY** Klosterman's Request for

Leave to Add Extortion Claims.

## I.    BACKGROUND

Plaintiff John Klosterman filed a Consolidated Complaint for Civil Violations of the

---

[1] Defendant identifies itself in the pleading as FRI Mason, LLC (dba Keller Williams Realty) and Keller Williams. (Doc. 53.) Plaintiff identifies the party as Keller Williams Advisors Realty in the Amended Complaint. (Doc. 33.) For the sake of clarity and simplicity, the Court will continue to refer to it as Keller Williams Realty.

EXHIBIT
A-2

Racketeer Influenced and Corrupt Organizations Act (18 USC 1961–1968) & Deprivations of Constitutional Rights (42 USC § 1983) ("Complaint") on May 13, 2025. (Doc. 1.) The 104-page Complaint named eleven Defendants including Keller Williams Realty, the City Defendants, and the Boydston Defendants. (*Id.*) On June 26, 2025, Magistrate Judge Karen L. Litkovitz ordered Klosterman to "file an amended complaint, which must not exceed 20 pages in length, setting forth in clear, short and concise terms the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each such claim." (Doc. 32 at PageID 360.) Klosterman filed an Amended Complaint the next day, listing ten Defendants: Konza LLC; Richard Boydston; Dentons Bingham Greenbaum LLP; Tri-State Organization, Inc.; Joseph Lentine; Angel Strunk; Jennifer Donathan; Keller Williams Advisors Realty; Terry James; and the City of Cincinnati. (Doc. 33 at PageID 363–364.)

## A. Factual Allegations in the Amended Complaint

### 1. Fraudulent Foreclosure and Receivership Allegations

The crux of Klosterman's allegations are that Defendants engineered a fraudulent scheme to deprive him of his ownership of 59 properties worth more than $4.5 million in the Sedamsville neighborhood of Cincinnati, Ohio through manipulation of a court-appointed receivership in property foreclosure proceedings. The allegations are disjointed and difficult to understand. The Court primarily will focus in this Order on the allegations relevant to the moving Defendants. Klosterman alleges, in part, that his property values were artificially reduced, that he was defrauded of rental income during the receivership, that false police reports were filed against him leading to his imprisonment, that false financial reports were filed in state court, and that his properties were sold to HCLRC in a fraudulent and "engineered" sale for a reduced price. (*Id.* at PageID 364–368, 372–375.) Klosterman does not otherwise identify the entity he calls HCLRC.

2

Klosterman's allegations arise from an underlying litigation, *City of Cincinnati v. Klosterman*, No. A1905588 (Hamilton County, Ohio C.P), to foreclose on 59 properties owned or controlled by Klosterman to satisfy a judgment in favor of the City in an earlier public nuisance lawsuit against him.[2] (Docs. 55-2 to 55-28.)[3] The common pleas court entered its order appointing "Konza, LLC by its Manager Richard Boydston" as the receiver over the 59 Klosterman properties on February 14, 2020 under Ohio Revised Code § 2735.01(A)(1). (Doc. 55-3.) Boydston was an attorney with Dentons Bingham Greenbaum LLP. (Doc. 55-22 at PageID 1219.) The court expressly stated that the receivership order was "a final and appealable order." (*Id.* at PageID 893.) On October 7, 2021, the court entered a Final Decree in Foreclosure finding the City's liens on the properties to be valid and ordering the foreclosure sale. (Doc. 54-7.) On March 4, 2022, the court entered a final order approving sale of the Klosterman properties. (Doc. 55-21.) Jennifer Donathan of Keller Williams Realty was named the listing realtor for the sale of the Klosterman Properties in the written sales terms approved by the court. (Doc. 55-21 at PageID 1205; Doc. 55-22 at PageID 1220.) Then on October 19, 2022, the court approved the sale of the Klosterman properties to the Hamilton County Land Reutilization Corporation, also known as Landbank, which appears to be the entity which Klosterman refers to as HCLRC. (Docs. 55-22 to 55-23.)

### 2.   621 Delhi Avenue and Malicious Prosecution Allegations

Klosterman's allegations regarding 621 Delhi Avenue and his criminal prosecution stand apart from the other allegations. The Court will begin with the malicious prosecution

---

[2] The litigation appears to be ongoing as to collateral matters not involving Klosterman.

[3] The Court can consider public records encompassing matters alleged in the Amended Complaint without converting the Rule 12(b)(6) motion to a Rule 56 motion. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

allegations, which are asserted against only Defendants Richard Boydston, Joseph Lentine, and Angel Struck. Klosterman alleges that Lentine was the owner of and Strunk was an employee of Defendant Tri-State Organization, Inc., an organization retained by the receiver to manage the 59 Klosterman properties during the foreclosure proceedings. (Doc. 33 at PageID 363–364.) Relevant to the malicious prosecution claim, Klosterman alleges that in September 2021 Lentine and Strunk "filed false police reports alleging [Klosterman] stalked them." (*Id.* at PageID 366.) This led to Klosterman's "wrongful imprisonment for one year." (*Id.* at PageID 367.) Klosterman also alleges that "[Richard] Boydston's legal billing records show coordination with prosecutors, confirming his participation in the malicious prosecution." (*Id.*) Although Klosterman purports to attach the pertinent legal billing records, the Court could not find legal billing records matching this description in the CM/ECF record.

As to the 621 Delhi Avenue property, Klosterman asserts that Defendant Terry James, on behalf of the City of Cincinnati, issued fraudulent condemnation notices for 621 Delhi Avenue, "allegedly at the urging of [Defendant] Boydston[.]" (Doc. 33 at PageID 367.) The 621 Delhi Avenue property was not a part of the foreclosure lawsuit filed by the City. (Doc. 55-3 at PageID 885–887.) Klosterman does not state when or how or why Richard Boydston allegedly urged for the condemnation, nor when the City issued the condemnation notices. He alleges that the "fraudulent condemnation destroyed rental income and property value." (*Id.*)

The City Defendants, however, submitted the relevant property records for 621 Delhi Avenue. The City Defendants issued written Notices of Violations and Notices of Civil Offense and Civil Fines for 621 Delhi Avenue in January, September, and October 2020. (Docs. 54-10.)[4]

---

[4] Again, the Court can consider these public records encompassing matters alleged in the Amended Complaint in adjudicating the Motions to Dismiss. *See Rondigo*, 641 F.3d at 681.

The Notices of Violations stated that the property must be vacated because the "building is unsafe for occupancy." (Doc. 54-10 at PageID 729, 736, 742.)  The records show that the City inspector recommended closing the file in December 2020 because the tenants had vacated the building. (Doc. 54-11 at PageID 754.)

Significantly, the property records do not indicate that John Klosterman is the owner of 621 Delhi Avenue.  Instead, the Notices are all directed to "John Jennagans LLC c/o John Klosterman." (Docs. 54-10.)

Klosterman asserts two facts in support of his allegation that the condemnation of 621 Delhi Avenue was fraudulent, but both are dubious.  First, he states that a GEI engineering report confirmed the structural safety of the property.  (Doc. 33 at PageID 367.)  This allegation is at least partially refuted by the exhibit Klosterman incorporated in the Amended Complaint.  (*Id.* at PageID 367; Doc. 1-1 at PageID 137–139.)  The GEI Engineering's Structural Investigation Report dated September 18, 2020 stated that the original L-shaped brick portion of the building at 621 Delhi Avenue did not have "structural deficiencies[,]" but it found structural deficiencies in the wood-framed addition.  (Doc. 1-1 at PageID 137.)  The deficiencies included that "the basement wall and areas of the first level floor framing [were] deteriorated," that the first-floor level floor joists were "in poor condition and need[ed] to be repaired or replaced," and that "temporary shoring [was] not adequate to support the code required loads." (*Id.* at PageID 138.)

Second, Klosterman asserts that his former tenant, Randy Hatfield, provided an affidavit stating that Terry James admitted to Hatfield that the building was structurally safe. (Doc. 33 at PageID 367.)  But the affidavit Klosterman submitted into evidence is not signed under oath by Hatfield or notarized. (Doc. 1-1 at PageID 150–151.)  The line for Hatfield's signature simply states "on file" and the line for the date is empty.  (*Id.* at PageID 151.)  Likewise, the notary

5

section is blank. (*Id.*) For these reasons, the affidavit is inadmissible and is not considered a part of the well-pleaded factual allegations which the Court must accept as true for purposes of ruling on these Motions to Dismiss.

During the briefing of the Motions to Dismiss, Klosterman filed a Request for Leave to Add Extortion Claim against the City Defendants which contains new allegations concerning 621 Delhi Avenue. (Docs. 61–62.) Therein, Klosterman asserts that he received an Invoice dated August 6, 2025 from the City of Cincinnati directed to "John Jennagans, LLC c/o John Klosterman" for $15,015. (Doc. 62 at 1426.) The Invoices states as follows:

> The subject building was ordered to be vacated or kept vacant on January 17, 2020. A Vacant Building Maintenance License (VBML) for the subject building is due for renewal each and every year until the building is code compliant and no longer vacated. The VBML must be renewed each year no later than January 17. You are required to apply for a VBML by the due date annually to avoid a late fee equal to the License fee or $1000.00 for each late fee, whichever is less; Section 1101-77 Cincinnati Building Code (CBC). Our records indicate the VBML application has not been made each year as required. Pay the back fees within 30 days of this notice to avoid collections.

**The unpaid VBML fee total owed for this property is $15,015.00**

(*Id.* (emphasis in the original).)

### 3.    Procedural Posture

Klosterman asserts ten causes of action in the Amended Complaint:

Count I: RICO Violation (18 U.S.C. § 1962(c)) against all Defendants;

Count II: RICO Conspiracy (18 U.S.C. § 1962(d)) against all Defendants;

Count III: Civil Rights Conspiracy (42 U.S.C. § 1985) against all Defendants;

Count IV: Civil Rights Violations (42 U.S.C. § 1983) against Richard Boydston and the City Defendants;

Count V: Conversion against all Defendants;

Count VI: Fraud against all Defendants;

6

Count VII: Breach of Fiduciary Duty against the Boydston Defendants, Jennifer Donathan, and Keller Williams Realty;

Count VIII: Malicious Prosecution against Joseph Lentine; Angel Strunk, and Richard Boydston;

Count IX: Negligent Supervision against Dentons Bingham Greenbaum LLP and the City of Cincinnati; and

Count X: Intentional Infliction of Emotional Distress against all Defendants.

(Doc. 33 at PageID 369–371.)

On August 1, 2025, Keller Williams Realty, the City Defendants, and the Boydston Defendants filed their separate Motion to Dismiss arguing that the Court lacked subject-matter jurisdiction and that Klosterman failed to state a claim for relief upon which relief can be granted. (Docs. 53–55.) Klosterman filed timely Responses in Opposition to only the Motions filed by the City Defendants and the Boydston Defendants. (Doc. 59–60.)[5] Those Defendants filed Reply briefs. (Docs. 67–68.) Then, on October 31, 2025, Jennifer Donathan filed her Motion to Dismiss. (Doc. 74.) Klosterman filed a Response in Opposition, to which Donathan filed a Reply. (Docs. 75–76.)[6]

Klosterman has also filed a Request for Leave of Court to Add Extortion Claim against the City Defendants regarding 621 Delhi Avenue. (Docs. 61–62.) The City Defendants oppose Klosterman's Request to Add Extortion Claim. (Doc. 70.)

---

[5] The Court has not considered new factual allegations contained in Klosterman's briefs. In evaluating a motion to dismiss, a district court cannot examine the sufficiency of allegations made in a brief that are not in the operative complaint.

Also, the Court granted Klosterman an extension of time to respond to the Motions to Dismiss until October 1, 2025. (Doc. 58 at PageID 1348.) Plaintiff did not file a purported Memorandum in Opposition to Keller Williams Realty's Motion to Dismiss until October 8, 2025. (Doc. 66.) The Court will not consider this untimely response.

[6] Klosterman then attempted to file a second opposition brief which he captioned as "Reply: Memorandum in Opposition." (Doc. 79.) Klosterman did not request leave of the Court to file an additional brief as required by the Southern District of Ohio Local Rule 7.2(a)(2). Donathan filed a Motion to Strike. (Doc. 80.) The Court notationally granted the Motion to Strike and struck the Klosterman's second opposition brief.

7

## II.    STANDARD OF LAW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing jurisdiction when such a dismissal motion is filed under Rule 12(b)(1). *See Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). The district court can "look beyond the jurisdictional allegations in the complaint and consider submitted evidence." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). Finally, the district court can resolve factual disputes without converting a Rule 12(b)(1) motion to a motion for summary judgment. *Rogers*, 798 F.2d at 915.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

## III.    ANALYSIS OF MOTIONS TO DISMISS

### A.    Lack of Subject-Matter Jurisdiction

Keller Williams Realty, the City Defendants, the Boydston Defendants, and Jennifer

8

Donathan argue that Klosterman's claims are barred by the *Rooker-Feldman* doctrine. (Doc. 53 at PageID 516–517; Doc. 54 at PageID 529–531; Doc. 55-1 at PageID 783–785.) The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine also prohibits district courts from exercising jurisdiction over interlocutory state court judgments, *see RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 396 (6th Cir. 2021), and claims that are "inextricably intertwined with issues decided in state court opinions[,]" *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (internal quotation and citation omitted). "A federal claim is inextricably intertwined with a state court judgment and thus implicates *Rooker-Feldman* when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Exec. Arts Studio, Inc.*, 391 F.3d at 793 (internal quotation and citation omitted). Put differently, *Rooker-Feldman* applies if "the source of the plaintiff's injury is the state-court judgment itself." *Kost v. Hoseth Kreeger*, 832 F. App'x 438, 439 (6th Cir. 2021).

Defendants argue that *Rooker-Feldman* precludes this Court from exercising jurisdiction over the Amended Complaint because the gravamen of Klosterman's claims is that Defendants conspired to use a court-appointed receivership to wrongfully deprive him of properties worth more than $4.5 million. Klosterman does not meaningfully respond to their arguments—he only asserts in conclusory fashion that *Rooker-Feldman* does not apply when Defendants commit crimes in state court proceedings. (Doc. 59 at PageID 1360.)[7] As explained immediately below,

---

[7] Although Klosterman has not clearly asserted the issue nor provided legal analysis on it, the Court notes that the extrinsic fraud exception to *Rooker-Feldman* does not apply. There is an exception to the *Rooker-Feldman* doctrine when a plaintiff alleges that the source of his injury is not the adverse state court judgment, but rather extrinsic fraud in procuring the state court judgment. *See Miniz v. Stone*, No. 21-5489, 2022 WL 3031259, at *2 (6th Cir. Feb. 7, 2022). Still, a plaintiff cannot avoid "the restraints of *Rooker-Feldman* by raising fraud claims that were raised and rejected in state-court proceedings." *Id.*; *HPIL Holding v. Zhang*, No. 1:23-cv-12050, 2025 WL 975444, at *14 (E.D. Mich. Mar. 31, 2025) (applying exception to the extrinsic fraud exception to *Rooker-Feldman*). Here,

the Court agrees that *Rooker-Feldman* applies here, except as to the 621 Delhi Avenue allegations and the malicious prosecution claim. Neither the 621 Delhi Avenue property nor the malicious prosecution allegations were litigated in the state foreclosure proceedings. The 621 Delhi Avenue allegations and the malicious prosecution claim are addressed on the merits in a separate section.

The core allegations in the Amended Complaint arise from the state court foreclosure proceedings. For example, Klosterman explicitly references the receivership authorized by the state court in paragraphs 5, 31–32, 43, 48, and 55 of the Amended Complaint. (Doc. 33 at PageID 354, 368, 371, 374.) He suggests in paragraph 58 that Defendants used the court proceedings to commit organized fraud. (*Id.* at 374.) He alleges in paragraphs 12–16 that the sale of his properties—approved by the state court—was fraudulent in that it included "artificially reduced" property values and the modification of the sales agreement to exclude Klosterman's claims to the sales funds. (*Id.* at PageID 365.)

These allegations are inextricably intertwined with state court proceedings for purposes

---

Klosterman repeatedly argued in the underlying state court foreclosure proceedings that the Defendants committed fraud.

Klosterman argued in the state foreclosure proceedings that the order appointing a receiver was fraudulently obtained. (Doc. 54-1 at PageID 555.) He later argued that the receiver was corrupt and self-serving. (Doc. 54-5 at PageID 590.) He argued that the City made false representations in targeting his properties and that he was treated adversely and in a disparate manner. (*Id.* at PageID 593; Doc. 54-1 at PageID 554–555.) He sought to have the receiver replaced. (*Id.* at PageID 590–594.) He alleged wrongdoing and sought an audit of the management company retained by the receiver to manage the properties during the foreclosure proceedings, and he alleged that the City and the receiver knew about and implicitly condoned the wrongdoing. (Doc. 54-6 at PageID 596; Doc. 54-8.) For example, in a Motion for Expedited Hearing filed on June 10, 2021, Klosterman argued that the management company's expenditures in the foreclosure were unreasonable, that the City approved of the unreasonable spending, and that receiver breached his fiduciary duties. *City of Cincinnati v. Klosterman*, No. A1905588, Motion at 2 (Hamilton Cnty. C.P, Ohio June 10, 2021). The state court denied this motion and related motions on November 3, 2021. (Doc. 54-6.) The state court did not remove the receiver, and it approved the sale of the Klosterman properties in foreclosure despite all of Klosterman's allegations of wrongdoing. (Docs. 55-21 to 55-23.) Accordingly, the extrinsic fraud exception does not bar the application of *Rooker-Feldman* here. Moreover, even if *Rooker-Feldman* did not apply, this analysis demonstrates that Klosterman's claims in this suit would likely be barred by issue or claim preclusion.

of *Rooker-Feldman* because his claims here succeed only if the state court wrongly decided the

issues before it in the foreclosure proceedings. *See Exec. Arts Studio, Inc.*, 391 F.3d at 793.

Klosterman is in essence asking this Court to improperly act as an appellate court over the final

decisions in the state court foreclosure proceedings. He asks in the Prayer for Relief for

"disgorgement of fraudulent commissions and fees" and a "[d]eclaration that the 'engineered

sale' was fraudulent and [should be] dismissed with prejudice." (Doc. 33 at PageID 376.)

Klosterman contends that the source of his injury was the state court decisions allowing the

foreclosures and the sale of his properties, so the *Rooker-Feldman* doctrine precludes

jurisdiction. *Kost*, 832 F. App'x at 439.

　　This Court cannot exercise "appellate jurisdiction over final state-court judgments."

*Lance*, 546 U.S. at 463.[8] The Court concludes that it lacks subject-matter jurisdiction pursuant to

*Rooker-Feldman* over the claims asserted by Klosterman against Keller Williams Realty, the

Boydston Defendants, the City Defendants, and Jennifer Donathan, except as to the 621 Delhi

---

[8] As stated in an earlier footnote, the underlying state court foreclosure proceedings appear to be on-going as to ancillary matters not pertaining to Klosterman or his legal rights as to disposition of his properties. Even if this fact precluded the application of *Rooker-Feldman*, the Court would nonetheless decline to exercise jurisdiction under the *Colorado River* doctrine. A district court can decline to exercise jurisdiction in limited circumstances when a substantially similar state court proceeding was filed first and is still pending. *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817–818 (1976). For example, "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Id.* at 818. Courts consider eight factors when deciding whether to apply *Colorado River* abstention:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). Here, the factors weigh in favor of abstention. The state court exercised jurisdiction over the foreclosed properties. Klosterman has litigated his fraud and wrongdoing allegations in the state court proceedings, as discussed in the previous footnote, so piecemeal litigation is not needed. And the state court proceedings had been pending for years before Klosterman filed his action. The state court fully resolved the issue of foreclosure and sale of Klosterman's properties.

Avenue allegations and the malicious prosecution claim. *See Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 687 (S.D. Ohio 2025) (barring federal claims when the plaintiffs' theory was that the defendants "violated his constitutional rights when they engaged in the very activities the state court approved"). The claims must be dismissed with prejudice.

Separately, the Boydston Defendants assert that the Court lacks subject-matter jurisdiction over them under a separate legal theory called the *Barton* doctrine. The Supreme Court stated a general rule in 1881 that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881). The Sixth Circuit has applied the *Barton* doctrine to suits against receivers, trustees, and legal counsel assisting them. *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (stating that the doctrine applies to trustees and their attorneys); *OHM Syss., Inc. v. Park Place Corp.*, No. 1:19-cv-0907, 2020 WL 2572203, at *4–5 (S.D. Ohio May 21, 2020) (applying the doctrine to bar suit against a receiver). The Court agrees that the *Barton* doctrine bars this suit against the Boydston Defendants who were appointed as the receiver (or legal counsel to the receiver) of the Klosterman properties in the state court foreclosure action.

## B.   Failure to State a Claim Upon Which Relief Can Be Granted

Both the 621 Delhi Avenue allegations and the malicious prosecution allegations require a separate analysis. Klosterman alleges that the City Defendants wrongfully issued condemnation notices for 621 Delhi Avenue at the urging of Richard Boydston. (Doc. 33 at PageID 367.) Though it is difficult to discern from the Amended Complaint, the Court assumes that Klosterman intended the 621 Delhi Avenue allegations to support all of his claims against both the City Defendants and Richard Boydston. The *Rooker-Feldman* doctrine does not apply to the claims based on these allegations because the 621 Delhi Avenue property was not a part of

12

the state court foreclosure proceedings. (Doc. 55-3 at PageID 885–887.) Likewise, Klosterman's arrest on criminal charges was separate from the foreclosure proceedings. He alleges that Richard Boydston's legal billing records show coordination with the prosecutors. (Doc. 33 at PageID 366–367.)

### 1.    Standing to Assert Claims Based on the 621 Delhi Avenue Allegations

Preliminarily, all claims based on the 621 Delhi Avenue allegations fail because Klosterman has no standing to sue based on actions taken against John Jennagans LLC by the City Defendants or Richard Boydston. The Notices issued by the City Defendants in 2020 about 621 Delhi Avenue are directed to John Jennagans, LLC c/o Klosterman. (Docs. 54-10, 54-11.) Klosterman is merely the statutory agent of the limited liability company as stated in the articles of organization on file with the Ohio Secretary of State. *See* Ohio Secretary of State, Search by Business Name, https://businesssearch.ohiosos.gov/ (last viewed on November 10, 2025). "A limited liability company exists as an entity separate from its members and is capable of suing and being sued. Thus, members of a limited liability company, even if they are the sole members of the company, do not have standing to sue on its behalf." *Miller v. Bates*, — N.E.3d —, 2025-Ohio-1679, ¶ 45 (Ohio App. 2d Dist. May 9, 2025) (cleaned up); *see also CajunLand Pizza, LLC. v. Marco's Franchising, LLC*, No. 3:20-cv-536-JGC, 2021 WL 9166417, at *3–4 (N.D. Ohio June 8, 2021) (same holding); *Torrance v. Rom*, 157 N.E.3d 172, 185 (Ohio App. 8 Dist. 2020) (same holding).[9] The claims based on 621 Delhi Avenue can be dismissed for this reason alone. That said, these claims fail as a matter of law for other reasons as well.

### 2.    RICO Claims

The RICO claims based on the 621 Delhi Avenue allegations fail because Klosterman has

---

[9] Additionally, a limited liability company must be represented in court by an attorney. *Disciplinary Counsel v. Kafele*, 108 Ohio St. 3d 283, 843 N.E.2d 169, 174 (2006).

not pleaded a pattern of racketeering activity as required to prove a RICO violation. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (setting out elements of RICO claim). Courts in the Sixth Circuit have repeatedly held that a single, limited time scheme targeting a single victim is inadequate to constitute a racketeering pattern. *See Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (finding that a single scheme to deny marital assets to a single victim during the limited period of divorce proceedings is not a RICO pattern); *Moon*, 465 F.3d at 725–726 (finding that a single scheme lasting two and one-half years to deprive workers' compensation benefits to one person would not constitute a closed-ended scheme); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (allegations "involving a single victim and a single scheme for a single purpose over seventeen months [do not] constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO"); *Cyr v. Battah*, No. 22-10290, 2023 WL 1798733, at *4 (E.D. Mich. Feb. 7, 2023) (stating that "a scheme involving a single objective to defraud a single victim cannot sustain a closed-period continuity § 1962(c) claim"); *Percival v. Girard*, 692 F. Supp. 2d 712, 723 (E.D. Mich. 2010) (finding that a single scheme to deprive a single victim of rights under a settlement agreement is not a RICO pattern). The alleged acts here of issuing successive condemnation notices as to a single property owned by a single individual does not satisfy the pattern of racketeering activity requirement.

The RICO claims against the City of Cincinnati also fail because a government entity cannot form the intent necessary to engage in a racketeering activity. *See Mathis v. Ohio Dep't of Job & Fam. Servs.*, No. 2:11-cv-395, 2011 U.S. Dist. LEXIS 123436, *4–5 (S.D. Ohio Oct. 25, 2011); *Cnty. of Oakland v. Detroit*, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992).

### 3.     42 U.S.C. §§ 1983 and 1985 Claims

Next, the 42 U.S.C. §§ 1983 and 1985 claims, to the extent they are based on the 621

Delhi Avenue allegations, are time-barred. The statute of limitations for §§ 1983 and 1985 claims arising from conduct that occurred in Ohio is two years. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855–856 (6th Cir. 2003) (§ 1983); *Savage v. Unknown FBI Agents*, No. 97-3311, 1998 WL 69318, at *1 (6th Cir. Feb. 10, 1998). The two-year statute of limitations began to run when Klosterman knew or had reason to know about the injury which is the basis of his claim. *Trzebuckowski*, 319 F.3d at 856. Here, Klosterman had reason to know about any injury which arose from the allegedly fraudulent Notice of Violations for 621 Delhi Avenue when the Notices of Violations were issued in 2020. The §§ 1983 and 1985 claims are time-barred, accordingly, because the statute of limitations expired in 2022.[10]

### 4.    State Law Claims Against the City of Cincinnati

Likewise, the statute of limitations for Klosterman's state law claims against the City Defendants is two years. The Ohio Revised Code provides:

> (A) An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be

---

[10] To the extent that these statutory claims are based on a lack of due process, "[a] due process claim for the deprivation of his alleged property interest is not cognizable in a federal district court where state courts provide a remedy for the deprivation of that property interest." *Pappas v. Nash*, No. 1:04CV01641, 2006 WL 2813681, at *4 (N.D. Ohio Sept. 28, 2006), *amended on other grounds*, 2006 WL 2865503 (Oct. 4, 2006). Defendants are entitled to dismissal of a § 1983 claim where the plaintiff makes no showing of the inadequacy of the state regulatory or common law remedies. *Id.* at *5; *see also Magnum Towing & Recovery v. City of Toledo*, No. No. 3:04CV7671, 2007 WL 2492434, at *6 (N.D. Ohio Aug. 29, 2007) ("Magnum's procedural due process claims fail because Magnum failed to plead and prove that state remedies were inadequate to correct the alleged deprivation of Magnum's property interest."), *aff'd* 287 F. App'x 442, 446–447 (6th Cir. 2008).

John Jennagans LLC had such remedies available to it to challenge the issuance of the Notices of Violation concerning 621 Delhi Avenue. The Notices of Violation stated the right to appeal to the Board of Building Appeals or the Board of Housing Appeals as provided in the Cincinnati Municipal Code §§ 1101-83. (Doc. 70-1 at PageID 1483–1487.) Chapter 2506 of the Ohio Revised Code provides review by an Ohio court of common pleas of the final decisions of those Boards. Klosterman did not assert that he or John Jennagans LLC availed himself of the state law remedies nor that the remedies are inadequate.

15

> tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state.

Ohio Rev. Code § 2744.04(A). "The limitations period in R.C. 2744.04(A) applies to both political subdivisions and their employees." *Pearson v. Columbus*, 26 N.E.3d 842, 847, 2014-Ohio-5563, ¶¶ 9–10 (Ohio App. 2014). Therefore, the state law claims against the City Defendants based on the 621 Delhi Avenue allegations are time-barred.

### 5.    State Law Claims Against Richard Boydston

#### a.    Conversion

The conversion claim fails as a matter of law. The elements of tort of conversion in Ohio are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012). To recover for conversion of property, a plaintiff must establish that he demanded a return of the property and that the defendant refused to return it. *Id.* Klosterman does not allege facts sufficient to prove that Boydston exercised possession over 621 Delhi Avenue, or that Klosterman asked for the property back and was refused. The Court will dismiss the conversion claim against Boydston.

#### b.    Fraud and Breach of Fiduciary Duty

The fraud claim against Boydston fails for lack of particularity. Fraud claims require a material misrepresentation, made with intent to mislead, justifiable reliance, and resulting injury. *See E-Poch Properties, LLC v. TRW Auto. U.S., LLC*, 286 F. App'x 276, 281 (6th Cir. 2008); *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000). Federal Rule of Civil Procedure 9(b) requires that fraud claims be pleaded with particularity. The 621 Delhi Avenue allegations against Boydston are not alleged with particularity. Klosterman pleads that Boydston

"allegedly" urged Terrry James to issue condemnation notices. (Doc. 33 at PageID 367.) This is the only fact pleaded in the Amended Complaint for which Klosterman uses the qualifier "allegedly," which undermines the veracity of the fact pleaded. More importantly, Klosterman does not state when Boydston allegedly urged James to issue the notices, what form of communication—such as a letter, email, or phone call—Boydston used, or why Boydston made the request. He has not pleaded the fraud claim with particularity against Boydston, and therefore the claim must be dismissed.

Likewise, the breach of fiduciary duty claim against Boydston must be dismissed. Because the breach of fiduciary duty claim arising from the 621 Delhi Avenue allegations is based on the alleged fraud, it also fails for lack of particularity. *See Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 735 (S.D. Ohio 2009) ("[W]here a breach of fiduciary duty claim is based on fraud, the fraud must be pleaded with particularity.") This claim also fails because Klosterman has pleaded no facts to support a finding that Boydston owed him a fiduciary duty as to the property at 621 Delhi Avenue. "Under Ohio law, a fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtues of this special trust." *Vesi Inc. v. Vera Bradley Designs Inc.*, No. 23-3071, 2023 WL 7448754, at *2 (6th Cir. Nov. 9, 2023) (internal quotation and citation omitted). Klosterman has no direct relationship with Boydston as to the 621 Delhi Avenue property under the facts pleaded in the Amended Complaint. The claim must be dismissed.

### c.   Malicious Prosecution

Klosterman also asserts a malicious prosecution claim against Boydston. He asserts that Defendants Joseph Lentine and Angel Strunk filed false police reports alleging that Klosterman

stalked them. These allegations led to Klosterman's imprisonment for one year. (Doc. 33 at PageID 366–367.) He then alleges that "Boydston's legal billing records show coordination with prosecutors, confirming his participation in the malicious prosecution." (*Id.* at PageID 367.) He cites "Exhibit O: Boydston billing records" in support, but no such billing records are attached to his Complaint or Amended Complaint. (*Id.*)

This sparse, unsupported allegation does not state a plausible claim for malicious prosecution against Boydston. Malicious prosecution claims arise from criminal charges brought with malice and without probable cause. *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E.2d 440, 443 (1990) ("The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions. . . . In order to prevail the plaintiff must prove the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.") (citations omitted). Klosterman has not stated a plausible claim for malicious prosecution against Boydston upon which relief can be granted absent facts supporting the conclusory allegation that Boydston coordinated with prosecutors.

### d.   Negligent Infliction of Emotional Distress

Finally, Klosterman has not stated a claim for intentional infliction of emotional distress against Boydston stemming from the 621 Delhi Avenue or the malicious prosecution allegations. The elements of intentional infliction of emotional distress in their simplest form are intent, outrageous conduct, proximate causation, and mental anguish. *See, e.g., Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Ashcroft v. Mt. Sinai Medical Ctr.*, 68 Ohio App.3d 359, 588 N.E.2d 280, 284 (1990). Klosterman's barebones allegation against Boydston are not sufficient to meet any of these elements.

## IV.   ANALYSIS OF REQUEST FOR LEAVE TO ADD EXTORTION CLAIMS

Finally, the Court will address Klosterman's Request for Leave to Add Extortion Claims against the City and Terry James based on the Invoice for VBLM fees sent to John Jennagans LLC.  Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only with the written consent of the opposing party or with the Court's leave.  A motion for leave to amend is addressed to the discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A party seeking leave to amend should file a separate motion and attach a proposed amended pleading.  *See, e.g., C&L Ward Bros., Co. v. Outsource Solutions, Inc.*, 547 F. App'x 741, 745 (6th Cir. 2013) ("A properly filed motion for leave complete with an indication of the grounds on which the amendment is sought and the general contents of the amendment is preferable.).  Klosterman failed to do so here.  The Court could deny leave to amend on that basis, but there is a second reason here to deny leave to amend.

A district court may deny leave to amend where it appears that doing so would be futile.  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).  To the extent Klosterman seeks to add a separate cause of action for extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2), adding such a claim would be futile.  The Hobbs Act is a criminal statute and does not create a private right of action.  *See, e.g., Page v. United States*, No. 3:23-CV-00851, 2024 WL 3739401, at *3 (M.D. Tenn. June 17, 2024), *report and recommendation adopted*, 2024 WL 3549228 (July 26, 2024); *Allen v. eBay, Inc.*, No. 2:20-CV-1744, 2020 WL 3396656, at *3 (S.D. Ohio June 19, 2020).

To the extent that Klosterman seeks merely to add allegations about these purported Hobbs Act violations as support for the RICO claims against the City and Terry James, allowing the amendment still would be futile.  The Court already concluded that the City cannot be held

19

liable under RICO. *See Mathis*, 2011 U.S. Dist. LEXIS 123436, at \*4–5; *Cnty. of Oakland*, 784 F. Supp. at 1283. The allegations would add nothing to the claims against James Terry because the parties agree that Terry was retired before the VBML Invoice was sent in August 2025. (Doc. 62 at PageID 1421; Doc. 70 at PageID 1480.) Moreover, as stated earlier, the broader RICO claim is precluded by the *Rooker-Feldman* doctrine, and a RICO claim based solely on the 621 Delhi Avenue allegations fails because a single scheme against a single victim about a single property cannot satisfy the pattern of racketeering activity requirement. *See Bachi-Reffitt*, 820 F. App'x at 918; *Moon*, 465 F.3d at 725; *Vemco, Inc. v. Camardella*, 23 F.3d at 135. Accordingly, the Court will deny the Request for Leave to Add Extortion Claims.

## V.    CONCLUSION

For the above reasons, Defendants' Motions to Dismiss (Doc. 53–55, 74) are **GRANTED** and Klosterman's Request for Leave to Add Extortion Claims (Docs. 61–62) is **DENIED**. Klosterman's claims in the Amended Complaint are **DISMISSED WITH PREJUDICE** against Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John Klosterman, | : | |
| | : | Case No. 1:25-cv-312 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Adopting December 17, 2025 |
| Konza, LLC, *et al.*, | : | Report and Recommendation |
| | : | |
| Defendants. | : | |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Karen L. Litkovitz on December 17, 2025 recommending that the Court deny Plaintiff John Klosterman's Motion for Extension of Time to Serve Defendants Angel Strunk and Joseph Lentine, or Alternatively, to Find Service Complete Based on Actual Knowledge. (Docs, 76, 94.) The Magistrate Judge found that extending the time for service would be futile because Klosterman's claims against Defendants Angel Strunk and Joseph Lentine would be subject to dismissal for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted. (Doc. 94 at PageID 1836–1837.) Klosterman filed an Objection to the Report and Recommendation, arguing only that his malicious prosecution claim against Strunk and Lentine should be allowed to proceed. (Doc. 95 at PageID 1839, 1845.)

Reviewing the Report and Recommendation *de novo* under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the Court agrees with the Magistrate Judge that Klosterman has failed to plead a viable malicious prosecution claim against Strunk or Lentine. A malicious prosecution claim, whether under federal or Ohio law, requires a favorable termination of the underlying criminal case against the plaintiff. *See Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th



EXHIBIT
A-3

864, 870 (6th Cir. 2024) (malicious prosecution under the Fourth Amendment), *cert. denied sub nom. Susselman v. Washtenaw Cnty. Sheriff's Off.*, 145 S. Ct. 1901, 225 L. Ed. 2d 647 (2025); *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E.2d 440, 443 (1990) (malicious prosecution under Ohio law). Klosterman admits in the Amended Complaint that the criminal proceedings against him resulted in his imprisonment, not in his favor. (Doc. 33 at PageID 371.)[1] It would be futile to allow Klosterman to obtain late service upon Strunk and Lentine to pursue a fatally-flawed claim for relief.

For these reasons, the December 17, 2025 Report and Recommendation (Doc. 94) is **ADOPTED**. Klosterman's Objection (Doc. 95) is **OVERRULED**, and the Motion for Extension of Time to Serve Defendants Angel Strunk and Joseph Lentine, or Alternatively, to Find Service Complete Based on Actual Knowledge (Doc. 76) is **DENIED**.

   **IT IS SO ORDERED.**

                         BY THE COURT:

                         Susan J. Dlott
                         United States District Judge

---

[1] He also asserts in the Objection that he was "convicted" and imprisoned. (Doc. 95 at PageID 1841.)

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John Klosterman, | : | Case No. 1:25-cv-312 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | Order Dismissing without Prejudice Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk under Federal Rule of Civil Procedure 4(m) |
| Konza, LLC, *et al.*, | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Emergency Motion to Withdraw Notice of Voluntary Dismissal and Plaintiff's Emergency Motion for (1) Entry of Rule 4(m) Dismissal of Unserved Defendants and (2) Rule 54(b) Certification of Final Judgment following dismissal of his appeal by the Sixth Circuit Court of Appeals. (Docs. 113–114).

**I.**

Plaintiff John Klosterman filed an Amended Complaint on June 27, 2025 against ten named Defendants. (Doc. 33.) Seven Defendants filed Motions to Dismiss. (Docs. 53–55, 74.) On December 10, 2025, the Court granted the Motions and dismissed with prejudice the claims against Defendants Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan. (Doc. 89.)

Klosterman failed to effectuate service against Defendants Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk. On January 13, 2026, the Court denied Klosterman's request for an extension of time to serve Joseph Lentine and Angel Strunk. (Doc. 103.) On February 11, 2026, Klosterman filed a Notice of Voluntary Dismissal purporting to dismiss without prejudice his claims against the three unserved Defendants pursuant to Federal Rule of Civil Procedure



1

41(a)(1)(A).  (Doc. 108.)  Rule 41(a)(1)(A) allows a plaintiff to dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A).  Then on February 13, 2026, before the Court entered a final judgment in the case, Klosterman filed a Notice of Appeal seeking to appeal, among other issues, both the December 10, 2025 Dismissal Order (Doc. 89) and the Court's Order denying his request for an extension of time to serve Joseph Lentine and Angel Strunk (Doc. 103).  (Doc. 109.)

On February 20, 2026, the Sixth Circuit Court of Appeals dismissed Klosterman's appeal for lack of jurisdiction.  (Doc. 112.)  The Sixth Circuit noted that this Court had not put on an order dismissing Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk.  (*Id.* at Page 1904.)  It stated that Klosterman could not voluntarily dismiss without prejudice the three Defendants simply for the purpose of obtaining an immediate appeal.  (*Id.* at PageID 1904–1905.)  Finally, the Sixth Circuit suggested that it could not exercise jurisdiction over the December 10, 2025 Dismissal Order (Doc. 89) because the Court had not put on a final judgment with a Federal Rule of Civil Procedure 54(b) certification.

Klosterman now moves the Court to withdraw his Notice of Voluntary Dismissal under Rule 41(a)(1)(A) and to enter an order dismissing without prejudice Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk under Federal Rule of Civil Procedure 4(m).  (Docs. 113–114.)  Rule 4(m) provides in part that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant."  Fed. R. Civ. P. 4(m).  As Klosterman has not served Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk, they must be

2

dismissed under Rule 4(m).[1] The Court will permit Klosterman to withdraw his Notice of Voluntary Dismissal under Rule 41(a)(1)(A) to effectuate the purpose of Rule 4(m) and allow dismissal for failure to timely serve these three Defendants.

Klosterman also asks the Court to enter a final judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the December 10, 2025 Dismissal Order, so he can appeal it. (Doc. 114 at PageID 1911–1912.)

## II.

Accordingly, Plaintiff's Emergency Motion to Withdraw Notice of Voluntary Dismissal (Doc. 113) is **GRANTED.**

Plaintiff's Emergency Motion for (1) Entry of Rule 4(m) Dismissal of Unserved Defendants and (2) Rule 54(b) Certification of Final Judgment (Doc. 114) is **GRANTED.** The Court **DISMISSES WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m) Defendants Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk because Klosterman failed to timely obtain service against them.

Judgment to follow. Federal Rule of Civil Procedure 54(b) certification is not necessary because the Court has resolved all claims against all parties. However, if the Sixth Circuit were to deem it necessary, the Court notes that there would not be any "just reason for delay" for appeal of the Court's December 10, 2025 Dismissal Order (Doc. 89).

---

[1] By its terms, Rule 41(a)(1)(A) allows a plaintiff to dismiss an action "without a court order." This Court does not understand the Sixth Circuit's statement that the claims against the three unserved Defendants were still pending after Klosterman filed the Notice of Voluntary Dismissal (Doc. 108) absent a court order. (Doc. 112 at PageID 1904.) It is true, however, that the Court had not put on a judgment dismissing the case before Klosterman filed his appeal. The Sixth Circuit seems concerned that Klosterman both tried to voluntarily dismiss his claims against the three unserved Defendants without prejudice to refiling under Rule 41(a)(1)(A), but also to appeal the Court's decision to not allow him to serve Joseph Lentine and Angel Strunk out of time. (Doc. 112 at PageID 1904.) "Generally, a plaintiff who requests or consents to the dismissal of his action cannot appeal that dismissal because it is not an involuntary adverse judgment." *Dearth v. Mukasey*, 516 F.3d 413, 415 (6th Cir. 2008). Klosterman has requested or consented to the Rule 4(m) dismissal of the three unserved Defendants here.

3

**IT IS SO ORDERED.**

BY THE COURT:

_Susan J. Dlott_

Susan J. Dlott
United States District Judge

4

Case: 1:25-cv-00312-SJD-KLL Doc #: 117 Filed: 02/25/26 Page: 1 of 1  PAGEID #: 1923

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John Klosterman, | : |
| | :      Case No. 1:25-cv-312 |
| Plaintiff, | : |
| | :      Judge Susan J. Dlott |
| v. | : |
| | :      Judgment |
| Konza, LLC, *et al.*, | : |
| | : |
| Defendants. | : |

Decision by Court: This action came to hearing before the Court. The issues have been heard and decisions have been rendered. **IT IS ORDERED AND ADJUDGED** that:

Defendants' Motions to Dismiss (Doc. 53–55, 74) are **GRANTED** and Klosterman's Request for Leave to Add Extortion Claims (Docs. 61–62) is **DENIED**. Klosterman's claims in the Amended Complaint are **DISMISSED WITH PREJUDICE** against Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC, Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan; and

Klosterman's claims against Defendants Tri-State Organization, Inc., Joseph Lentine, and Angel Strunk are **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m).[1]

**IT IS SO ORDERED.**

BY THE COURT:

*Susan J. Dlott*

Susan J. Dlott
United States District Judge

---

[1] Federal Rule of Civil Procedure 54(b) certification is not necessary because the Court has resolved all claims against all parties. However, if the Sixth Circuit were to deem it necessary, the Court notes that there would not be any "just reason for delay" for an appeal of the Court's December 10, 2025 Dismissal Order (Doc. 89).

1


EXHIBIT
A-5

1

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

- - -

D144259620

CITY OF CINCINNATI,          )
                             )
      Plaintiff,             )
                             )
   vs.                       )CASE NO: A1905588
                             )
JOHN KLOSTERMAN, et al.,     )
                             )
      Defendants.            )

- - -

Transcript of Audio Proceedings

- - -

APPEARANCES:

James L. Nieberding, Esq..
On behalf of the Plaintiff Konza.

Richard Boydston, Esq.
On behalf of the Defendant Tri-State.

      BE IT REMEMBERED that upon the
Trial of this cause, on January 10th, 2025 before
Magistrate Christopher Liu, a said magistrate
of the said court, the following proceedings were had.

EXHIBIT

A

Bank, right?

A.   Yes.

Q.   All right.  It's dated September 26th of 2022.

A.   Correct.

Q.   On this date, September 26, 2022, was there any discussion about terminating Tri-State Organization?

A.   I really don't know how to answer that.  There was no discussion with the Land Bank about terminating him.

Q.   Okay.  Was there any discussion with any representatives of the city?

A.   No.  The city was not an active participant at this time because the Land Bank had not only substituted as plaintiff, it had purchased the city's judgment against John Klosterman.

Q.   Can you tell me how the purchase price was calculated?

MR. NIEBERDING:  And just bear me a little bit of leeway here, Your Honor, I'll try to get to where I'm going.

Q.   How was the purchase price of 1.474,017 calculated?

213

A.    Well, if you take a look at the Purchase Agreement, page one.

Q.    I got it.

A.    Paragraph two.

Q.    Yes.

A.    If you haven't read it I commend it to your attention. But if you have read it and don't understand it, I could maybe re-explain it.

THE COURT:  I'm going to be honest in that I'm struggling to see the relevance of the purchase price negotiated between him and the Land Bank on the claims that are between him and Mr. Lentine.

And so to the extent you'd like to articulate that, please do. Otherwise, I'd like to go another direction.

BY MR. NIEBERDING:

Q.    Okay. On this date, Tri-State had reported a cumulative deficit of $160,787.

Paragraph 2 talks about a purchase price of $1.47 mill, $1.474,017, part of which is a balance due on a judgment, and then an $800 cash component. I'm curious how the $800 cash component was calculated.

Did it include any part of the operating deficit that Tri-State had been reporting through the Receiver's 30th report?

A.    Well, just to correct, it wasn't 800.  It was 800,000.

Q.    The cash component?

A.    Yeah.

Q.    If I misspoke, it's $800,000.

A.    Well, it was my hope was that everybody could be covered by that.

Q.    Okay.  So at that point, or subsequently, December, Konza made an application for $499,000, was that factored into the $800,000 cash component?

A.    The 800,000 was a negotiated number, and it took into account all the claims and possible claims.

Q.    But it didn't take into account $160,000 that TSO claimed?

A.    The negotiation That resulted in the September 26th motion was in anticipation of a haircut for Konza, and a haircut for TSO.

Q.    Was this purchase price the value of the properties, or was this calculated to satisfy the expenses of the Receivership?

A.    It was hoped that that would cover the expenses of the Receivership with agreed reductions.

Q.    Okay.

A.    That was my belief at the time.

Q.    Did Tri-State agree to a reduction?

A.    Pardon?

Q.    Did Tri-State agree to a reduction?

A.    Mr. Lentine was not part of this process.

Q.    Okay.

A.    He had involved himself several months earlier with having out of his office an objection to the sale by his friends or colleagues, the Colemans.

And I believe that he was, I'll say, bad mouthing the Land Bank at this point.

THE COURT:    I think we've gone really far afield of the claims that are actually before the Court.

Mr. Lentine asserts that he's owed money by Konza, and, of course, the amount of money available as a result of the sale is what you're talking about.

BY MR. NIEBERDING:

Q.    Okay.  And that was to come out of this $800,000?

A.    Yes.

Q.    Cash component.  Okay.  So from that -- nevermind.

I'll withdraw it.

THE COURT:  How much money were you intending to pay Mr. Lentine?

Q.    Now, what sum of money was factored into the $800,000, the cash component?

A.    There was a range for TSO.  It didn't include all the dollars that were shown there.

It was a total surprise to later learn that he was claiming $210,000 in addition for his construction management.

And it was also a surprise, but much smaller, that he was claiming over $20,000 for new leases when that had never been put in any report or otherwise requested.

THE COURT:  I'm sorry.  When you said $20,000 surprise, for what?

THE WITNESS:  For commissions on new leases.

these building code violations, were they a factor in the calculations of the purchase price?

A.   Well, maybe -- maybe the better way to ask me is, were they a factor in the calculation of the sale price?  And they weren't.

Q.   They were not?

A.   For the receiver's side, Konza, they weren't.

Q.   Okay.

A.   I don't know if they were a factor from the purchaser's point of view.

Q.   Okay.  But, again, the Land Bank submitted an offer of 1.47 million, and that was acceptable?

A.   Well, you --

Q.   To the receiver?

A.   That was the highest and best offer.

Q.   Take a look at Joint Exhibit 37 for me if you would.

THE COURT:  Counsel, about how many more of these exhibits are we going to be going through?

MR. NIEBERDING:  Two.

THE COURT:  Sorry?

234

CERTIFICATE

I, Sharlene D. Hall, RMR, the undersigned, official Court Reporter for the Hamilton County Court of Common Pleas, do hereby certify that I did transcribe from Audio Recording the within 233 pages, and that the foregoing Transcript of Proceedings is a true, complete, and accurate transcript of said Audio Recording.

IN WITNESS WHEREOF, I hereunto set my hand this 22nd day of January, 2025.

_Sharlene D. Hall_

Sharlene D. Hall, RMR
Official Court Reporter
Court of Common Pleas
Hamilton County, Ohio

50

that these are papers that you filed in the case between March 2nd --

A.    Yes.

Q.    -- and March 23.

A.    Yes.

Q.    Is that correct?

A.    I would assume so, Yes.

Q.    Well, are they or are they not?

A.    Yes, I mean they are.  Yeah.

Q.    And what did you seek to achieve from the Court with these?

A.    To be paid the money I was promised from the beginning.

Q.    That was the sole intent?

A.    Oh, to stop the sale so I would be paid.

Q.    You wanted the sale to stop?

A.    A hundred percent.  It was an engineered sale.  It wasn't at the proper value of the buildings.  It was not what you and I discussed from the beginning and how we would do this, and it wasn't the basis for me pouring the money in that I did, and for putting the effort forth that I did.

You got pushed by the city to sell

EXHIBIT
LENTINE
A STATMENT

sale process as well, as to the awarding of the sale contract to the Land Bank?

A.   Yes.  What I objected to was there were multiple bidders, and Jennifer Donathan -- the bid process as you explained it to me, and as I explained it to other people who had asked, and gave them Jennifer Donathan's number, was that there would be a re-bid period.

When they attempted to get back in contact and come for a re-bid, there was never any response.  It wasn't just people I knew. It was also one of the city inspectors, Matthew, who we dealt with on a regular basis, who said -- literally told me that this was ridiculous that his own brother-in-law was trying to bid on one of the properties and there was no response.  That it was all in the bag for the Land Bank.

Q.   Would you take a look at Exhibit 82?

A.   Yes.

MR. NIEBERDING:  82?

MR. BOYDSTON:  Yes, K-82.

MR. NIEBERDING:  K-82.

A.   Jennifer Donathan.  Letter to me.

properties, and that's why we're in the situation we're in.

But it was an expedient thing and it's what the city wanted. It was not the plan that we started from the beginning.

They were given all sorts of special treatment and everything else.

Q. So do you know when the Landbank submitted their offer to purchase?

A. No. I was kept out of that. I know about the time. Because I was asked to walk around with people and let them into houses and open units for them. No other bidder got that. I was specifically told this.

I had other parties interested in the properties. But I was specifically told, no, there would be no preview of sale. That's part of the conditions. But the Landbank got it.

Q. All right. Take a look at TSO Exhibit GG.

THE COURT: You said GG?

MR. NIEBERDING: GG, yes, Your Honor.

A. Okay. Yes, sir.

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CITY OF CINCINNATI,                    :        Case No. A1905588
                                       :        (Judge Wende C. Cross)
        Plaintiff,                     :        (Magistrate Anita P. Berding)
                                       :
        v.                             :        REPLY BY RECEIVER TO OPPOSITION
                                       :        BY SUBSTITUTE PLAINTIFF TO
JOHN KLOSTERMAN, et al.,               :        RECEIVER'S SEPTEMBER 8, 2023
                                       :        MOTION
        Defendants.                    :

On September 8, 2023 the Receiver Konza, LLC filed its second application for approval

of payment of fees and reimbursement of expenses[1] (the "Second Application"). HCLRC has

now, for the first time, responded to the Second Application[2] (the "HCLRC Fee Objection").

HCLRC states it opposes the Second Application on the grounds that the receivership should be

terminated and that it would be unreasonable and inequitable to award the Receiver any

additional fees and expenses. (HCLRC Fee Objection at 1).

In the 27 months between the filing of the Second Application and the filing of the

HCLRC Fee Objection, the Receiver did not receive any communication from HCLRC regarding

the propriety or the details of any of the fees or expenses the Receiver seeks to be approved in

the Second Application. TriState Organization, Inc. ("TSO") and Joseph Lentine ("Lentine")

jointly filed a timely objection to the Second Application on September 22, 2023[3] (the

"TSO/Lentine Objection"). The sole ground stated in the TSO/Lentine Objection was that the

---

[1] titled Motion by Receiver for Approval of Fees and Expenses from December 1, 2022 Through
August 31, 2023 and for Order Terminating the Receivership and Discharging and Releasing
Receiver filed September 8, 2023 by the Receiver

[2] Substitute Plaintiff Hamilton County Land Revitalization Corporation's Memorandum in
Opposition to Receiver's Second Application for Approval of Fees and Expenses filed December
8, 2025

[3] Memorandum of Tri-State Organization Inc. and Joseph Lentine in Opposition to Motion
Discharge Receiver and Terminate Receivership filed September 22, 2023

EXHIBIT
AA

receivership should not be terminated until their claims were determined. No one has argued against approving the fees and expenses identified in the Second Application on any grounds except, at this late date, HCLRC.

This Reply is being filed along with the Receiver's Memorandum in Opposition to Motion by Substitute Plaintiff to Terminate Receivership which the Receiver is filing to oppose HCLRC's motion to terminate the receivership[4].

The Second Application should be approved and the receivership should not be terminated as this time.

### A. Facts

The fees and expenses sought to be approved in the Second Application cover the nine month period December 1, 2022 through August 31, 2023. During that period the Receiver obtained the order approving the sale of all of the receivership property to HCLRC (the "HCLRC Sale") and saw to the closing on the HCLRC Sale. Obtaining that order and closing on the HCLRC Sale were, of course, of direct benefit to HCLRC.

The Second Fee Application requests approval of the following.

> A. for amounts paid by the Receiver to third
>    parties.................................................$16,505.50
>
> B. for Greater Cincinnati Water Works
>    ("GCWW").............................................$11,230.06
>
> C. for Gateway..............................................$10,658.30
>
> D. for legal counsel to the Receiver through
>    8/31/23..................................................$28,654.89
>
> E. to the Receiver for fees through 8/31/23...............$37,390.00
>                                           total    $104,438.75

---

[4] Substitute Plaintiff Hamilton County Land Reutilization Corporation's Motion to Terminate Receivership (the "HCLRC Motion to Terminate")

2

All of these items are supported by exhibits attached to the Second Application. The amounts due to third parties are all documented in Exhibit A and consist of 19 payments made by the Receiver for various payments the Receiver made including to Dial One Security for services at the decommissioned Church of Our Lady of Perpetual Help and adjacent rectory, for furnaces for tenants at 654 and 649 Steiner and for liability insurance.

The amounts due to GCWW are listed in Exhibit B and include combined water and sewer charges for 23 receivership properties.

Gateway acted as property manager for the Receiver from January 20, 2023 until the closing on the HCLRC Sale. Gateway's fees and expenses are detailed in Exhibit C. After the closing on the HCLRC Sale, Gateway continued as property manager for HCLRC.

The fees for the Receiver's counsel and for the Receiver are listed in the Second Application respectively in Exhibits D and E. The give the description and time expended for the work. These fees are presented in the same format as they were in the Receiver's first application made on December 5, 2022 for the period ending November 30, 2022. That first application was granted and payment of those fees was approved.

## B. Argument

HCLRC seems to conflate approval of fees and expenses with source of payment. And in HCLRC's Motion to Terminate, HLCRC vaults $57,271.18 due to TSO, not included in the Second Application, above all five categories of fee and expense reimbursement totaling $104,437.75 sought in the Second Application.

For HCLRC to object to fees and expenses incurred by the Receiver during the five months from December 1, 2022 to May 1, 2023 to close on the HCLRC Sale is not just wrong, it is preposterous. The Receiver's work was not only helpful, the Receiver's agreement to the HCLRC Sale and to the closing on it was undeniably required to effect the HCLRC Sale.

3

### 1. The TSO/Lentine Claims

The continuous litigation instigated by TSO and Lentine began with five pro se filings by Lentine in March 2023 and continued in their tendering a complaint in September 22, 2023[5] (the "TSO/Lentine Complaint"),  Both the Receiver and HCLRC incurred legal fees in litigating the TSO/Lentine Complaint which named both, as well as others, as Defendants.

Preceding the filing of the TSO/Lentine Complaint, HCLRC opposed the Receiver's December 5, 2022 motion to approve expenses to TSO.  HCLRC ultimately filed an objection (together with four affidavits) to the TSO and Lentine claims six months later on June 5, 2023[6]. That objection was supported by the Receiver with two affidavits.  The arguments HCLRC made against TSO's and Lentine's claims as well as HCLRC's criticism of the retention by TSO of rents and security deposits and its management of the receivership properties were never expressly ruled on.  HCLRC was dismissed from the TSO/Lentine Complaint a year later in connection with the pairing down of the TSO/Lentine Complaint to simply one defendant, namely, the Receiver.  It was then left to the Receiver alone to litigate the TSO and Lentine claims.

The TSO and Lentine claims in the TSO Litigation totaled $374,746.00, consisting of $164,746.00 claimed by TSO and $210,000.00 claimed by Lentine.  The amount due to TSO was determined in light of all of the payments received by TSO.  None of the amount was not set off against TSO.  The accusations by HCLRC were ultimately not proven.  But the Receiver was obliged during the period covered by the Second Application to litigate the TSO and Lentine claims.

---

[5] Motion of Tri-State Organization Inc. and Joseph Lentine for Leave of Court to Assert Claims Against Receiver

[6] Substitute Plaintiff Hamilton County Land Reutilization Corporation's Memorandum in Opposition to Tri-State Organization, Inc. and Joseph Lentine's Application for Payment of Costs, Expenses, and Fees

### 2. <u>Klosterman Filings</u>

Defendant John Klosterman filed nine separate papers of various sort during the period covered by the Second Application[7]. The Receiver responded to each and prevailed on each. The HCLRC Fee Objection would effectively value that work at nothing.

### C. Withdrawal of Receiver's Request<br>to Terminate Receivership

The Receiver withdraws its request to terminate the receivership made at the end of the Second Application for the reasons stated above and also stated in the Receiver's opposition to the HCLRC Motin to Terminate which is filed along with this Reply.

### D. <u>Conclusion</u>

Based upon the foregoing and on the Receiver's opposition to the HCLRC Motion to Terminate filed along with this Reply, the Receiver respectfully submits that the Second Application should be approved.

---

[7] Defendant's Objection to Plaintiff's Motion by Receiver for Approval of Fees and Expenses of TriState Organization, Inc. Through 11/30/22, Ordering Direct Payment and Defendant's Objection to Plaintiff's Motion by Receiver for Approval of Fees and Expenses through 11/30/22 Ordering Direct Payment filed December 14, 2022; Objection Magistrate's Order to Distribute Fraudulent Sales Funds to Receiver and Richard Boydston for Unjust Enrichment Injunction on All Activities of Title Company, Re-Sell Properties filed December 28, 2022; Answer Kelley Allesee on Motion to Audit the Books of TSO and those of Konza LLC. A Construction Audit of TSO., Answer Receiver for Distribution of funds. Replace Agents or Dismiss without Prejudice. Court to exercise Rule 60(b) or ORC filed January 18, 2023; Answer Lentine, who has no standing Order: Public Request be fulfilled, Audit by CPA of Konza, LLC and TSO filed March 7, 2023; Motion for rents to pay for: Review of sale, Audits of the Books of TSO and Konza, LLC, and the work done prior to new management. Request continuance of May 4, 2023 until audits are completed. Reply to Konza's March 17, 2023 Motion to Strike Hearing request filed March 20, 2023; Motion to Disqualify Magistrate Anita Berding filed April 18, 2023; Answer to Affidavits filed. Order bank statements Support Denial of Summary Judgment Order Richard Boydston to pay Mr. Lentine filed July 3, 2023; Motion to Order Investigation, Order emails from Mr. Boydston filed July 5, 2023; Defendant's Motion to Counsel Receiver to Produce Records and Executive Summary filed August 21, 2023

5

Respectfully submitted,

/s/ *Richard Boydston*

Richard Boydston (0022360)
Counsel for Konza, LLC, Receiver
Dentons Bingham Greenebaum LLP
312 Walnut Street #2450
Cincinnati, Ohio 45202-4028
513.455.7663
richard.boydston@dentons.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on each of the following by email on January 12, 2026.

James L. Nieberding, Esq.
Counsel for Tri-State Organization and
   Joseph Lentine
Nieberding & Nieberding CO LPA
810 Sycamore St., Suite 423
Cincinnati, OH 45202
jlnieberding1117@gmail.com

Erica Faaborg, Esq.
Counsel for City of Cincinnati
801 Plum Street
Cincinnati, OH 45202
erica.faaborg@cincinnati-oh.gov

Kara A. Czanik, Esq.
Brian E. Schultz, Esq.
Counsel for Plaintiff Hamilton County
   Land Reutilization Corporation
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com

John Klosterman
5615 Sidney Road
Cincinnati, OH 45238
johncklosterman@gmail.com

/s/ Richard Boydston

6

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, STATE OF OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI | : | Case No. A 19 05588 |
| | : | |
| Plaintiff | : | TRI STATE & LENTINE OBJECTIONS |
| | : | to MAGISTRATE DECISION |
| vs. | : | Civ. R. 53(D)(3)(b) |
| | : | |
| JOHN KLOSTERMAN et al | : | |
| | : | Judge Wende C. Cross |
| \ Defendants | : | Magistrate Christopher Liu |

Come Tri State Organization Inc. and Joseph Lentine, hereafter referred to as TSO and Lentine respectively, through counsel, respectfully submit their Objections to Magistrate Decision, entered on April 11, 2025.   A copy of Magistrate's Decision is attached.

By Order entered on March 21, 2024, TSO and Lentine were granted leave to pursue their respective claims against the Receiver / Konza, and these proceedings were undertaken pursuant to that Order. As noted in the February 20, 2025 Magistrate Scheduling Order, the present dispute involves only claims between Receiver Konza and non-party intervenors TSO and Lentine.  City of Cincinnati, Hamilton County Land Reutilization Corporation and John Klosterman are not parties to the present dispute, and did not participate in the trial of these claims.

The matters and claims asserted by and between the parties Konza LLC, Receiver, Tri-State Organization Inc. and Joseph Lentine were presented to Magistrate Liu over period of four (4) days: January 8, 2025, January 10, 2025 January 31, 2025 and concluded on February 12, 2025. Transcripts of the proceedings before Magistrate Liu were filed with the Clerk of Courts on March 17, 2025.

Tri-State and Lentine advance the following objections to April 11, 2025 Magistrate Decision:

A.     FINDINGS OF FACT.

1.     On February 14, 2020, on motion of Plaintiff City of Cincinnati, and pursuant to O.R.C. §2735.01 et seq., Konza LLC, referred to as Konza, was appointed as receiver to proceed with

EXHIBIT
BB

judicial sale of the fifty-nine Klosterman properties, referred to as *the Properties*, as more fully identified in that order.  (See Joint Ex. 1 / Feb. 14, 2020 Order Appointing Receiver.)

2.      Receiver / Konza was specifically authorized to take any action to manage, maintain, preserve, lease and rent all of the Properties. The Receiver was authorized to do the following: … (B) employ such attorneys, managers, agents, and persons as its judgment are advisable or necessary for performance of the duties of the Receiver; and, (C) retain contractors and other persons and entities to make repairs to the Properties and to maintain the Properties. (Joint Ex. 1 ¶3). The Receiver shall be entitled to reasonable compensation for services rendered and to reimbursement for expenses incurred, all as approved by the Court. All compensation and reimbursement of expenses awarded by the Court to the Receiver were to be treated as administrative expenses with priority in this case and for those arising from *the Properties*, a first and best lien on the Properties. (Joint Ex. 1 ¶18).

3.      On the date of appointment of Receiver, *the Properties* consisted of twenty-four buildings with street addresses. Twelve of the buildings were occupied, and twelve buildings were vacant. Four of the vacant buildings were condemned.  (See Joint Ex. 2 / Receiver's 1st Report).  There were fourteen tenants occupying the ten remaining occupied *Properties*. Total monthly rents reportedly due from those tenants was $8590, with $3670 rent arrearages.  In the Receiver 1st Report, Konza reported Security Deposits totaled $6770.  No rents or security deposits were turned over by Defendant Klosterman at commencement of receivership.  (See Joint Ex. 2 / Receiver's 1st Report. See also TSO Ex. C). Konza and TSO commenced management of properties in March 2020.  There was no initial capital deposit. (T.p. 1/10/25 pg. 190). The Receivership started with $0 for operations.

4.      On the date of Konza appointment, *the Properties* were in very poor physical condition, subject to multiple building department and health department orders.  Beginning March 5, 2020, Konza manager Mr. Boydston reported that he inspected virtually every room in every building in *the Properties*. (See Joint Ex. 2 / Receiver's 1st Report).

5.      Pursuant to ORC §2735.01, Konza was permitted / authorized to engage TSO to manage the receivership properties.  Konza and TSO agreed that TSO would continue as property manager for receivership properties upon appointment of Konza as receiver. No written contract was

2

executed by the parties. Parties proceeded to perform different aspects of their agreement from February 2020 to January 20, 2023. (See Magistrate Decision p. 2 ¶ I(A). (Tp. 1/8/25 pg 15-16, 62-70.)

6.      On or about March 1, 2020, at the direction Konza, TSO and Lentine began providing routine management and non-routine construction services at *the Properties,* for the benefit of the Receivership. The Magistrate found that Konza desperately need a property manager, and TSO provided that necessary service. It was not possible for Konza to manage these properties without TSO. Konza was not able to engage any other property managers for this purpose. (See Magistrate Decision p. 5). Despite Konza efforts to solicit other property management companies to provide services, no other property management companies were interested in the project. (T.p. 1/10/25 pg. 170-171). Konza concerns with reliability of TSO operations were primarily related to reporting of labor and materials expenses, not attributable to specific properties. (T.p. 1/10/25 pgs. 170-175.)

7.      Notwithstanding those concerns, Konza did not demand TSO do anything differently, other than itemization of labor and expenses by receivership property address(es). (T.p. 1/10/25 pg. 186). TSO continued to collect rents and address problems with the receivership properties. TSO would advise Konza of property maintenance activities attributable to building code violations. Konza did not instruct TSO to stop activities. (T.p. 1/10/25 pg. 177-178). No other property management company would agree under any circumstances to do the work. (T.p. 1/10/25 pg. 187). Receiver was not in position to replace Lentine and TSO without closing down the receivership properties. (T.p. 1/10/25 pg. 188-189).

8.      TSO and Lentine continuously provided property management and construction services for the benefit of the receivership, until January 20, 2023, when Konza terminated TSO and Lentine contracts. (See TSO Ex. II). Konza understood that TSO was operating on rent collections and making repairs from collections from March 2020 through December 2022. Konza was aware that TSO was operating at deficits each month. (T.p. 1/10/25 pg. 191). On Jan. 20, 2023 Konza terminated TSO and Lentine contracts with the Receiver. (See TSO Ex. II).

9.      During the period from Feb. 14, 2020 through Jan. 20, 2023, TSO prepared and submitted to Konza, monthly reports which included summaries of rent collections, expenses for materials,

3

labor costs, and description of maintenance and repairs for the reporting period. For each month from Feb. 2020 through Jan. 20, 2023, TSO reported cumulative operating deficit related to TSO property management of *the Properties*. (See Joint Ex. 2-Joint Ex. 36. Receiver 1st Report 1 thru Receiver 35th Report). As of January 20, 2023, TSO reported to Konza, a cumulative operating deficit of $148,181 for labor and materials provided by TSO for operation of the receivership properties. (See Joint Ex. 36). The Magistrate found the cumulative operating deficit to be $145,138. (Magistrate Decision pg. 4).

10.    Mr. Boydston testified that Konza had intention to pay TSO and Lentine, but not cover all TSO deficits. Konza anticipated that TSO payments would be paid within range of $100,000 to $300,000, but close to $100,000. Receiver / Konza's plan was to address the TSO operating deficits and have the Purchaser HCLRC cover all expenses. Konza anticipated that the $800,000 cash component of HCLRC purchase price would take into account all claims possible claims, including discount for receiver and TSO claims. (T.p. 1/10/25 pg. 213-217). Receiver and other contractors / professionals were paid in excess of $499,000 from proceeds of sale of the properties. (T.p. 1/10/25 pg. 219-222). No part of the proceeds of sale of the receivership properties was distributed to TSO for services provided to the receivership. No part of the cumulative deficit incurred by TSO from operation of the receivership properties has been paid to TSO.

11.    The Magistrate found "As to the essential terms of the contract, TSO was to collect rents and deposits from tenants, TSO was to perform necessary maintenance, and TSO was to submit monthly written reports. The parties accepted the essential terms as demonstrated by their conduct. **Konza repeatedly promised to pay TSO from the proceeds of the final sale as form of consideration.** (Emphasis added) (See Magistrate Decision p. 3).

12.    The Magistrate found that the testimony and evidence established an implied-in-fact contract as to certain essential terms between TSO and Konza, which the parties accepted, as demonstrated by their conduct, and by Konza repeated promise to pay TSO from the proceeds of the final sale as a form of consideration. Magistrate found that the essential terms of the parties contract to be (1) TSO was to collect rents and deposits from tenants, (2) TSO to perform necessary maintenance, (3) TSO to submit monthly reports, (4) TSO to deduct operating expenses from the collected rents, (5) Konza to prepare plan to dispose of all properties. (See Magistrate Decision pg. 3).

4

However, multiple problems arose that were outside the scope of the essential terms, including most notably, rents collected did not fully cover the operating expenses and created a deficit, multiple maintenance calamities and tenant problems, and code enforcement orders, the receivership dragged on much longer parties would have liked, and properties eventually sold for less money than what was necessary to fully compensate all the parties. (T.p. 1/10/25 pgs. 188-189, 191-193). Konza wanted TSO to do no more work than the rents would cover. (T.p. 1/10/25 pgs. 179-180). TSO compensation was contemplated by parties as percentage and portion of the collected rents. (See Magistrate Decision pg. 3).

13.    On Dec. 5, 2022, TSO claimed deficit of $158,441.20 from receivership management operations was due from Konza; TSO claimed additional amount of $21,325 was due for commissions on new rentals, plus claim for additional $210,000 annual compensation due to Lentine for construction management services. (See Konza Ex. K-40 Exhibit A). The Magistrate found that$145,138 was cumulative deficit in operating expenses. (See Magistrate Decision pg. 4 fn. 21). None of these claimed amounts have been paid. Magistrate found that Konza had no contractual obligation to reimburse TSO for reasonable expenses that were not covered by rents, and as consequence, determined that there had not been breach of the parties' contract and no damages were awarded to TSO. The deficit was simply an unprofitable and unplanned outcome for TSO.(See Magistrate Decision pg. 4).

B.    FIRST OBJECTION:

**MAGISTRATE ERRED IN DETERMINATION THAT THERE WAS NO BREACH OF CONTRACT BY KONZA AND AWARDED NO DAMAGES TO TSO FOR OPERATING DEFICIT FROM RECEIVERSHIP OPERATIONS FROM MARCH 2020 THROUGH JANUARY 2023, FINDING THAT DEFICIT BEYOND RENTS COLLECTED WAS BEYOND THE SCOPE OF THE AGREED ESSENTIAL TERMS OF THE PARTIES AGREEMENT.**

By the order of appointment, Konza was granted all powers of a receiver under O.R.C. §2735.01 et seq. Konza was expressly authorized to take any action to manage, maintain, preserve, lease and rent *the Properties*; to employ such managers, agents, and persons, as in its judgment, were advisable or necessary for performance of the duties of the Receiver; and to retain contractors and other persons and entities, to make repairs and to maintain *the Properties*. (See Joint Ex. 1 / Order Appointing Receiver. ¶. 3 Powers of Receiver).

5

Pursuant to authority conferred by Feb. 14, 2020 Order, and ORC §2735.01 et seq., Konza, by its Manager Boydston, contracted with TSO to provide routine property management services to the receivership, to collect rents, to respond and remedy tenant complaints, to put units in shape to be rented, to repair and maintain *the Properties*, on time and materials basis.

B(1).   ELEMENTS OF BREACH OF CONTRACT:

To establish a claim for breach of contract, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and a resulting damage or loss to the plaintiff. *Danzinger & DeLlano LLP v. Morgan Verkamp LLC* (1CA 2023) 2023-Ohio-1728, P.29.

B(1)(a).   Elements of contract:

A contract is generally defined as a promise, or set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and / or detriment), a manifestation of mutual assent and legality of object of consideration. *Minster Farmers Coop. Exchange Co. Inc. v. Meyer* (2008)  117 Ohio St. 3d. 459, 2008-Ohio-1259, 884 N.E. 2d. 1056 ¶28. *Kostelnik v. Helper* (2002) 96 Ohio St. 3d. 1, 2002-Ohio-2985, 770 N.E. 2d. 58 ¶16.

B(1)(a)(i).   Offer, Acceptance and Mutual Assent:

In order for a contract to exist, there generally must be an offer, acceptance and consideration.   The alleged contract must also reflect the essential terms with definiteness and certainty, as there must be a meeting of the minds as to all essential terms. *Episcopal Retirement Homes Inc. v. Ohio Dept. of Industrial Relations* (1991) 61 Ohio St. 3d. 366, 369. 575 N.E. 2d. 134.  To reflect a meeting of the minds, all parties to an agreement must mutually assent to the substance of the contract.  …. A meeting of the minds occurs if "a reasonable person would find that the parties have manifested a present intention to be bound to an agreement." The parties must have a distinct and common intention that is communicated by each party to the other. *Danzinger & DeLlano LLP v. Morgan Verkamp LLC* (1CA 2023) 2023-Ohio-1728, P. 31.

The evidence presented established offer and acceptance.  Almost immediately following the appointment, Konza contacted TSO and Lentine, and engaged them to perform property and construction management services for the Receiver.  Shortly after Feb. 14, 2020, at the direction and supervision of Konza, TSO and Lentine began providing property and construction management services for the benefit of the receivership.

The parties' proposals included the same essential terms of the engagement, to wit: (i) TSO to collect rents and deposits from tenants; (ii) TSO to perform necessary routine maintenance, and provide labor and materials for non-routine maintenance and construction; (iii) TSO to market and

6

lease rentable units; (v) from rents collected, TSO to pay expenses incurred for labor, utilities and materials for routine maintenance of occupied *Properties*, and non-routine maintenance of the unoccupied *Properties*, (vi) TSO to prepare and submit monthly written reports detailing income and expenses; (vii) TSO to receive management fee equal to percentage of receivership rents, plus commission amount equal to one month rent for each new lease.

B(1)(a)(ii).   Consideration:

Consideration may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promise. *Lake Land Emp. Group of Akron LLC v. Columber* (2004) 2004-Ohio-786, 101 Ohio St. 3d. 242.

The evidence established exchange of good and valuable consideration for the parties' agreements.  Boydston testified that Konza did not have employees at any time during the period of engagement.  To fulfill its obligations as receiver, Konza would necessarily require third-party contractors to provide routine and non-routine property management services for the *Properties*. The Magistrate found that Konza desperately need a property manager, and TSO provided that necessary service.  It was not possible for Konza to manage these properties without TSO. Konza was not able to engage any other property managers for this purpose.  (See Magistrate Decision p. 5).  On the date of appointment, Konza, by its manager Boydston, contacted and thereafter engaged TSO and Lentine as contractors, to provide the necessary management services.  On or about March 1, 2020, at the direction Konza, TSO and Lentine began providing routine management and non-routine construction services at *the Properties,* for the benefit of the Receivership.  Despite Konza efforts to solicit other property management companies to provide services, no other property management companies were interested in the project.  (T.p. 1/10/25 pg. 170-171).  Konza concerns with reliability of TSO operations were primarily related to reporting of labor and materials expenses, not attributable to specific properties. (T.p. 1/10/25 pgs. 170-175).

TSO did in fact, provide routine property management services to Konza, for the benefit of the receivership, for thirty-five months, from Feb. 14, 2020 through Jan. 20, 2023, in accordance with agreed terms and conditions.  There is no good-faith dispute that services were provided to Konza by TSO and Lentine.  TSO provided labor and materials for the benefit of the receivership,

7

at the express direction of Konza. TSO plainly suffered a detriment, as direct consequence of services provided for the benefit of the receivership. TSO applied rents that it collected to costs and expenses for labor and materials provided for routine management and operation of the *Properties*. Rents collected by TSO did not cover the costs of labor, materials, and expenses provided to Konza; and, the receivership operated at cumulative deficit of $145,138, for thirty-five month period of the engagement. (See Magistrate Decision pg. 4 and Konza Exhibit K-94). TSO and Lentine prepared monthly reports including summary of rent collections, summary of labor and materials costs incurred for the reporting period, and reported cumulative operating deficit. (See Joint Ex. 2 thru Joint Ex. 36). The financial shortfall from operation of the receivership, has fallen on TSO and Lentine, when it ought be borne by Konza and the receivership.

The preponderance of evidence established the existence of contracts between TSO and Konza. Mutual assent to the essential terms of the engagements was apparent from the conduct of the parties, and the duration of the engagement. TSO provided property management and construction management services for the benefit of Konza and the receivership, at the express direction of Konza, with the expectation of compensation for services provided. Konza accepted the services without objection for thirty-five months.

Preponderance of evidence established that the parties had mutual understanding regarding the substance of the engagements, with definiteness and certainty of the essential terms by which TSO would provide property management services to Konza, for the benefit of the receivership. Based upon the evidence, a reasonable person would find that Konza, TSO manifested a distinct present intention to be bound to an agreement regarding delivery of property management services to the receivership, specific enough to form the basis of a meeting of the minds. The Magistrate expressly found that Konza was aware of the cumulative deficit, an repeatedly promised to pay TSO from the proceeds of the final sale as form of consideration. (See Magistrate Decision pg. 3). Despite Konza repeated promises to pay TSO, affirming the obligation to reimburse TSO for the cumulative deficit, no payment has been made, and the obligation has not been satisfied, constituting breach of the parties' agreement. The Magistrate erred by refusal to award damages for the $148,181 deficit plus award $21,315 as commission due for new leases.

8

TSO respectfully moves the Court to take appropriate action on this objection to Magistrate's Decision, to make findings of fact and conclusions of law upon the evidence reported, and award to TSO the sum of $166,453, including $145,138 as reimbursement for the cumulative operating deficiency, plus the sum of $21,315 as commission on new leases, for breach of TSO.

## C.    SECOND OBJECTION:

**MAGISTRATE ERRED BY FAILURE TO AWARD ADDITIONAL SUM TO REIMBURSE TSO FOR LABOR AND MATERIALS PROVIDED FOR THE BENEFIT OF THE RECEIVERSHIP, WHICH COMPRISED PART OF CUMULATIVE OPERATING DEFICIENCY FOR THE PERIOD MARCH 2020 THROUGH JANUARY 2023.**

Magistrate found that TSO had established a valid claim Unjust Enrichment, finding that Konza had been unjustly enriched by $74,211.18, being the value of compensation as to TSO property management compensation, calculated at rate of 12.5% of $423,169, being total of rents received, plus $21,315 as commission for leases with new tenants. (See Magistrate Decision pg. 6.) Magistrate erred by failure to award to TSO additional sum of $70,927, as reimbursement for total operating deficiency attributable to labor and materials provided for the benefit of the receivership.

C(1)(a):   UNJUST ENRICHMENT:

The doctrine of unjust enrichment provides that "a party may recover the reasonable value of services rendered in the absence of an express contract, if denying such recovery would unjustly enrich the opposing party." *Estate of Neal v. White* (1CA 2019) 2019-Ohio-4280 P. 9. The elements of a quasi-contract are (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of a benefit by the defendant under circumstances where it would be unjust to do so without payment of its value. A party asserting a claim for unjust enrichment must establish "that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment." Danzinger @ P. 49. Citing *Helton v. Fifth Third Bank* (1CA 2022) 2022-Ohio-1023 P. 25.

9

C(1)(b):       The Magistrate found that TSO had conferred a benefit on Konza by providing property management services to Konza in connection with the Klosterman Properties for the duration of the receivership; that Konza desperately needed a property manager, and TSO provided the necessary service; that it was not possible for Konza to manage the Properties without TSO; and that Konza was unable to engage any other property managers for this purpose. The Magistrate found that TSO management fee was contemplated by the parties as a percentage and portion of the collected rents. The benefit of property management services was conferred by TSO on Konza; Konza clearly had knowledge of the services, as evidenced by the receiver reports; and TSO services were retained by Konza for the duration of the receivership in circumstances where it would be unjust to do so without payment. (See Magistrate Decision pg. 5). The Magistrate found that 12.5% of all rent collected, plus one month rent for all new leases best reflected the actual value of the required property management services, taking into consideration the distressed nature of the properties, the size of the portfolio, and the exigency of the circumstances. (See Magistrate Decision pg. 6). Based on those findings, the Magistrate found that Konza was unjustly enriched by TSO, only as to property management compensation of $74,211.18. (See Magistrate Decision pg. 7).

TSO provided labor and materials for the benefit of the receivership, at the express direction of Konza. TSO applied rents that it collected to costs and expenses for labor and materials provided for routine management and operation of the *Properties*. The evidence presented clearly established that Konza had knowledge that services were provided by TSO and Lentine.

During the period from Feb. 14, 2020 through Jan. 20, 2023, TSO prepared and submitted to Konza, monthly reports which included summaries of rent collections, TSO expenses for materials, labor costs, and description of maintenance and repairs for the reporting period. For each month from Feb. 2020 through Jan. 20, 2023, TSO reported cumulative operating deficit related to TSO property management of *the Properties*. (See Joint Ex. 2-Joint Ex. 36. Receiver 1st Report 1 thru Receiver 35th Report). TSO monthly reports included summary of supplies and materials purchased, reported at cost. TSO monthly reports included summary of labor costs, and, all were set-off against rents collected. (See TSO Ex. OO).

10

During February 12, 2025 session of trial, Kyle Woodland was called and testified on behalf of Konza. (T.p. 2/12/25, pg. 54-68). Woodland testified that he operates property management company in Cincinnati, and currently manages 900 units. He has been in property management business for 23 years. (T.p. 2/12/25 pg. 54-55). Woodland testified that when providing rehab or fix-up services for owner, there is typically separate billing for labor and materials. Costs and expenses for maintenance are not included in management fee, and are typically paid out of rents collected. If rents collections are insufficient to cover costs and expenses for rehab, fix-up, routine maintenance during any given period, Woodland would expect compensation, and would expect the property owner to cover any deficiency. Woodland continued **"I can't finance their renovations"**. (*Emphasis added.*) (T.p. 2/12/25 pg. 65-68).

These were the circumstances that TSO experiences during period that it provided property management services for the benefit of Konza and the receivership. The receivership began operations with no capital. Konza made no capital contributions during the period March 2020 through January 2023. Rents collected by TSO did not cover the costs of labor, materials, and expenses provided to Konza; and, the receivership operated at cumulative deficit of $148,181, for thirty-five month period of the engagement, ending on January 20, 2023. Magistrate found the cumulative deficit on operating expenses to be $145,138. (See Magistrate Decision pg. 4).

Even upon sale of the entire receivership property portfolio, the total of rents collected and proceeds of sale were insufficient to satisfy the deficit from operation of the receivership properties. The TSO operating deficit, for labor materials and property management fees has not been paid. The financial shortfall from operation of the receivership, has fallen on TSO and Lentine, when it ought be borne by Konza and / or the receivership.

TSO provided labor, materials and services for management of the *Properties* for thirty-five months, from March 2020 through January 2023, without objection by Konza. The total of labor and materials provided by TSO exceeded the total of rents collected for that period by $145,138. The Magistrate calculated the value of TSO compensation for property management services to be $74,211, being only a part of the total cumulative operating deficit reported by TSO, but failed to make any award to reimburse TSO for labor and materials provided to Konza, for the 35 month duration of the receivership.

11

Under the circumstances attendant to administration and operation of the receivership, it would be unjust that TSO not be reimbursed $70,927 for labor, materials and services provided to Konza, for repairs and maintenance of the *Properties,* in addition to $74,211, value of compensation for property management services provided by TSO. The benefit conferred by TSO should include the total value of property management services plus the total costs of labor and materials provided for the benefit of the receivership.

TSO respectfully moves the Court to take appropriate action on these objections, to make its own findings of act and conclusions of law upon the evidence reported, and award to TSO the sum of $145,138 as reimbursement for the cumulative operating deficiency, plus the sum of $21,315 as commission on new leases, for total award of $166,453, that sum be determined to be a cost of the receivership for purposes of ORC§ 2735.04.

## D.    MAGISTRATE ERRED BY FAILURE TO AWARD DAMAGES TO JOSEPH LENTINE FOR CONSTRUCTION MANAGEMENT SERVICES PROVIDED FOR THE BENEFIT OF THE RECEIVERSHIP.

D(1).    Lentine presented evidence which defined the scope of routine property maintenance services, being apartment turns, drywall repair, and tenant-needed repairs. Major repair and remediation work was outside scope of normal property maintenance. (T.p. 1/08/25 pg.64-65). Lentine recounted discussions with Mr. Boydston about how day-to-day operations would be handled and how properties would ultimately marketed. (T.p. 1/08/25 pg. 66-69). Labor and materials billed to the receivership did not include any mark-up. Lentine labor was not included in TSO reports, and was recorded separately, with expectation that he would be compensated for construction management services provided, at reasonable rate established by Court. Construction management services were provided pursuant to separate engagement with Konza. (T.p. 1/08/25 pg. 80-84).

Lentine testified that none of TSO's reported labor expenses included hours worked or rate of pay for Lentine individually. Lentine testified that he expected that he would receive compensation for construction management services provided for the benefit of the receivership, at rate determined by the Court and Konza, but between $52,000 and $120,000. (T.p. 1/08/25 pg. 249-251. See Konza Ex. K-40).

12

Lentine testified that he had previously been engaged as property / construction manager in Hamilton County Common Pleas receivership proceedings, and had received compensation at rate of $2000.00 per week in that action. Lentine presented evidence which established the existence of contract between Lentine and Konza. Mutual assent to the essential terms of the engagement was apparent from the conduct of the parties, and the duration of the engagement. Lentine provided construction management services for the benefit of Konza and the receivership, with the expectation of compensation for services provided. Konza accepted the services without objection for thirty-five months.

Preponderance of evidence established that the parties had mutual understanding regarding the substance of the engagements, with definiteness and certainty of the essential terms by which a reasonable person would find that Konza and Lentine manifested a distinct present intention to be bound to an agreement regarding delivery of construction management services to the receivership, specific enough to form the basis of a meeting of the minds.

Lentine respectfully moves the Court to take appropriate action on these objections, to make its own findings of fact and conclusions of law upon the evidence reported, and award Lentine the sum of $210,000 as compensation for construction management services to the benefit of the receivership, that sum be determined to be a cost of the receivership for purposes of ORC §2735.04.

E.      O.R.C. §2735.04  FEES FOR ASSISTANCE TO RECEIVERSHIP.

E(1).   O.R.C. §2735.04 (C) provides as follows: Any funds that are expended by or on behalf of the receiver, including receivership fees, fees for professionals assisting the receivership, and those expended in entering into or performing contracts under division (B)(4) of this section, including those for completion of construction work authorized by the court, shall be taxed as court costs or otherwise treated as an administrative expense.

E(2).   As proven by preponderance of evidence, in reliance on the Konza's authority to administer the *Properties*, TSO collected rents, managed, maintained, repaired and restored the *Properties* from February 2020 through January 2023. Labor, materials and property management services were provided at the direction of Konza, for the benefit of the receivership.

13

Notwithstanding the revenue short-fall, which continued for nearly three years, TSO and Lentine provided services at the direction of, and under supervision of Konza. TSO and Lentine continued the engagement with the expectation that they would be reimbursed, compensated, and made whole by the Konza, upon disposition of the *Properties* and conclusion of the receivership.

The evidence, including without limitation, thirty-five monthly reports and supporting documentation, provided to Konza during the period of the engagement, and thirty-five Receiver Reports filed with the Court, establish that the costs and expenses for labor, materials, and services provided by TSO were necessary, proper and reasonable expenditures provided to assist Receiver / Konza in the administration of the *Properties*. (See Joint Ex. 2 thru Joint Ex. 36. + Konza Ex. K-38).

On Dec. 5, 2022, Konza prepared and filed with the Court, Motion By Receiver For Approval of Fees and Expenses through Nov. 30, 2022. (See Konza Ex. K-89). With that filing, Konza requested Court approval to pay $499,717, to be paid out of proceeds of sale of *the Properties*. That figure included (i) receiver fees of $210,854, (ii) receiver legal fees of $159,687, (iii) title fees of $32,464 to Southern Ohio Land Title Association, (iv) GCWW fees on account $35,078, and (v) reimbursement of Konza LLC cash advances $61,633. The Dec. 5, 2022 Motion was approved by the Court. The Motion was silent as to any claims of TSO and Lentine.

On May 23, 2023, Konza filed Report of Sale By Receiver. (See Konza Ex. K-50). Report of Sale included ALTA Settlement Statement, and included the following distributions from sale proceeds of *the Properties* to HCLRC: (a) $499,717 to Receiver / Konza; (b) $147,401 Sales Commission paid to Keller Williams Advisors Realty; (c) $67,839 mortgage payoffs to Warsaw Federal Savings; (d) $84,478.04 balance of sale proceeds held in escrow by settlement agent Prominent Title Agency Inc. There was no distribution of any part of proceeds of sale of the *Properties* to, or for the benefit of TSO or Lentine.

On Sept. 9, 2023, Konza filed second Motion For Approval of Payment of Fees and Expenses from Dec. 1, 2022 through Aug. 31, 2023, requesting approval of additional $104,438.75, which included (i) $37,390 for additional Receiver fees, (ii) $28,654 additional attorney fees for legal counsel to Receiver, (iii) $11,230 to GCWW, (iv) $10,658 management fees to Gateway, (v) $16,505 reimbursement for amounts paid by Receiver to third parties. (See Konza Ex. K-58). Konza Sept. 9, 2023 motion did not include a request for approval of any amounts

14

claimed by TSO and Lentine, to be due and owing for services, labor or materials provided at the direction of Konza, and for the benefit of the Receivership. Konza requested that the $84,478 Escrow Balance be applied to the Receiver's claim of $104,438. Konza acknowledged that arrangements had been made with HCLRC for payment of the amount due for the receiver's fees not paid out of the Escrow balance. (See Konza Ex. K-58). Konza requested that receiver be discharged, and released, that the receivership be terminated, and order of court prohibiting any claims against Konza. (See Konza Ex. K-58). The evidence presented substantiates TSO and Lentine assertion that Konza had clear intention to avoid payment of TSO and Lentine claims.

As provided by ORC §2735.04, the expenses claimed by TSO for labor, materials and services provided to, and on behalf of, the Receiver, are legally protected. The financial loss for that $166,453 operating shortfall should not fall on TSO, but on Receiver, and ultimately, upon purchaser of the Properties, as provided in ORC §2735.04(C).

Under the circumstances attendant to administration and operation of the receivership, TSO should be reimbursed $70,927 for labor, materials and services provided to Konza, for repairs and maintenance of the *Properties,* in addition to $74,211, value of compensation for property management services provided by TSO. The benefit conferred by TSO should include the total value of property management services plus the total costs of labor and materials provided for the benefit of the receivership. The total cumulative deficit plainly represents funds expended by TSO on behalf of the Receiver, for property management services provided to assist the receivership, and those expended in entering into or performing service for completion of maintenance and rehabilitation work at receivership properties. Under the circumstances attendant to TSO and Lentine engagement, the total cumulative deficit should be taxed as court costs or otherwise treated as an administrative expense. With the Receiver's exercise of that authority, comes the obligation to compensate persons providing those services to the Receiver, in the administration of the receivership estate.

F.    REQUEST FOR RELIEF.

TSO respectfully moves the Court to take appropriate action on these objections to Magistrate Decision, to set aside Findings and Conclusion which are subject of these objections, to make findings of fact and conclusions of law upon the evidence reported, and award to TSO the

15

sum of $145,138 as reimbursement for the cumulative operating deficiency, plus the sum of $21,315 as commission on new leases, for total award of $166,453; and that sum be determined to be reasonable costs and administrative expenses of the receivership, and to tax said awards as costs of the receivership, as provided in ORC §2735.04.

Lentine respectfully moves the Court to take appropriate action on the objections to Magistrate Decision, to make findings of fact and conclusions of law upon the evidence reported, and award to Lentine the sum of $210,000, as compensation for construction management services provided to the Receiver for the duration of the receivership, that sum be determined to be reasonable costs and administrative expenses of the receivership, and to tax said awards as costs of the receivership, as provided in ORC §2735.04.

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Respectfully submitted,

/s/  James L. Nieberding
Nieberding & Nieberding Co LPA
810 Sycamore St
Cincinnati, Ohio 45202
Tel:  513-241-2226
EM:  jlnieberding1117@gmail.com
Attorney for Tri-State Organization & Jos. Lentine

CERTIFICATE OF SERVICE

I certify that I have sent a copy of the foregoing Tri-State and Lentine Objections to Magistrate's Decision to all parties and counsel via electronic transmission to parties and counsel to richard.boydston@dentons.com on April 24, 2025.

/s/  James L. Nieberding

Richard C. Boydston, Esq.
312 Walnut St Ste 250
Cincinnati, OH 45202
richard.boydston@dentons.com

Lentine.HCClk.TSO.Object.Mag.Decision.04.23.25

16

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | |
|---|---|
| **CITY OF CINCINNATI,** <br> an Ohio municipal corporation, <br><br> **Plaintiff,** <br><br> v. <br><br> **JOHN KLOSTERMAN a/k/a** <br> **JOHN C. KLOSTERMAN a/k/a** <br> **JOHN CAMPBELL KLOSTERMAN,** <br> *et al.,* <br><br> **Defendants.** | **Case No. A 1905588** <br><br> **Judge Wende C. Cross** <br><br> **Chief Magistrate Judge Anita P. Berding** |

**HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S MEMORANDUM IN OPPOSITION TO TRI-STATE ORGANIZATION INC. AND JOSEPH LENTINE'S MOTION FOR ORDER OF DISTRIBUTION OF ESCROW PROCEEDS OF SALE**

Hamilton County Land Reutilization Corporation ("HCLRC") opposes Tri-State Organization Inc. ("TSO") and Joseph Lentine's ("Lentine") (collectively, "Complainants")[1] Motion for Order of Distribution of Escrow Proceeds of Sale ("Motion") for the limited purpose of opposing any relief contrary to the terms and purposes of the Escrow Agreement dated May 2, 2023, which Complainants attached to their Motion.

Complainants have no standing to "request the Court to issue an order terminating the Escrow arrangement." (Motion at 2). Only the Receiver, HCLRC, and the Escrow Agent (Prominent Title Agency, LLC) are parties to the Escrow Agreement. Complainants are not parties to the Escrow Agreement and therefore lack standing to seek a judicial order terminating the contract. *See Beard v. N.Y. Life Ins. & Annuity Corp.*, 10th Dist. No. 12AP-977, 2013-Ohio-3700,

---

[1] HCLRC is Substitute Plaintiff herein. HCLRC will refer to TSO and Lentine as "Complainants" to avoid confusion in this Memorandum in Opposition.

2013 Ohio App. LEXIS 3825, ¶ 29 (Aug. 27, 2013); *Camp St. Mary's Ass'n v. Otterbein Homes*, 176 Ohio App. 3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, ¶ 25 (3d Dist.).    According to Complainants, the Escrow Agent currently holds $85,950.62, whereas Complainants seek $62,241.18 in accordance with the April 11, 2025 Magistrate's Decision.  (Motion at 1).  The Escrow Agreement should not be terminated until the remaining $23,709.44 is disposed.

If Complainants are requesting termination of the Receivership, they also lack standing for that request.  HCLRC does not oppose the termination of the Receivership when raised by the proper party or parties, with adequate orders to fully dispose of Receivership assets and business, and with an order that HCLRC is not responsible for any further expenditures, fees, or costs, once the Receivership assets are disbursed..

For the reasons stated, the Court should deny Complainants' Motion.

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County*
*Land Reutilization Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing were served upon the following parties via U.S. Mail this 26th day of September, 2025:

James L. Nieberding, Esq.
Nieberding & Nieberding Co LPA
810 Sycamore St., Suite 423
Cincinnati, Ohio 45202

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
312 Walnut St., Suite 2450
Cincinnati, Ohio 45202-4028

Christian D. Donovan, Esq.
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052

James S. Sayre, Esq.
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202

John Klosterman
5615 Sidney Rd.
Cincinnati, Ohio 45238

Kate Burroughs, Esq.
Shannon Price, Esp.
Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202

Amy K. Kaufman, Esq.
150 East Gay Street
Columbus, OH 43215-3130

Teresa Perkins, Esq.
222 E. Central Pkwy. 6NW711
Cincinnati, Ohio 45202

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, STATE OF OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI | : | Case No. A 19 05588 |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | Judge Wende C. Cross |
| JOHN KLOSTERMAN et al | : | |
| | : | Chief Magistrate Anita P. Berding |
| Defendants | : | |

---

## TRI-STATE ORGANIZATION RESPONSE TO MOTION TO TERMINATE RECEIVERSHIP

---

Comes Tri-State Organization Inc., through counsel, and submits this memorandum as its response to Substitute Plaintiff Motion to Terminate the Receivership. As described in the motion, the stated purpose for administration of the Receivership, being the disposition of the Klosterman properties, has been fulfilled, and what remains is the distribution of the balance of receivership assets, as allocated to existing receivership obligations, including without limitation, the $57,271.18 net award to Tri State Organization, termination of the receivership, and discharge of the receiver.

1.   STATEMENT OF FACTS & PROCEDURAL HISTORY

Plaintiff City of Cincinnati commenced this action to enforce certified judgments recovered against Defendant Klosterman and related entities, and seeking to foreclose and judicial sale of numerous blighted properties titled to Defendant Klosterman. On the application of City of Cincinnati, by order dated February 21, 2020, the Court appointed Konza LLC as receiver, to take possession of, and proceed to make orderly disposition of the Klosterman properties to satisfy the judgments. Receiver / Konza engaged Tri State and Lentine to manage, maintain and repair the properties during the term of the receivership. Tri-State Organization and Lentine provided services for and on behalf of Receiver / Konza until January 2023. At that time, Tri State and

1

Lentine claimed that there was balance due from Receiver / Konza for property management services provided for the benefit of the receivership.

On May 1, 2023, Receiver / Konza finalized sale of the Klosterman properties to Hamilton County Land Reutilization Corp. (HLCRC). In connection with judicial sale and transfer of Klosterman / receivership properties, Receiver / Konza LLC entered Escrow Agreement with Prominent Title Agency LLC, by which agreement Prominent held $85,950.62, representing net proceeds of sale of Receivership Properties, pending resolution of claims and counterclaims advanced by Tri-State Organization Inc., Joseph Lentine, and Receiver / Konza. The excess sale funds, held in escrow by Prominent Title Agency, are the only remaining Receivership assets.

Tri-State Organization Inc. and Joseph Lentine pursued claims against Receiver, in connection with services, labor and materials provided for the benefit of the Receivership during the period from February 2020 through December 2023. In January, 2025, Tri-State and Lentine claims, and Receiver Konza counter-claims were tried before Magistrate Liu, and determination of claims and counterclaims was made at conclusion of that trial.

Magistrate's Decision was entered on April 11, 2025. Magistrate Liu ultimately determined that Receiver Konza failed to compensate Tri State, based on implied contract. Magistrate awarded Tri-State $74,211.18 on claims against Receiver; and, Receiver was awarded $11,970.00 on counter-claim against Tri-State, yielding net award of $62,241.18 in favor of Tri-State, to be taxed as an administrative cost of receivership, as provided in ORC §2735.04. Magistrate made finding in favor of Receiver / Konza on Lentine claims.

Objections to Magistrate's Decision were advanced by the parties Tri-State, Lentine, Receiver / Konza, and by Hamilton County Land Reutilization Corp. The Court overruled parties' objections, adopted the Magistrate's Decision; and, on July 22, 2025, entered judgment in favor of Tri-State as against Receiver / Konza LLC for the sum of $62,241.18. The Court confirmed $4,970.00 contempt award to Receiver / Konza LLC against Tri-State and Lentine. The result was net award of $57,271.18 in favor of Tri State against Receiver. To this date, Receiver has refused to make distribution of Receivership assets to Tri-State in satisfaction of the July 22, 2025 judgment and award.

2

2.    ARGUMENT.

Judicial sale of the Klosterman properties was completed in May 2023. Determination of Tri State and Lentine claims and Receiver counterclaims was completed in July 2025. As HCLRC has argued in its Motion to Terminate Receivership, the purpose of the receivership has been accomplished, and Klosterman properties disposed with the approval of the Court. After disposing of Tri State and Lentine Claims against the Receiver, no other matters affecting the receivership estate remain pending. With the exception of the balance held in escrow by Prominent Title Agency, after accounting for $57,271 balance due to Tri State on its claim, taxed as administrative cost of the action, the balance of receivership assets is $23,709. There is no continuing receivership business, except distribution of sale funds to satisfy known creditors, followed by termination of the Receivership.

Tri-State requests the Court to issue order directing Receiver to make distribution of $57,271.18 to Tri-State, in satisfaction of the judgment and award; and thereafter, that Receivership be terminated and Receiver discharged.


Respectfully submitted,

/s/ James L. Nieberding  (0038638)
Nieberding & Nieberding Co LPA
810 Sycamore St Ste 423
Cincinnati, Ohio 45202
Tel:    513-241-2226
EM:  jlnieberding1117@gmail.com
Attorney for Tri State Organization Inc.


CERTIFICATE OF SERVICE

I have served a copy of Tri-State Organization Response to Substitute Plaintiff HCLRC Motion to Terminate Receivership to parties and counsel, via Ordinary US Mail, postage prepaid, on December 19, 2025.

/s/ James L. Nieberding

3

Richard C. Boydston, Esq.
Dentons Bingham Greenbaum LLP
312 Walnut St Ste 250
Cincinnati, OH 45202
richard.boydston@dentons.com

Kara A. Czanik, Esq.
Brian E. Schultz, Esq.
Dinsmore & Shohl LLP
255 E. 5th St, Ste 1900
Cincinnati, OH 45202
Kara.czanik@dinsmore.com
Brian.schultz@dinsmore.com

Christian D. Donovan, Esq.
Luper Neidentahl  & Logan
1160 Dublin Rd. Ste 400
Columbus, OH 43215-1052
cdonovan@LNLattorneys.com

Amy K. Kaufman, Esq.
Asst AG State of Ohio Collection Enforcement
150 E. Gay St
Columbus, OH 43215-3130

John Klosterman
5615 Sidney Rd
Cincinnati, OH 45238

Teresa Perkins, Esq.
CSEA 222 E. Central Pkwy 6NW711
Cincinnati, OH 45202

Erica Faaborg, Esq.
City of Cincinnati, 801 Plum St
Cincinnati, OH 45202
erica.faaborg@cincinnati-oh.gov

James S. Sayre, Esq.
Asst. Pros Atty Hamilton County
230 E. 9th St Ste 4000
Cincinnati, OH 45202
james.sayre@hcpros-org

4

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | Case No. A1905588 |
| | : | (Judge Wende C. Cross) |
| Plaintiff, | : | (Magistrate Anita P. Berding) |
| | : | |
| v. | : | CORRECTED* |
| | : | RECEIVER'S MEMORANDUM IN |
| JOHN KLOSTERMAN, et al., | : | OPPOSITION TO MOTION BY |
| | : | SUBSTITUTE PLAINTIFF TO |
| Defendants. | : | TERMINATE RECEIVERSHIP |

HCLRC[1] has moved to have the receivership terminated[2]. In a separate companion filing HCLRC[3] opposes the long pending motion by the Receiver Konza LLC for approval of fees and expenses for the nine month period ending August 31, 2024[4].

The result sought by HCLRC in its two filings is to deny the Receiver payment of fees and reimbursement of expenses for the last 25 months (since November 30, 2023) and for any time in the future. Were HCLRC to be successful in achieving such a harsh, unfair and inequitable result, it would mean, among other things, that (1) a receiver can never be protected against litigation with third parties and (2) a party who enters a receivership as a substituted plaintiff can avoid any liability arising from the insolvency of the estate, no matter what the circumstances.

The Court should deny the relief HCLRC seeks and, further, the Court should find that

---

*Adding page numbers.

[1] Substituted Plaintiff the Hamilton County Land Reutilization Corporation.

[2] Substituted Plaintiff Hamilton County Land Reutilization Corporation's Motion to Terminate Receivership ("HCLRC Motion to Terminate").

[3] Substitute Plaintiff Hamilton County Land Reutilization Corporation's Memorandum in Opposition to Receiver's Second Application for Approval of Fees and Expenses (the "HCLRC Fee Objection").

[4] Motion by Receiver for Approval of Fees and Expenses From December 1, 2022 Through August 31, 2023 and for Entry of on Order Terminating the Receivership and Discharging and Releasing Receiver (the "Second Application").

EXHIBIT
CC+B

HCLRC is liable for payment of all of the receiver's approved fees and expenses not covered by cash now in the receivership estate.

### A. Facts

### 1. The HCLRC Motion

The reason given by HCLRC for terminating the receivership is that "all remaining funds in the Receivership Estate have been allocated to existing obligations." (HCLRC Motion to Terminate at 1). The amount of those remaining funds is $84,478.73. They are being held in the escrow account by Prominent Title Agency, LLC (the "Escrow Account"). The funds are the balance of the proceeds left on the Receiver's sale of all of the receivership property to HCLRC (the "HCLRC Sale").

There is more work to be done by the Receiver to conclude the receivership, namely conclusion of pending litigation, and the amount available to pay receivership fees and expenses should not be limited to funds in the Escrow Account.

### 2. HCLRC

The Port of Greater Cincinnati Development Authority (the "Port") was formed by the City of Cincinnati (the "City") and Hamilton County, Ohio in December 2000 pursuant to R.C. 4582.22. That statute created the opportunity for counties and municipalities to form port authorities. The Port "seeks to identify, restore and redevelop real properties; to provide development financing through issuance of revenue bonds; expand home ownership." (https://ohioauditor.gov/auditsearch/Reports/2025/Port_of_Greater_Cincinnati_Dev_Authority_2 024-Hamilton_FINAL.pdf at 15).

The Port has a management agreement with HCLRC. *Id.* at 17. The income and expenses of HCLRC do not appear to be separately available. The last annual audit for the Port

2

is for the year ended December 31, 2024. For that year the Port had operating revenues of $13,681,906 and operating expenses of $11,573,721 for $2,108,185 in operating income. Adding to that income the $14,222,509 excess of the Port's net nonoperating revenues over expenses, the Port made $16,330,694 for the 12 months ended December 31, 2024. *Id*. at 6.

### 3. The HCLRC Sale

On December 8, 2025 (the same day HCLRC filed the HCLRC Fee Objection), HCLRC issued a "Request for Proposal: Sedamsville Residential Renovations." (the "Sedamsville RFP") HCLRC states at the beginning of the Sedamsville RFP:

> The Port is leading a long-term effort to preserve and reinvest in Sedamsville, creating new opportunities for families to plant roots in this historic hillside community. Since 2021, The Port has worked alongside the City of Cincinnati and the Hamilton County Landbank to acquire and stabilize local housing stock, laying the foundation for increased homeownership. Together, they purchased a 65-property portfolio out of receivership, 23 structures, 41 vacant lots, and one parking lot, for strategic redevelopment. Continued acquisitions through tax lien certificates have expanded the portfolio to 98 properties. The Port's CARE model will guide the renovation and sale of 18 homes, priced between $120,000 and $180,000, balancing quality and affordability.

The foregoing generally describes the plan and purpose for HCLRC purchasing the receivership assets from the Receiver through the HCLRC Sale.

The minutes of the October 25, 2022 HCLRC Board meeting provide background to HCLRC's Sedamsville renovation project. Philip Denning of the Port, the putative parent or affiliate of HCLRC, stated to the Board of HCLRC (also known as the "Landbank") that the Port and the Landbank: "have been applying for funds including City CBRE and State Ohio Department of Development (ODOD) funds" for Building Demolition and Site Revitalization Program. He also told the HCLRC Board that:

> …the Landbank executed a funding agreement with the City of

3

Sedamsville portfolio acquisition. There are 39 vacant land parcels, and 23 homes are being purchased out of receivership. 18 of the 23 structures are occupied with tenants. Properties will be renovated and transitioned into home ownership using the CARE model.

Copies of the Sedamsville RFP and the Board minutes are attached marked, respectively, Exhibit A and Exhibit B.

HCLRC negotiated the assignment from the City of Cincinnati of the judgment lien against John Klosterman and his various entities which together, in one form or another, owned all of the receivership properties. The City filed this case to foreclose that lien and have all of the receivership properties sold. The consideration paid by HCLRC to the City for that lien purchase has not been disclosed. The lien, with interest, was at least $700,000 on the date of the closing of the HCLRC Sale. The Receiver believes, but does not know for certain, that HCLRC and the City further negotiated funding of the $800,000 cash payment to be made on the HCLRC Sale. Who paid how much of the $800,000 has not been disclosed. Aside from whatever cooperation HCLRC received from the City, HCLRC also took advantage of the Ohio statute that exempts landbanks, such as HCLRC, from paying real estate taxes and assessments due on the transfer to a landbank of distressed real estate. R.C. 5709.12(F). The amount of those taxes is estimated by Receiver to have been over $400,000. (January 31, 2025 transcript at page 123 lines 19-24).

### 4. Receiver Litigation

The Statement of Facts and Procedural Posture in the HCLRC Motion to Terminate is correct but insufficient. It omits description of the significant time and legal expenses incurred by the Receiver during the period after that covered in the Second Application, namely the 28 months from September 1, 2023 to today. That time and those legal expenses were incurred by the Receiver in addressing both (1) the claims for payment by TriState Organization Inc.

4

("TSO") and Joseph Lentine ("Lentine")(the "TSO Litigation") and (2) the claims by John Klosterman in the federal district court case he filed May 13, 2025 (the "2025 Klosterman Case"). Certified copies of the docket sheet in the 2025 Klosterman Case and the appeal filed December 11, 2025 (the "Klosterman Appeal") are attached marked respectively, Exhibit C and Exhibit D.

The TSO Litigation was concluded by the Magistrate's Decision entered April 11, 2025[5] subsequently adopted by the Court[6].

This Court awarded monetary sanctions against both TSO and Lentine for their filing of a complaint against the Receiver and HCLRC and others in United States District Court in Cincinnati on November 22 2023. Civil Action No. 1:23-cv-777 (the "TSO/Lentine Federal Action")[7]. Those sanctions were based on this Court's determination that TSO and Lentine disobeyed a direct order of this Court in filing the TSO/Lentine Federal Action.

Mr. Klosterman filed "[sic] Plaintiff's Informational Memorandum Regarding Newly Discovered Judicial Admissions by Non-Party HCLRC" [sic], Motion to Negate Fraudulent Property Acquisition in which he requested the U.S. District Court to grant him

> A. Immediate Relief Based on Judicial Admissions
> 1. FIND that HCLRC's April 25, 2025 judicial admission constitutes a confession of criminal knowledge;
> 2. DECLARE HCLRC's property acquisition void due to participation in fraudulent scheme;
> 3. NEGATE the entire property transfer to HCLRC as the product of criminal enterprise;
> 4. ORDER immediate constructive trust over all subject properties;

---

[5] Magistrate's Decision as to TSO, Lentine & Konza Claims and Counterclaims.

[6] Entry Denying Objections and Adopting the Magistrate's Decision entered July 22, 2025.

[7] Magistrate's Decision Awarding Receiver Attorney Fees Against TriState Organization, Inc. and Joseph Lentine for Contempt entered October 15, 2024 and Judgment Entry Adopting Magistrate's Decision Awarding Receiver Attorney Fees Against TriState Organization, Inc. and Joseph Lentine entered November 19, 2024.

5

B. Criminal Referral and Investigation
5. REFER HCLRC's conduct to appropriate federal authorities for criminal investigation;
6. ORDER preservation of all documents related to the property acquisition;
7. ENJOIN any further transfers or encumbrances of the subject properties;

Doc. 49 at PageID 466-479, a copy of which is attached marked Exhibit E.

Subsequently, in his Plaintiff's Motion for Leave to File Third Amended Complaint Adding HCLRC and Kelly [sic] Allesee as Necessary Defendants, Mr. Klosterman sought to add HCLRC and its in house counsel, Kelley Allesee, as defendants. Doc. 84 at PageID 1688-1698, a copy of which is attached marked Exhibit F.

### B. Law

In Ohio, special circumstances may make a party who seeks appointment of a receiver liable for the compensation of the receiver and the expenses of administration of an insolvent receivership estate. The Syllabus in the Ohio Supreme Court's decision in *Richey v. Brett*, 112 Ohio St. 582 (1925) states, in full, as follows:

> Parties who invoke the jurisdiction and process of a court for the appointment of a receiver by sufficient allegations and showing of necessity therefor, resulting in such appointment, do not become personally liable for the compensation of the receiver and the expenses of the administration of an insolvent concern, in the absence of special circumstances calling for the application of equitable principles creating such liability. Such debts and expenses are ordinarily payable out of the corpus of the property.

This holding has been cited over the following century when courts are confronted with a claim that fees and expenses due a receiver should be paid by a party as a matter of equity when the receivership estate is without sufficient assets to make that payment.

Examples of special circumstances in which a party to an action in which a receiver has been appointed may be held liable for the receivership debts include, but are not limited to:

6

(1) when there has been an irregular or unauthorized appointment of a receiver; (2) when the plaintiff has given a bond or other contract to pay the expenses and fees of the receivership as a condition of the receiver's appointment; (3) where a party has received benefits from the receivership in excess of the amount required to be paid; and (4) where an action has unjustly been maintained without right.

*Fifth Third Bank v. Dayton Lodge, LLC*, 2013-Ohio-5755, ¶¶ 42-48 (2d Dist.). Ohio courts have examined and identified other special circumstances under which a party may be responsible for receivership fees. *See, e.g.*, *Crawford v. Hawes*, 2013-Ohio-3173, ¶ 18 (2d Dist.) (affirming the trial court's finding that special circumstances existed to hold parties liable for a receiver's compensation where the parties' conduct resulted in the receiver's appointment); *Koebiltz v. Kobeltz*, 2021-Ohio-2269, ¶¶ 16-21, 32 (8th Dist.) (affirming the trial court's finding that special circumstances existed to hold the party who sought appointment of a receiver liable for the receiver's attorney fees where the party later sought to remove the receiver by circumventing the trial court's authority over the receiver); *Dyczkiewycz v. Tremont Ridge Phase 1 Ltd. Partnership*, 2012-Ohio-5173, ¶¶ 41-44 (8th Dist.) (holding that a receiver's fees should be split evenly between the parties).

Additionally, a party who requests a receiver's appointment may be held liable for receiver fees and expenses based on inaction:

We find that where the party seeking a receiver or causes or acquiesces in the receiver's appointment and the appointment results in expenses being incurred, that party may be held accountable for the receiver's compensation even where irregularities in the appointment are later found or the receiver's appointment is later vacated.

*Carr v. Acacia County Club*, 2012-Ohio-4723, ¶ 2 (8th Dist.) (holding that a party who requested a receiver's appointment is liable for the receiver's compensation where that party did not raise any issues concerning the receiver's appointment until the receiver's compensation became an

7

issue, at which point the party complained of procedural failures).

HCLRC as the substituted plaintiff steps into the shoes of the City of Cincinnati as the original plaintiff and, in such position, HCLRC is charged with all of the acts and failures to act by the City in this case prior to HCLRC replacing the City. *See Van Camp v. McCulley*, 104 N.E. 1004, 1005 (Ohio 1913) ("The [substituted plaintiff] merely takes the place of the [original] plaintiff."); *Ohio Consol. Tel. Co. v. Communications Workers of America (AFL-CIO)*, 165 N.E.2d 46, 49 (Ohio Ct. C.P. 1959) (finding that a substituted plaintiff was bound by prior order against original plaintiff requiring that petition be made more definite and certain); *see also Ransom v. Brennan*, 437 F.2d 513 (5th Cir. 1971), *cert. denied*, 403 U.S. 904 (1971) ("A substituted party steps into the same position of the original party."); *People's Tr. Ins. Co. v. Island Roofing & Restoration, LLC*, 320 So. 3d 817, 819 (Fla. Dist. Ct. App. 2021) ("It is well settled that a substituted plaintiff stands in the shoes of the original plaintiff."). Thus, HCLRC may be held liable for receiver fees and expenses based on special circumstances resulting from both its own and the City's conduct in this case.

## C. Argument

The Receiver's litigation fees and expenses incurred in the TSO Litigation and in the 2025 Klosterman Case and in the Klosterman Appeal are chargeable to the receivership. Absent an adequate amount of funds in the receivership, as a matter of equity and under Ohio case law, those fees and expenses are payable by HCLRC not only as the substituted plaintiff but also as the purchaser of all of the receivership assets.

HCLRC would have the Court understand that HCLRC is only involved in this case because it purchased the receivership property. HCLRC has been actively involved in this case since early 2022 and formally replaced the City as plaintiff in October 2023. HCLRC acquired

8

from the City an assignment of the judgment lien in favor of the City and on which this foreclosure action is based. HCLRC's purpose in obtaining the lien assignment was cleraly in order to have a say on the disposition of any and all of the receivership property, be it for a single building or vacant lot or for all of the 23 buildings and over 40 vacant lots.

### 1. Special Circumstances

Aside from the TSO Litigation and the 2025 Klosterman Case, there are additional special circumstances that justify HCLRC being held liable for the Receiver's fees and expenses. Because of that liability, the receivership should remain open until those fees and expenses are determined.

The judgment lien in favor of the City on which the case was brought is not based on any money given or received. Unlike in a mortgage foreclosure action where the plaintiff-mortgagee/lender has loaned money to the defendant mortgagor/property owner and, in return, received the mortgage lien on the property, no money was paid by the City to obtain the judgment lien. Instead, the lien is based on fines imposed by the City for failures of Mr. Klosterman and his related property owners to obey provisions of the City code.

Further, here HCLRC as the foreclosing judgment lien holder is not the original lien holder but instead the assignee of the lien. There is no evidence or way of ascertaining from the record in this case the value given to the City by HCLRC for that assignment. Indeed, the value could well have been at least in part non-monetary and incalculable. Perhaps the value given by HCLRC included the promise that the properties would be rehabilitated as a portfolio in a single comprehensive program managed with funding through government controlled funds and or investors to be solicited.

9

HCLRC was able to obtain clean title to the properties without paying anything toward the over $400,000 in real estate taxes due on the properties. It also afforded HCLRC the ability to hold the properties without any liability for payment of property taxes until it transferred them.

Not only is the valuation of what consideration may have been given by HCLRC for the assignment of the City judgment lien, the source of the second component of the "purchase price", namely the $800,000 in cash paid at closing is likewise not in the record. It could have been a combination of federal COVID era federal funding, State of Ohio funding, Hamilton County funding, and City funding. Regardless of who paid how much to whom for what reason, the Receiver was a necessary agent for delivery of the properties to HCLRC.

In the now 32 months after the closing on the HCLRC Sale, the titles of all of the 23 properties with a building remain in the name of HCLRC or the Port. While they own the properties, no real estate taxes are imposed or due by HCLRC or the Port.

It could well be that the reason HCLRC wishes to terminate the receivership is to cut off its exposure to pay the Receiver's fees and expenses.

What was HCLRC's purpose in being so actively involved in the TSO Litigation? What pecuniary advantage did it seek? HCLRC's filings did not include (or infer) any monetary benefit, either direct or indirect, which HCLRC would, or might, enjoy whether the claims by TSO and Lentine were granted or whether they were denied or denied in part. The Receiver submits that HCLRC's goal was to reduce HCLRC's exposure to having to fund any deficit in the receivership to cover the Receiver's fees and expenses.

HCLRC left to the Receiver the work to prove that Lentine was due nothing and that TSO likewise was due nothing on the claim it asserted. The Receiver prevailed save for losing on a third theory adopted by the Magistrate but not argued by TSO. The amount awarded TSO was,

10

however, roughly 15% of TSO's claim. This inured to HCLRC's benefit by allowing it to escape incurring its own further legal fees and by creating an arguable barrier to ever having to chip in to cover the Receiver's fees.

Finally, the over-arching inequity in this manner is the abandoning of the Receiver to the endless, ill-founded and ill-motivated litigation, which remains in progress, brought by Mr. Klosterman.

For these reasons, this case has special circumstances which justify the Court obliging HCLRC to pay the Receiver's fees and expenses for delivery of the property through the HCLRC Sale, for litigating the TSO Claims, and to defend against the vexatious litigation brought by Mr. Klosterman.

## 2. TSO Claim

HCLRC states that there is "only $23,700.44" remaining in the receivership. HCLRC obviously calculates this by subtracting from the Escrow Account the $57,271.48 due to TSO under the Magistrate's Order. HCLRC thus vaults TSO ahead of all of the $104,437.745 the Receiver seeks to have approved in the Second Application. That is unfair and unjustified. And it underscores the need to keep the receivership open to permit both a full final application by the Receiver for payment of fees and reimbursement of expenses and a ruling on the liability of HCLRC for the difference between all approved fees and expenses and the balance in the Escrow Account.

## 3. 2025 Klosterman Case

The allegations in the 2025 Klosterman Case go to the heart of the HCLRC Sale and the conduct by HCLRC in this case. The Receiver's defense of the claims made by Klosterman benefited HCLRC by defending the HCLRC Sale. The Klosterman Appeal is pending. The

11

receivership should not be terminated until that litigation is concluded.

The Receiver has grounds for an award of sanctions in its favor against Mr. Klosterman for filing – and continuing – the 2025 Klosterman Case and the Klosterman Appeal.

### 4. Expense of Administration

The rewriting of the Ohio receivership statute effective in 2015 provides at R.C. 2734.04(C) that funds expended on behalf of a receiver, including receiver fees, the fees for the receiver's professionals and for performing receivership work "shall be taxes as costs or otherwise treated as an administrative expense of the action." The April 11, 2025 Magistrate's Decision held that money owed by the Receiver to TSO "should be considered a cost of the receivership for purposes of R.C. 2735.04."[8]

### 5. HCLRC Waiver

The Receiver filed monthly reports through January 2023 when TSO was replaced as property manager. All the reports contained itemization of revenues received and expenses paid by TSO. The City did not object to any monthly report by the Receiver. Nor has HCLRC. The City did not object to the Receiver's first fee application. The Second Fee Application is in form and format exactly the same as in the First Fee Application seeking payments to the Receiver for the Receiver's out of pocket expenses for charges by vendors for goods and services provided for operation of the Receivership, for fees and expenses charged by Receiver's counsel and for the Receiver's fees. The payment to the Receiver on the first application was made May 1, 2023 out of the proceeds of the HCLRC Sale and was the *first payment to the Receiver since the appointment of the Receiver 39 months earlier.*

As an active participant in this case since early 2022, HCLRC has been intimately and

---

[8] Page 7, footnote 7.

12

crucially involved in this case, including, significantly, in monitoring the Receiver's monthly reports prior to HCLRC becoming the Substituted Plaintiff and up to the HCLRC Sale and thereafter.

### 6. The Receiver Must Receive a Release

HCLRC argues that there may be no end to litigation against or involving the Receiver but HCLRC says, in effect, "so sad, too bad." HCLRC obtained an order by this Court in Case No. A2300473 declaring Klosterman a vexatious litigator. That kind of a fix is not available to the Receiver. The Receiver did not sign up for unlimited exposure liability or incurrence of legal fees and expenses. But HCLRC knowingly walked into the chaos in this case caused first by Mr. Klosterman and second by Mr. Lentine. While the Receiver has done what hopefully would lead to the end of their shenanigans, the Court should not force the Receiver into the position of defending at its own and sole expense the HCLRC Sale or any other receivership matter.

### 7. A Final Report Must be Made

HCLRC would have HCLRC's Motion take the place of a final receiver's report. The Receiver is entitled to at least file an updated, if not final application for payment of fees and reimbursement of expenses to disclose the quantifies, the amount incurred since August 31, 2023.

### D. Conclusion

HCLRC was afforded a great opportunity to replace the City in a judgment lien foreclosure action (a) to obtain an assignment of the lien (for undisclosed consideration) and (b) to purchase all of the subject properties with the statutorily created advantage of a landbank to obtain a transfer free and clear of all real estate taxes and to hold the properties tax free until transferred by HCLRC and (c) to get financial assistance for the cash component of the purchase

13



**EXHIBIT**

**B**

price (in an undisclosed amount from an undisclosed source(s)). The neighborhood and the City are also beneficiaries of HCLRC's involvement in the case and the HCLRC Sale. All of the Receiver's fees and expenses incurred to obtain the HCLRC Sale, and to defend it, should be paid.

Why would one agree to be a receiver in a City nuisance abatement action under R.C. 3767.41 or in a City judgment lien foreclosure action without some assurance that in any litigation against the receiver, either commenced during the receivership or after termination of the receivership and discharge of receiver, that the receiver would be not on its own and without City backup. Or even worse, without backup from the assignee not only of the City's judgment lien but also the assignee of the liened property. Those eventualities are special circumstances. They exist in this case and they require as a matter of equity that HCLRC stand by the Receiver. HCLRC has benefited by entering this case. Unless the Receiver is supported by HCLRC, the Receiver will become a net loser, incurring more in fees and expenses than it recovered two and a half years ago on its first fee application which was paid after the Receiver had served three and a half years in the case.

The receivership should not be terminated at this time.

Respectfully submitted,

/s/ *Richard Boydston*
Richard Boydston (0022360)
Counsel for Konza, LLC, Receiver
Dentons Bingham Greenebaum LLP
312 Walnut Street #2450
Cincinnati, Ohio 45202-4028
513.455.7663
richard.boydston@dentons.com

14

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on each of the following by email on February 25, 2026.

James L. Nieberding, Esq.
Counsel for Tri-State Organization and
    Joseph Lentine
Nieberding & Nieberding CO LPA
810 Sycamore St., Suite 423
Cincinnati, OH 45202
jlnieberding1117@gmail.com

Erica Faaborg, Esq.
Counsel for City of Cincinnati
801 Plum Street
Cincinnati, OH 45202
erica.faaborg@cincinnati-oh.gov

Kara A. Czanik, Esq.
Brian E. Schultz, Esq.
Counsel for Substituted Plaintiff Hamilton
    County Land Reutilization Corporation
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com

John Klosterman
5615 Sidney Road
Cincinnati, OH 45238
johncklosterman@gmail.com

/s/ Richard Boydston

15

revised
8/5/19

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CITY OF CINCINNATI,

Plaintiff,

v.

JOHN KLOSTERMAN, et al.

Defendants.

ENTERED
FEB 1 4 2020

CASE NO. A1905588

ORDER APPOINTING RECEIVER


D128139462

This case comes before the Court on the Plaintiff City of Cincinnati's Motion to Appoint Receiver under R.C. § 2735.01 and Complaint, the Answer of the Defendants, the evidence presented, and the filings and papers of record and the docket sheets in the case.

The Court having reviewed all evidence presented and considered all the circumstances and facts of the case, the presence of conditions and grounds justifying relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter and the adequacy and effectiveness of all other remedies, and the Court further finding all necessary parties have been served with notice of this Motion to Appoint Receiver and are properly before this court, it is the opinion of the Court that the City has presented clear and convincing evidence that there is a need for a receiver to be appointed and that the motion is well taken and should be granted and therefore it is hereby ordered as follows.

1. Appointment of Receiver. Konza, LLC , by its Manager Ricard Boydston, is appointed as receiver pursuant to R.C. 2735.01 (A)(1) for the following real estate (collectively, the "Properties"):

| tract # | address | parcel number | record owner | comp. count # |
|---------|---------|---------------|--------------|---------------|
|         |         |               |              |               |



EXHIBIT
C

| tract # | address | parcel number | record owner | comp. count # |
|---|---|---|---|---|
| 1 | 671 Delhi Ave. | 153-0002-0094 | Boldface Properties LLC | 1 |
| 2 | 679 Delhi Ave. | 153-0002-0092 | Boldface Properties LLC | 2 |
| 3 | 794 Delhi Ave. | 152-0039-0150 | John Klosterman | 3 |
| 4 | 742 Delhi Ave. | 153-0003-0027 | John Klosterman | 5 |
| 5 | 793 Delhi Ave. | 153-0003-0048 | John Klosterman | 8 |
| 6 | 753 Delhi Ave. | 153-0003-0063 | John Klosterman and Sue S. Klosterman | 9 |
| 7A | 652 Steiner Ave. | 153-0002-0014 | John Klosterman | 10 |
| 7B | same | 153-0002-0198 | same | same |
| 8 | 4053 Palos St. | 179-0076-0161 | John Campbell Klosterman | 11 |
| 9A | 639 Steiner Ave. | 152-0042-0055 | John Klosterman | 12 |
| 9B | same | 152-0042-0057 | same | same |
| 10A | 638 Steiner Ave. | 152-0042-0044 | John Klosterman and Sue Klosterman | 13 |
| 10B | 938 Striker Ave. | 152-0042-0043 | same | same |
| 10C | 940 Stiker Ave. | 152-0042-0045 | same | same |
| 10D | 640 Steiner Ave. | 152-0042-0172 | same | same |
| 11 | 632 Delhi Ave. | 153-0002-0062 | John C. Klosterman and Susan S. Klosterman | 14 |
| 12 | 701 Delhi Ave. | 153-0002-0091 | John C. Klosterman and Susan S. Klosterman | 15 |
| 13 | 659 Sedam St. | 153-0002-0145 | John C. Klosterman and Susan S. Klosterman | 16 |
| 14A | 667 Delhi Ave. | 153-0002-0185 | John C. Klosterman and Susan S. Klosterman | 17 |
| 14B | 646 Sedam St. | 153-0002-0182 | John C. Klosterman and Susan S. Klosterman | same |
| 15 | 703 Delhi Ave. | 153-0002-0090 | Geneva Quatkemeyer | 18 |
| 16 | 649 Steiner Ave. | 153-0002-0057 | Sedamsville Heritage Properties LLC | 20 |
| 17 | 705 Delhi Ave. | 153-0002-0089 | Sedamsville Heritage Properties LLC | 21 |
| 18A | 654 Steiner Ave. | 153-0002-0013 | Sedamsville Heritage Properties LLC | 22 |
| 18B | same | 153-0002-0199 | same | same |
| 19 | 636 Delhi Ave. | 153-0002-0064 | Sedamsville Heritage Properties LLC | 23 |
| 20 | 700 Delhi Ave. | 153-0002-0037 | Virginia Williamsburg LLC | 24 |
| 21 | 685 Halsey Ave. | 155-0048-0001 | Virginia Williamsburg LLC | 26 |
| 22 | 749 Sedam St. | 153-0003-0094 | Worldwide Mobile Latrine, Inc. | 27 |
| 23 | 740 Delhi Ave. | 153-0003-0028 | Boldface Properties LLC | 28 |
| 24 | 739 Sedam St. | 153-0003-0089 | Boldface Properties LLC | 29 |

2

| tract # | address | parcel number | record owner | comp. count # |
|---|---|---|---|---|
| 25 | 702 Sedam St. | 153-0002-0196 | Emily Vets LLC | 30 |
| 26 | 767 Steiner Ave. | 153-0003-0003 | Emily Vets LLC | 31 |
| 27 | 764 Delhi Ave. | 153-0003-0004 | Emily Vets LLC | 32 |
| 28 | 762 Delhi Ave. | 153-0003-0006 | Emily Vets LLC | 33 |
| 29 | 756 Delhi Ave. | 153-0003-0008 | Emily Vets LLC | 34 |
| 30 | 732 Delhi Ave. | 153-0003-0036 | Emily Vets LLC | 35 |
| 31 | 730 Delhi Ave. | 153-0003-0038 | Emily Vets LLC | 36 |
| 32 | 728 Delhi Pk. | 153-0003-0040 | Emily Vets LLC | 37 |
| 33 | 789 Delhi Ave. | 153-0003-0050 | Emily Vets LLC | 38 |
| 34 | 787 Delhi Ave. | 153-0003-0052 | Emily Vets LLC | 39 |
| 35 | 773 Delhi Ave. | 153-0003-0055 | Emily Vets LLC | 41 |
| 36 | 737 Delhi Ave. | 153-0003-0070 | Emily Vets LLC | 42 |
| 37 | 735 Delhi Ave. | 153-0003-0072 | Emily Vets LLC | 43 |
| 38 | 733 Delhi Ave. | 153-0003-0073 | Emily Vets LLC | 44 |
| 39 | 714 Delhi Ave. | 153-0002-0082 | Emily Vets LLC | 45 |
| 40 | 709 Delhi Ave. | 153-0002-0086 | Emily Vets LLC | 47 |
| 41 | 626 Steiner Ave. | 152-0042-0168 | Virginia Williamsburg LLC | 48 |
| 42 | 637 Steiner Ave. | 152-0042-0059 | Klosterman John & Sue | 49 |
| 43 | 759 Delhi Ave. | 153-0003-0060 | Klosterman John & Sue | 50 |
| 44 | 712 Steiner Ave. | 152-0038-0011 | Klosterman John & Susan | 51 |
| 45 | 757 Delhi Ave. | 153-0003-0061 | Klosterman John & Susan S | 52 |
| 46 | 755 Delhi Ave. | 153-0003-0062 | Klosterman John & Susan S | same |
| 47 | 751 Delhi Ave. | 153-0003-0064 | Klosterman John & Sue S | 53 |
| 48 | 624 Stainer Ave. | 152-0042-0032 | Virginia Williamsburg LLC | 54 |
| 49 | 924 Striker Ave. | 152-0042-0031 | Virginia Williamsburg LLC | same |
| 50 | 624 Steiner Ave. | 152-0042-0166 | Virginia Williamsburg LLC | 56 |
| 51 | 621 Steiner Ave. | 152-0042-0067 | Sedamsville Historical Society | 57 |
| 52 | 619 Steiner Ave. | 152-0042-0069 | Sedamsville Historical Society | 58 |
| 53 | 769 Delhi Ave. | 153-0003-0056 | Virginia Williamsburg LLC | 59 |
| 54 | 767 Delhi Ave. | 153-0003-0058 | Virginia Williamsburg LLC | same |
| 55 | 626 Steiner Ave. | 152-0042-0034 | Virginia Williamsburg LLC | 48 |
| 56 | 679 Fernland Ave. | 153-0002-0154 | Virginia Williamsburg LLC | 60 |
| 57 | 677 Halsey Ave. | 153-0002-0155 | Virginia Williamsburg LLC | Same |
| 58 | 628 Delhi Ave. | 152-0041-0058 | Virginia Williamsburg LLC | 61 |
| 59 | 649 Sedam St. | 153-0002-0140 | Virginia Williamsburg LLC | 62 |

2. <u>Bond.</u> The Receiver shall post a bond of $1,000.00 with the Clerk of Court.

3. <u>Powers of Receiver.</u> The Receiver shall have all powers of a receiver under R.C.

Chapter 2735 as to the Properties and as well as pursuant to all orders issued by the Court in this

case. The Receiver shall have the authority to take any action to manage, maintain, preserve, lease and rent all of the Properties. The Receiver shall also have the authority to sell any and all of the Properties subject to further order of the Court. The Receiver is authorized to do the following:

    A. initiate, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal court as may in the opinion of the Receiver be necessary for the protection, maintenance and preservation of the Properties or carrying out the terms of this Order including, but not limited to, the filing of a tax valuation appeal with respect to any of the Properties;

    B. employ such attorneys, managers, agents, and persons as its judgment are advisable or necessary for performance of the duties of the Receiver; and

    C. retain contractors and other persons and entities to make repairs to the Properties and to Maintain the Properties.

4. Limited Liability. In carrying out its duties, the Receiver is entitled to act in the exercise of its own business judgment as the Receiver deems appropriate within its sole discretion. The Receiver shall not be liable for any action taken or not taken by it in good faith and shall not be liable for any mistake or fact or error of judgment or for any actions or omissions of any kind unless caused by willful misconduct or gross negligence. All owners of the Properties shall indemnify, hold harmless, and defend the Receiver from and against any and all liabilities, costs, and expenses including, but not limited to and other fees and expenses incurred by it arising from or in any way connected to the performance of its duties as receiver. The Receiver shall have no personal liability for any environmental matter with respect to any of

4

the Properties.

5. <u>Turnover to Receiver</u>. Defendants John Klosterman, Susan Klosterman, Jimmy Smith, Estate of Geneva Quatkemeyer, Sedamsville Heritage Properties LLC, Jeremy Tausch, Boldface Properties LLC, Virginia Williamsburg LLC, Emily Vets LLC, Emily Klosterman, Sedamsville Historical Society and Worldwide Mobile Latrine, Inc. (collectively, the "Owner Defendants") and their respective agents, employees, representatives and creditors are hereby prohibited from taking any act interfering in any way with the acts of the Receiver and from in any way, manner, or means, wasting, disposing of, transferring, selling, assigning, or pledging any of the Properties; and, upon request of the Receiver or its agents, the foregoing persons and entities shall promptly:

A. make available to the Receiver all of the books, records, computer hardware and software (including computer programs, data bases, disks and all other mediums), relating to the Propertie and

B. disclose the nature, amount, and location of any and all assets, books, computer hardware and software (including computer programs, data bases, disks and all other mediums), and records that are in any way connected with any of the Properties.

6. <u>Payment of Rent to Receiver</u>. All amounts due by any person by reason of any past or present occupancy or use of any of the Properties shall be immediately and fully paid to the Receiver. All rent due by all tenants of the Properties shall be paid to the Receiver.

7. <u>Cooperation with Receiver</u>. All persons to whom notice of this Order is given shall immediately and at all times cooperate with the Receiver and promptly and fully respond to all reasonable requests made by the Receiver for the benefit of any of the Properties.

5

8.  Injunction.  All persons to whom notice of this Order is given are enjoined and stayed from:

    A.  commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against any of the Properties or the Receiver;

    B.  executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Properties or the books, records, revenues, profits and related assets associated with the Property, the Receivership Assets, or upon the Receiver; and

    C.  doing any act or thing whatsoever which may impair, impede or interfere with the Receiver in the discharge of the performance of its duties and powers.

9.  Utilities.  Every person and entity providing any service to any of the Properties (including, but not limited to, electricity, gas, sewer, water, trash collection, telephone and cable):

    A.  is prohibited from discontinuing service to any of the Properties based upon any unpaid bills incurred prior to the date of the entry of this order;

    B.  shall forthwith deliver to the Receiver all deposits held with respect to any of the Properties and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such services;

    C.  shall promptly open new accounts under the name of the receivership and shall be prohibited from discontinuing services while the new receivership

6

account is in the process of being established.

10. Communications with Tenants. The Owner Defendants and all agents, affiliates other persons connected with any of them are enjoined and prohibited from discussing this receivership with any tenant or other occupant of any of the Properties.

11. Pre-receivership expenses. The Receiver shall not be liable for any expense or account payable with regard to any of the Properties incurred prior to the entry of this Order.

12. Claims Against Receiver. No person or entity shall file suit against the Receiver, take other action against the Receiver, or execute against the Properties, without an explicit and prior order of this Court permitting the suit or action.

13. Limitation of Receiver Liability to Creditors. The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any claims, liabilities, obligations, liens or amounts owned to any person or entity with regard to the Properties or arising out of or related to the receivership.

14. Bank Accounts. All person and entities (including, but not limited, to all banks) shall promptly and fully deliver to the Receiver all funds arising out of any of the Properties and provide to the Receiver all records requested by the Receiver relating to any of the Properties.

15. Injunction as to John Klosterman and Susan Klosterman. Defendants John Klosterman and Susan Klosterman are specifically enjoined from (A) communicating with any tenants of the Properties and (B) entering into or on any of the Properties for any reason whatsoever except upon the express prior written request of the Receiver.

16. Receiver Advances. The Receiver may advance funds incurred in connection with the performance of the duties of receiver (collectively, "Receiver Advances") and all Receiver Advances shall be a first and best lien on all the Properties.

7

17. <u>Sales</u>. The Receiver may sell any and all of the Properties either through the Sheriff of Hamilton County, Ohio as to any of the Properties and by the Receiver as to any of the Properties as may be approved by order entered by the Court.

18. <u>Receiver Compensation and Reimbursement of Expenses</u>. The Receiver shall be entitled to reasonable compensation for services rendered and to reimbursement for expenses incurred, all as approved by the Court. All compensation and reimbursement of expenses awarded by the Court to the Receiver shall be an administrative expense priority in this case and for those arising from the Properties, a first and best lien on the Properties.

19. <u>Liability of Receiver</u>. Neither the Receiver nor Plaintiff shall be liable for any expense or account payable with regard to any of the Properties incurred prior to the Receiver's taking possession of the Properties. Neither the Receiver nor Plaintiff shall be liable for any expenses or accounts payable with regard to the Properties incurred after the Receiver's taking control and possession of the Properties unless the Plaintiff or Receiver shall specifically and in writing assume and accept liability for any particular expense or account payable with regard to the Properties. Except for damages, loss and liability resulting from the gross negligence or willful misconduct of the Receiver, the Receiver's liability for any loss or damages shall be limited to the assets of the receivership and the bond posted in accordance with this Order.

20. <u>Taxes</u>. The Receiver shall not be responsible for the preparation or filing of any tax return for any of the Properties or for any of the Owner Defendants including, but not limited to, with respect to income, commercial activity, gross receipts, personal property, real estate or sales and use.

21. <u>Reports</u>. The Receiver shall file a report within thirty days of the entry of this Order and monthly thereafter.

8

22. Final Order. The Court expressly determines pursuant to Civ. R. 54(B) that there is no just reason for delay. This is a final and appealable order.

SO ORDERED.

_____
Judge       2-14-20

19709639.1

**MAGISTRATE**

FEB 13 2020

**HAS SEEN**

9



**Hamilton County Landbank**

# Board Minutes

Tuesday, July 25, 2023 Board of Directors Meeting, 4:00 p.m.
Todd B. Portune Center for Community Government, 138 E. Court St., Room 610

1. **CALL TO ORDER**
   Jill Schiller called the Hamilton County Land Reutilization Corporation (Landbank) Board of Directors meeting to order at 4:04 p.m.

   **Board Members Present:**

   Dumas, Stephanie Summerow          Schiller, Jill
   Honerlaw, Joe                      Tighe, Kevin - Driehaus Designee
   Pureval, Aftab                     Weidman, Tom

   **The Port, as Management Company of the Landbank:**

   Allesee, Kelley          Laird, Tiffany
   Bancroft, Amy            Millikin, Tom
   Brunner, Laura           Music, Elizabeth
   Denning, Philip          Robb, Deborah
   Fischer, Bill            Stephens, Jacob
   Garth, Andrew            Stone, Nick
   Herrmann, Luke           Stukenberg, John
   Hudson, Rick             Summerlin, Jamaal

   **Guests:**
   Char, David – Hamilton BOCC, Intern
   Galligan, John – 3CRE Commercial Real Estate

2. **WELCOME AND INTRODUCTIONS**
   Ms. Schiller welcomed the Board members, staff, and guests.

3. **APPROVAL OF MINUTES**
   Ms. Schiller asked Board members if there were any additions or modifications to the April 25, 2023 Board of Directors meeting minutes. Hearing none, he asked for a motion to adopt the meeting minutes.

   **Motion:** Ms. Dumas moved to adopt the minutes of the April 25, 2023 Board of Directors meeting. The motion was seconded by Mr. Weidman and was approved unanimously.

4. **MANAGEMENT REPORT**
   Mr. Denning reported the Landbank has officially made the switch to Tolemi, a new software solution that will increase staff efficiency, improve data accuracy, and create better and more transparent public access to Landbank data.

   Mr. Denning reported the recent announcement of Hamilton County ARPA fundi[...]
   Cincinnati Development Fund (CDF) included several third-party projects of previo[...]
   as acquisition, stabilization, or disposition. Four homeownership projects were [...]



EXHIBIT

D

Landbank and Port that will impact multiple neighborhoods, resulting in 50 new homeowner opportunities. Mr. Denning offered to circulate a list of all jurisdictions, showing the location of these homes. Board members and staff thanked the County for the investment.

Mr. Denning noted the acquisition of the Sedamsville portfolio in early May. The Landbank is nearly finished with the City-funded stabilization of four historic properties in Sedamsville. As a recipient of the County CDF awards, the Landbank will be able to accelerate the home ownership work being done in Sedamsville. Facilities Manager, Ron Shouse, has been in the neighborhood, accessing every vacant structure, trimming overgrown lots, coordinating with Code Enforcement to deal with abandoned vehicles, working with the Litter Office to quickly address new dumping, and communicating with CPD regarding break-ins and other criminal activity. Additionally, the City has granted money to Home Base to start a planning study for Sedamsville. Mr. Denning provided an update on the City legal actions against Mr. Klosterman, categorizing him a vexatious litigator.

Mr. Denning recapped the State of Ohio continued the 2021 Brownfield Remediation and Demolition programs in the 2023 budget, adding another $500 million to these programs. To make communities in Hamilton County as competitive as possible, we have begun a coordinated county-wide effort to solicit potentially eligible projects. The timing of this program is unclear, but the goal is to be prepared to move quickly as soon as the Ohio Department of Development (ODOD) opens the portal. The Board discussed projects for funds that were previously received, and ways to thank our state delegation.

Ms. Brunner announced an upcoming implosion of the head house at the Beekman Silos. Mr. Denning gave an overview of recent Landbank activities including a new partnership with the Realtists, and 28 staff-attended events since Q2, where staff have spoken on a variety of topics. A panel with 5/3rd, PNC, and Huntington bank recently gathered to discuss challenges that come with developing and selling homes.

Mr. Denning noted several new programs included in the most recent state budget, most of which focus on single-family housing. The Landbank is in the early stages of figuring out how these programs will tie to our work.

With regards to investments in real estate, the Board discussed possible ways to proactively make the process streamlined by the Port, City, or County identifying good, developable, plots, and getting them zone in advance.

Software Transition
Mr. Stephens referred the Board to the packet and provided an overview of how Tolemi has improved internal workflows, as well as a preview of the public facing data portal.

Port Short
Mr. Millikin introduced a Port Short, which is a monthly video series, detailing how the Landbank is spending the first round of ODOD Demolition and Brownfield funding.

5.    INVENTORY REVIEW
Ms. Bancroft referred the Board to the packet and reviewed the Landbank's acquisition and disposition numbers.



Hamilton County
Landbank

# Board Minutes

Tuesday, October 25, 2022 Board of Directors Meeting, 4:00 p.m.
Todd B. Portune Center for Community Government, 138 E. Court St., Room 610

**1.    CALL TO ORDER**

Jill Schiller called the Hamilton County Land Reutilization Corporation (Landbank) Board of Directors meeting to order at 4:02 p.m.

**Board Members Present:**

| | |
|---|---|
| Driehaus, Denise | Schiller, Jill |
| Hilton, Bobby – Dumas Designee | Weidman, Tom |
| Honerlaw, Joe | |

**The Port, as Management Company of the Landbank:**

| | |
|---|---|
| Allesee, Kelley | Hudson, Rick |
| Bancroft, Amy | Laird, Tiffany |
| Brunner, Laura | Millikin, Tom |
| Daniels, Jilson | Robb, Deborah |
| Denning, Philip | Stephens, Jacob |
| Fischer, Bill | Stone, Nick |
| Herrmann, Luke | |

**Guests:**

DiMenna, Tony – Hamilton County Treasurer

**2.    WELCOME AND INTRODUCTIONS**

Ms. Schiller welcomed the Board members, staff, and guest.

**3.    APPROVAL OF MINUTES**

Ms. Schiller asked Board members if there were any additions or modifications to the July 26, 2022 Board of Directors meeting minutes. Hearing none, she asked for a motion to adopt the meeting minutes.

**Motion:** Ms. Driehaus moved to adopt the minutes of the July 26, 2022 Board of Directors meeting. The motion was seconded by Mr. Honerlaw and was approved unanimously.

**4.    MANAGEMENT REPORT**

Mr. Denning reviewed the Landbank and Port have been applying for funds including City CBDG and State Ohio Department of Development (ODOD) funds. The Landbank contracted with the Ohio Department of Development for the first round of awarded Building Demolition and Site Revitalization Program. Projects include demolition and asbestos remediation on sites in Elmwood Place, Woodlawn, Harrison Township, and various neighborhoods in Cincinnati. Funding available from the State for the Building Demolition and Site Revitalization Program has a tight deadlines for expenditure.

**EXHIBIT**

**D**

*Formal Action Requested* – Before the Board today is proposed resolution 2022-07 entitled:

**A RESOLUTION TO AUTHORIZE THE HCLRC TO ENTER INTO CONTRACTS NECESSARY TO EXPEND OHIO DEPARTMENT OF DEVELOPMENT AND CITY OF CINCINNATI COMMUNITY DEVELOPMENT BLOCK GRANT FUNDS**

Mr. Denning referred the Board to the packet and reviewed this resolution that would allow the Landbank to spend ODOD and City demolition funds.

**Motion:** Mr. Weidman moved to approve Resolution 2022-07. The motion was seconded by Mr. Honerlaw and was approved unanimously.

Mr. Denning reported the Ohio Land Bank Association continues advocacy efforts with the State for additional funds that could be dedicated to the Brownfield Remediation and Building Demolition and Site Revitalization Programs.

Mr. Denning noted the Landbank is preparing the transition and implementation of a new property software solution. A new comprehensive data solution will automate much of the manual data inputs, saving time, eliminating mistakes, and keeping operations efficient. The tool will also increase transparency with property ownership, including a new public-facing portal for interested purchasers of Landbank property.

5. **INVENTORY REVIEW**

Ms. Bancroft referred the Board to the packet and reviewed the Landbank's acquisition and disposition numbers. Ms. Bancroft highlighted the acquisition of 5965 Stewart Road in Silverton, 1317 William Howard Taft Road in Walnut Hills, and 7820 Harrison Avenue in Mt. Healthy.

6. **PROGRAM REVIEW**

Homeowner Repair Program

Using slides, Ms. Bancroft gave an overview of the Home Repair Program and shared pictures and progress through the third quarter. To date the Landbank has allocated $192K of the budgeted $250K. The program is on time and on budget to assist 17 longtime Evanston homeowners with necessary exterior home repairs.

Disposition Programs

Ms. Bancroft reviewed the number of dispositions through the third quarter and highlighted the residential sales at 3523 Wilson Avenue, 3577 Alaska Avenue, 6075 E. Miami River Road, and 6014 Farmdale Avenue; government partner sale at 5965 Stewart Road; and the side lot sales on Cook Avenue. Using slides, Ms. Bancroft highlighted 855 Blair Avenue and 1937 Fairmount Avenue.

Structure Stabilization

Ms. Bancroft reviewed the structure stabilizations completed through the third quarter and gave an overview of the program schedule for the remainder of the year. Using slides, she highlighted 707 and 754 Delhi Avenue and 745 and 656 Sedam Street.

Sedamsville

Mr. Denning reported Sedamsville has been advocating for increased housing and economic development. In September, the Landbank executed a funding agreement with the City of Cincinnati for the Sedamsville portfolio acquisition. Using slides, Mr. Denning shared a map, gave an overview, and reviewed the projections and assumptions of the portfolio. There are 39 vacant land parcels, and 23 homes are being purchased out of receivership. 18 of the 23 structures are occupied with tenants. Properties will be renovated and transitioned into homeownership using the CARE model.

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CITY OF CINCINNATI,
an Ohio municipal corporation,

Plaintiff,

v.

JOHN KLOSTERMAN a/k/a
JOHN C. KLOSTERMAN a/k/a
JOHN CAMPBELL KOSTERMAN, *et al.*,

Defendants.

Case No. A 1905588

Judge Wende C. Cross

Chief Magistrate Judge Anita P. Berding

---

**SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION
CORPORATION'S MEMORANDUM IN OPPOSITION TO TRI-STATE
ORGANIZATION, INC. AND JOSEPH LENTINE'S APPLICATION
FOR PAYMENT OF COSTS, EXPENSES, AND FEES**

---

Now comes Substitute Plaintiff Hamilton County Land Reutilization Corporation

("HCLRC"), and submits the following Memorandum in Opposition to the *Application for

Payment of Costs, Expenses, and Fees* ("Application") filed on May 1, 2023, by nonparties Tri-

State Organization, Inc. ("TSO") and Joseph Lentine ("Lentine"). HCLRC also submits Affidavits

in support contemporaneously herewith.

Respectfully submitted,

*/s/ Cynthia M. Fischer*
Cynthia M. Fischer (0073761)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8163
Fax: (513) 977-8141
Email: cynthia.fischer@dinsmore.com
*Counsel for Substitute Plaintiff Hamilton
County Land Reutilization Corporation*



EXHIBIT
E

1

## MEMORANDUM

### I.    FACTS

On February 14, 2020, the Court appointed Konza, LLC ("Konza" or the "Receiver") as Receiver for fifty-nine tracts consisting of twenty-four buildings and vacant parcels (collectively, the "Properties") formerly owned by Defendant John Klosterman and related entities. (Order Appointing Receiver, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, ¶ 1 (Feb. 14, 2020)). Under the terms of the Receivership, the Receiver may "take any action to manage, maintain, preserve, lease, and rent all of the Properties…." *Id.* ¶ 3. The Receiver continued the retention of TSO and its sole owner, Lentine, as property manager. TSO and Lentine refused to sign a written contract memorializing TSO's relationship with the Receiver. (Affidavit of Richard Boydston ("Boydston Affidavit") ¶ 7). Nevertheless, TSO collected rents and security deposits and "managed" the subject properties until January, 2023. Over the course of TSO's management of the rents and properties, the Receiver filed 35 Monthly Reports ("Receiver's Reports"), each of which includes monthly reports from TSO attached ("TSO's Reports").

### A.    TSO Collected $437,799.42 in Rents and Security Deposits, and TSO Never Tendered Any Funds to the Receiver.

TSO's Reports state that TSO collected a total of $425,194.42 in rents, and $12,605 in security deposits. The total amount that TSO collected was $437,799.42. *None* of those funds were tendered to the Receiver. (Boydston Aff. ¶¶ 13–14). TSO did not deposit the rents and security deposits into a financial institution, and TSO kept <u>all</u> of the rental income and deposits. (*Id.*). TSO permitted some tenants to pay rent in cash. As a result, HCLRC cannot determine if TSO reported to the Receiver an accurate amount of rents received, nor what was done with the rental income and security deposits.

2

## B.   TSO Systematically Charged the Receivership for Improper Amounts and Failed to Provide Supporting Documentation.

TSO's Reports contain improper charges, and TSO's Reports are not supported by receipts and other documentation. Examples of TSO's recurring improper charges and accounting failures include the following: (1) unsupported and undocumented labor costs; (2) fuel charges without explanation; (3) charging the Receivership internal payroll and withholding taxes; (4) charging the Receivership TSO's overhead costs, such as office supplies, heating for its office, and Spectrum costs for its office; (5) duplicative receipts and charges; (6) calculating a "management fee" based upon projected rent instead of collected rent; and (7) the majority of the receipts do not reflect for what property the expense was incurred, or indeed, whether the receipts even relate to Receivership Properties.  TSO's accounting was careless at best, and potentially fraudulent at worst.

In light of the volume of documentation made available to HCLRC by the Receiver on TSO's purported expenses and labor charges, HCLRC has selected three sample months to demonstrate that TSO systematically overcharged the Receivership and drastically inflated its expenses by assessing costs, fees, and expenses for which the Receivership is not liable.

### 1.   Example Month #1 – August 2021

Here, TSO assessed a labor cost of **$12,942.50** without any indication as to what Properties on which the labor was performed, what labor was performed, the number of hours spent on any particular task, or the rate for any particular task. (Receiver's Amended Eighteenth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 7 (Oct. 8, 2021)). The Receivership is not liable to pay costs which have no supporting documentation.

TSO also improperly charged the Receivership for payroll and unemployment taxes, and the taxes amounted to a staggering **$39,289.13**—aggregating all of its employment-related taxes from 2020 through Quarter 2 2021:

3

### 2. Example Month #2 – March 2022

TSO's Report March, 2022[1] included **$11,533.06** in TSO's alleged labor costs. (Receiver's Twenty-Fifth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 5 (Apr. 6, 2022)). There is *no* indication of the specific property *where* the labor was allegedly performed, *what* labor was allegedly performed, or the *length of time* for the work allegedly performed.   While TSO gives a brief "Summary of Maintenance and Repairs" for certain addresses, it does not state how much time it spent on each job, how many people were allegedly working, nor does it divulge the rate it charged for these tasks. (*Id.* at 7–8). Without any supporting documentation to demonstrate the time and place for work actually performed, these labor costs are not compensable.

In the same report, TSO charged the Receivership for internal employment taxes:

| 4TH QTR 2021 TAX LIABILTY | | |
|---|---|---|
| S.S TAX | $1,276.63 | |
| MEDICARE | $298.56 | |
| TOTAL 4TH QTR 2021 | | $1,575.19 |
| | | |
| 1ST QTR 2022 TAX LIABILITY | | |
| S.S TAX | $1,368.84 | |
| MEDICARE | $320.12 | |
| TOTAL 1ST QTR 2022 | | $1,688.96 |

(*Id.* at 6).  TSO's employment taxes are not the Receivership's responsibility.

The expenses from the same month are similarly problematic.  TSO's Report reflects total alleged expenses of $6,552.96.  However, the receipts submitted by TSO to the Receiver in support of these alleged expenses total only $5,394.26.  (Boydston Aff. at Ex. B).  Moreover, TSO improperly billed the Receivership for its own overhead costs, such as its liability insurance premium of $275.07 and its Spectrum bill of $183.60.  (Receiver's Twenty-Fifth Report, at 5–6).

---

[1] TSO's Report of alleged income and expenses for March, 2022, was filed with the Receiver's April 6, 2022 Report.

5

| Labor Costs paid by TSO | | | 941 Payroll WH Tax 2021 - Q1 | $7,184.13 | |
|---|---|---|---|---|---|
| | | | 941 Payroll WH Tax 2021 - Q2 | $8,268.81 | |
| | | | 941 Payroll WH Tax 2021 TOTAL | | $15,452.94 |
| WORKER 1 | $2,479.50 | | | | |
| WORKER 3 | $2,452.50 | | OH IT941 Payroll WH Tax 2020 | $1,677.15 | |
| WORKER 4 | $2,684.50 | | 941 Payroll WH Tax 2020 - TOTAL | | $1,677.15 |
| WORKER 5 | $456.00 | | | | |
| WORKER 10 | $135.00 | | OH SUTA - 2020 | $2,961.78 | |
| WORKER 13 | $1,278.00 | | 941 Payroll WH Tax 2020 - TOTAL | | $2,961.78 |
| WORKER 26 | $185.00 | | | | |
| WORKER 27 | $3,272.00 | | OH IT501 Payroll WH Tax 2021 Q1 | $766.36 | |
| | | | OH IT501 Payroll WH Tax 2021 Q2 | $1,163.12 | |
| TSO PAYROLL TAX LIABILITIES | | | OH IT501 PAYROLL WH TAX 2021 | | $1,929.48 |
| 940 FUTA Tax Liability - 2020 | $292.78 | | | | |
| 940 FUTA Tax Liability - TOTAL | | $292.78 | Cinti Payroll WH Tax 2020 | $1,339.46 | |
| | | | CINTI PAYROLL WH TAX 2020 | | $1,339.46 |
| 941 Payroll WH Tax 2020 - Q1 | $221.76 | | | | |
| 941 Payroll WH Tax 2020 - Q2 | $2,333.06 | | Cinti Payroll WH Tax 2021 Q1 | $574.19 | |
| 941 Payroll WH Tax 2020 - Q3 | $6,879.53 | | Cinti Payroll WH Tax 2021 Q2 | $645.66 | |
| 941 Payroll WH Tax 2020 - Q4 | $4,981.34 | | CINTI PAYROLL WH TAX 2021 | | $1,219.85 |
| 941 Payroll WH Tax 2020 TOTAL | | $14,415.69 | TOTAL LABOR PAID BY TSO | $52,231.63 | |

(*Id.* at 7–8). The Receivership is not liable for TSO's withholding tax.

TSO's alleged expenses prove problematic as well. TSO reported **$3,883.06** in expenses, but only submitted receipts for **$2,764.16** of those expenses. (Boydston Aff. at Ex. A). TSO billed the Receivership for its own overhead: $268.54 in tools; $717.68 in office supplies, including an air conditioner for the office costing $657.33; $143.60 in Duke Energy bills for its office; $53.57 for TSO's liability insurance premiums; and $176.00 for TSO's Spectrum internet bill. (*Id.*, Ex. A; Receiver's Amended Eighteenth Report at 4–6). This amounts to **$1,359.39** in overcharges. (*Id.*, Ex. A at 22, 26 (tools purchased on receipts for materials)).

Additionally, TSO inexplicably billed **$941.16** in fuel to the Receivership for August 2021. (Receiver's Amended Eighteenth Report at 5). TSO provides no documentation for why it needed this much fuel in a single month or what vehicles used the fuel and for what purpose. It is not clear how this charge relates to Receivership expenses.

4

### 3.    Example Month #3 – July 2020

TSO once again assessed a labor cost of **$9,619.36** without any indication as to where the labor was performed, what labor was performed, the number of hours spent on any particular task, or the rate for any particular task. (Receiver's Fifth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 8 (Aug. 14, 2020)). And once again, there are major discrepancies in TSO's reported expenses. TSO reported **$10,245.36** in expenses for July 2020, but the sum of the line items only amounts to **$6,192.07**. (*Id.* at 5–8). Regardless of the reported amount, TSO only submitted receipts for **$5,269.92** of its expenses. (Boydston Aff. at Ex. C). And once again, TSO billed a significant amount (**$1,979.65**) for its own overhead: $810.86[2] in tools; $838.78 in office supplies; $130.88 in Duke Energy bills for its office; and $199.13 for TSO's Spectrum internet bill. (*Id.* at Ex. 3; Receiver's Fifth Report at 5–8).

The August 2021, March 2022, and July 2020 records are merely three examples among many. They indicate a broader pattern of TSO overcharging the Receivership throughout the course of its business. Indeed, based on TSO's records, it appears that TSO owes the Receivership money from rents and security deposits collected, and not vice versa.

### C.    TSO Failed to Maintain the Properties; the City of Cincinnati's Orders Demonstrate That TSO Had Tenants in Uninhabitable Properties and Caused Deterioration and Waste at the Properties.

While TSO overbilled the Receivership, it was failing to fulfill its core responsibilities. Under TSO's supervision, numerous code violations went unaddressed, and certain of the Properties fell into further disrepair. HCLRC submits herewith Affidavits from the City of Cincinnati regarding code violations at the Properties. (Affidavit of Edward P. Cunningham

---

[2] It should be noted that many of the receipts submitted by TSO for July 2020 are totally illegible, meaning that this number may actually be higher. This represents charges for tools on separate receipts, as well as readily identifiable charges for tools on receipts for materials.

6

("Cunningham Aff."), Affidavit of Angela Uran ("Uran Aff."), and Affidavit of Theodore J. Riestenberg, Sr., REHS ("Riestenberg Aff.")).

In one example, Code Enforcement records for the property at 628 Delhi Avenue show that on September 20, 2021, a City inspector issued orders pertaining to several violations: a dilapidated fence, worn and broken flooring throughout the building, defective plaster and/or drywall throughout the building, defective structural elements in the floor, and excessive rubbish on the premises. (Cunningham Aff. at Ex. A, p. 2-5). These records show that Lentine was present for this inspection. (*Id.*). Inspectors saw the property numerous times thereafter, including on October 8, 2021; December 29, 2021; February 24, 2022; June 17, 2022; October 12, 2022; and January 9, 2023. (*Id.*). Each time, inspectors reported "no progress observed" and that no re-inspection had been requested. (*Id.*). The property has remained in this state of disrepair as of April 5, 2023—well after TSO left its role as "property manager." (*Id.*, Ex. A, p. 5).

Furthermore, on December 22, 2021, the Cincinnati Health Department conducted a public health lead risk assessment at 628 Delhi Avenue. (Riestenberg Aff. at Ex. A). "Lead hazards were found which contributed, in whole or in part, to a child's lead poisoning." (*Id.*). Hazardous lead was found on both the exterior and interior of the Property. The Health Department required remediation, but the remediation has not been completed. (*Id.*). This property is just one example of many failures of TSO to maintain Properties.

These violations, however, did not stop TSO from renting neglected and even uninhabitable properties. For example, the property at 649 Steiner Avenue was subject to a "Keep the Building Vacant" order on November 17, 2021. (Cunningham Aff. at Ex. A., at p. 17, 85-103). Despite this, Code Enforcement "[o]bserved that this building is being illegally occupied" on October 21, 2022. (*Id.*). Indeed, TSO executed a lease for that property on July 1, 2022 in direct

7

contravention of the open Orders. (Boydston Aff. at Ex. D; Cunningham Aff. at Ex. A, p. 17, 85-103; Uran Aff. at Ex. B, p. 7-8).

### D.    TSO Occupied Receivership Real Estate as an Office and Failed to Pay Rent.

Since prior to the appointment of the Receiver, TSO has utilized 671-673 Delhi Avenue, one of the Properties, for its office. (Boydston Aff. ¶ 16). TSO has never paid rent for its use of this property, nor has it ever included 671-673 Delhi on the rent roll for any of the monthly Receiver's Reports. TSO currently owes the Receivership back rent for its use of this property, and is even now refusing to vacate the premises even though there is no lease agreement with HCLRC.

### E.    TSO Has Already Been Compensated for Labor and, Possibly, Other Costs and Expenses Through Several PPP Loans.

There is evidence that TSO received SBA Paycheck Protection Program ("PPP") loans in 2020 and 2021. In March of 2021, the Federal Bureau of Investigation initiated an investigation of Lentine pertaining to, among other things, four PPP loans he procured for TSO. (Affidavit in Support of Criminal Complaint, *United States v. Lentine*, No. 1:21-mj-0633-KLL, ¶ 12 (S.D. Ohio Aug. 31, 2021) (certified copy attached)). The investigation revealed that Lentine had applied for and received two PPP loans between June 23, 2020 and June 30, 2020, and two "second draw" PPP loans between February 18, 2021 and March 15, 2021. (*Id.* ¶¶ 10–24). Altogether, Lentine procured \$249,852.00[3] relating to payroll for twelve employees. (*Id.*). The Criminal Complaint also reveals that Lentine used these funds for impermissible purposes. (*Id.* ¶ 5). Particularly relevant here are the numerous transactions using PPP funds that are very similar to transactions

---

[3] This reflects an aggregate amount for four PPP loans received for two separate entities: "Tri State Organization, Inc." (the movant in the instant "Application for Payment" referred to as "TSO" herein), and "Tri State Corporation, Incorporated" (not a movant here, but also registered to Lentine).

8

that TSO regularly billed to the Receivership—for example, a number of purchases at Home Depot, Lowe's, Meyer Hardware, Amazon, and Kroger. (*Id.* ¶¶ 14, 21).

Aside from "significant indicia of money laundering and fraud," Lentine's conduct indicates that he had already obtained compensation for expenses that he reported to the Receivership on behalf of TSO. (*Id.* ¶ 14). According to the Criminal Complaint, TSO received PPP loans amounting to $22,657.00 in June of 2020. (*Id.* ¶ 11). Lentine also received another PPP loan amounting to $99,290.00 for an entity called "Tri State Corporation, Incorporated." (*Id.* ¶ 13). Yet Lentine and TSO still billed the Receivership for $6,902.00 in labor costs that month. (Receiver's Fourth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 10 (July 16, 2020)).

Similarly, TSO received a "second draw" loan for $28,615.00 in March of 2021, and Lentine received an additional second draw loan amounting to $99,290.00 on behalf of "Tri State Corporation." (Affidavit in Support of Criminal Complaint, *United States v. Lentine*, ¶¶ 19, 21). Yet, Lentine and TSO again billed the Receivership $24,987.64 in labor costs for those two months. (Receiver's Twelfth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 6 (Mar. 5, 2021); Receiver's Thirteenth Report, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 7 (Apr. 7, 2021)). Moreover, many of the impermissible charges listed in the Criminal Complaint overlap with expenses reported on TSO's monthly reports. In short, there is significant evidence that Lentine has been using TSO as a means to achieve a double recovery through its billed expenses (expenses which, as outlined above, may or may not have existed in the first place).

9

### F.      TSO and Lentine's Application for Payment of Costs, Expenses and Fees

On December 5, 2022, the Receiver filed a Motion for Approval of Fees related to TSO, indicating that Plaintiffs City of Cincinnati and HCLRC requested further examination of TSO's reported fees, costs, and expenses. (Motion for Approval of Fees and Expenses of Tristate Organization, Inc., *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 2–3 (Dec. 5, 2022)). Shortly after, HCLRC filed a formal Memorandum in Opposition to the Receiver's Motion, objecting on the basis that "HCLRC is unable to reconcile TSO's reported expenses, reported collection of rent, work performed, and hours billed for labor." (Memorandum in Opposition to Motion by Receiver for Approval of Fees and Expenses, *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 1 (Jan. 3, 2023)).

On January 20, 2023, the Receiver terminated TSO as property manager. Lentine, who is not a party to this action, then began filing *pro se* motions and other papers related to this case. On March 2, 2023, he filed three motions on behalf of himself and TSO: (i) a Motion for Demand for Payment, which most closely functions as a Response to HCLRC's January 3 Memorandum in Opposition; (ii) a Motion for Leave of Court, wherein Lentine requests permission "to bring a collateral action in the Southern District of Ohio"; and (iii) a Motion for Temporary Restraining Order, requesting a temporary restraining order on evictions related to the Properties. Lentine has also filed two Motions to Intervene—one on March 14, 2023, and one on March 23, 2023. The Court has not granted TSO or Lentine permission to intervene.

The Court-approved sale of the Properties to HCLRC closed on May 1, 2022. However, there are insufficient funds remaining in the Receivership for payment of amounts that TSO alleges are due and owing.

10

On the date of the closing, nonparties TSO and Lentine filed the instant Application. The Application has no supporting documentation, and it requests carte blanche award of hundreds of thousands of dollars as a priority administrative expense.  HCLRC opposes the Application.

## II.    LEGAL ARGUMENT

### A.    Nonparties TSO and Lentine Lack Standing to Bring the Application.

As an initial matter, neither TSO nor Lentine have standing to file an "Application for Payment" because they are not parties to the case.  In general, it is an error for a trial court to entertain motions filed by nonparties. *See Darby v. A-Best Prods. Co.*, 102 Ohio St. 3d 410, 415 (2004); *In re Markovich*, 9th Dist. No. 06CA008868, 2006-Ohio-6064, ¶ 11. Because neither TSO nor Lentine is a party to the case, they may not file an Application herein.

In addition, R.C. 2735.04 allows *receivers* to apply for reimbursement of expenses.  TSO and Lentine rely on R.C. 2735.04(C) as the basis for their Application, but that statute clearly does not confer standing over nonparties. In relevant part, R.C. 2735.04(C) reads, "Any funds that are expended by or on behalf of the receiver, including . . . fees for professionals assisting the receivership, . . . shall be taxed as court costs or otherwise treated as an administrative expense of the action." This authorizes the supervising court to compensate nonparty "professionals assisting the receivership," but it does not confer any power on nonparty professionals to petition the court for compensation. Rather, compensation in R.C. 2735.04(C) is one of the "powers of receiver," and it is only granted "as approved by the court **upon application of the receiver or a party to the action**." R.C. 2735.04(A); *see also Nowman v. Nowman*, 8 Ohio L. Abs. 429, 1930 Ohio Misc. LEXIS 1025 (1st Dist. 1930) (syllabus). Because TSO and Lentine clearly are not "the receiver or a party to the action," they have no standing to make an Application for Payment.

### B. The Receiver Has the Burden of Proof to Justify Expenditures as Receivership Costs, and the Burden of Proof Has Not Been Met.

It is the duty of the receiver to apprise the court of substantial expenditures. *American Sav. Bank Co. v. Union Trust Co.*, 124 Ohio St. 126, 132 (1931). "Allowance of expenditures by the court as [receivership] costs is tantamount to placing a lien upon the property prior to that of other liens." *Id.* There is a concern when a proposed expense cannot be paid out of rents derived from the receivership and would instead be made a lien upon the corpus of the property. *Id.* at 133.

In the case at bar, the Order Appointing Receiver allows the Receiver "reimbursement for expenses incurred, all as approved by the Court. All compensation and reimbursement of expenses awarded by the Court to the Receiver shall be an administrative expense priority in this case and for those arising from the Properties, a first and best lien on the Properties." (Order Appointing Receiver, ¶ 18 (Feb. 14, 2020)).

As discussed above, the Receiver is the proper party to seek recovery of expenditures, and not TSO or Lentine. Neither the Receiver, nor TSO, nor Lentine has presented documentation to support placing a first lien or an administrative expense in the amount sought by TSO. The burden of proof has not been met.

### C. TSO's Request for Costs, Fees, and Expenses Is Manifestly Unreasonable Under the Circumstances, and it Would Be an Abuse of Discretion to Award Them Here.

Even disregarding their lack of standing, TSO and Lentine have egregiously misrepresented expenses allegedly incurred for materials and labor. They are not entitled to compensation for substandard work and nonexistent expenses. Compensation under R.C. 2357.04(C) is approved by the supervising trial court and reviewed for abuse of discretion. *Strauss v. Strauss*, 8th Dist. No. 95377, 2011-Ohio-3831, ¶ 74. Receivers and, by extension, any professionals assisting the receivership "are entitled only to compensation 'as is **reasonable** in

12

view of the interest involved, the amount of skill necessary to conduct the business, and the time and labor given to the business.'" *Nat'l City Bank v. Semco, Inc.*, 183 Ohio App. 3d 229, 243 (3d Dist. 2009) (emphasis added) (quoting *Nozik v. Mentor Lagoons, Inc.*, 11th Dist. No. 97-L-004, 1998 Ohio App. LEXIS 3013, at *3–4 )); *see also Jardine v. Jardine*, 8th Dist. No. 110670, 2022-Ohio-1754, ¶¶ 31–34.

TSO and Lentine's Application is devoid of any evidence that payment would be reasonable here. Indeed, all of the available evidence actually points to the opposite—that TSO and Lentine inflated the "time and labor" they reported and, in many cases, actually damaged the Properties due to their action or inaction. TSO and Lentine misrepresented their actual expenses to inflate their compensation. TSO's substandard recordkeeping has deprived the Court of any meaningful documentation of the work they claim to have done. In this case, it would be a clear abuse of discretion to award TSO and Lentine the costs, fees, and expenses they request in their Application.

        **1.     TSO and Lentine Misappropriated Rents, Security Deposits, and Other Receivership Assets. Compensating TSO for this Conduct Would Be Unreasonable and Unconscionable.**

TSO and Lentine misappropriated rents, security deposits, and other assets of the Receivership. Compensating them under these circumstances is improper. Compensation for a receiver and any professionals assisting the receiver "is left to the sound discretion of the trial court." *Nozik v. Mentor Lagoons*, 11th Dist. No. 97-L-004, 1998 Ohio App. LEXIS 3013, at *10. While the trial court does have considerable latitude, it cannot approve compensation in an "arbitrary, unconscionable, or unreasonable" manner. *Jardine v. Jardine*, 8th Dist. No. 110670, 2022-Ohio-1754, ¶ 11. "The trial court may exercise its discretion in controlling these costs such that the receivership does not jeopardize the financial viability of the businesses." *Id.* ¶ 34.

13

In this case, the most shocking aspect of TSO and Lentine's demand for payment is that they have kept all of the rents collected from the Properties from the start of the Receivership to January of 2023. This Receivership involved sustaining the Properties as rental businesses. (Order ¶ 3). The collection of rent is a core function of that duty. (*Id.* ¶ 6). Indeed, TSO and Lentine *collected* that rent, but they never deposited it or otherwise turned it over to the Receivership.

Based on their monthly reports to the Receiver, TSO and Lentine claim to have collected $425,194.42 in rents. Without submitting supporting records, TSO and Lentine claim that they should receive *more* money, despite receipt of hundreds of thousands of dollars from the Receivership. Compensating TSO and Lentine for this conduct would shock the conscience.

Additionally, TSO and Lentine have misappropriated other property of the Receivership. They claim to have collected $12,605.00 in security deposits but, as with TSO's rent collection, TSO never tendered these deposits to the Receiver or deposited these funds into an account accessible by the Receivership. (Boydston Aff. ¶ 14). TSO and Lentine also occupied the Receivership property at 671–673 Delhi Avenue, repurposing it for use as the TSO offices. They have never paid the Receivership rent for their use of the property or included the property on the monthly rent roll. (*Id.* ¶ 16).

In their own words, TSO and Lentine claim that the Receiver retained them "to manage the Properties, to collect rents, to respond and remedy tenant complaints, and to put units in shape to be rented, on time and materials basis." ("Application," *City of Cincinnati v. Klosterman*, Hamilton Cnty. C.P. No. A1905588, at 2). Far from fulfilling these duties on behalf of the Receivership, TSO's and Lentine's misappropriations of Receivership assets indicate serious self-dealing throughout their relationship with the Receiver. To compensate them under these circumstances would be unreasonable and unconscionable.

14

### 2.   TSO and Mr. Lentine Misrepresented Their Expenses to the Receiver and to the Court. Compensating Them for This Conduct Would be Unreasonable.

In addition to flagrant misappropriation of Receivership property, TSO and Lentine have drastically misrepresented their expenses to the Receivership and the Court. While compensation for professionals assisting a receiver remains within the sound discretion of the trial court, the trial court must at least have *some* reliable evidence to arrive at a reasonable sum of expenses. *See Nozik*, 1998 Ohio App. LEXIS 3013, at \*10–11; *Semco*, 183 Ohio App. 3d at 233–35.

Throughout their involvement, TSO and Lentine have exhibited dismal recordkeeping practices, and they have done little to document their supposed expenses. It should be noted that their Application comes with **no documentation** as to how they arrived at the sums they demand from the Receivership. But even based on all of the available evidence, TSO and Lentine's expenses simply do not add up.

First, TSO and Lentine billed the Receivership for overhead and other expenses that simply are not eligible for compensation. This includes TSO's phone, internet, and utility bills; purchases of tools; TSO's liability insurance premiums; payroll and unemployment taxes; and office supplies solely used for TSO's operations. (*See* Section I.B, *supra*). All of these charges reflect expenditures for the personal and individual benefit of only TSO or Lentine, not legitimate expenses on behalf of the Receivership.

Second, TSO and Lentine have billed the Receivership for expenses that seem extremely high given the circumstances without any explanation. Most obviously, TSO and Lentine have used an astounding amount of fuel—$941.16 in a single month, in one example—for the relatively small area of Sedamsville. (*See* Section I.B.1, *supra*). None of their reports breaks down mileage driven or the purpose for the trip, nor do they specify if and when these charges relate to gas-powered tools. In addition to the exorbitant fuel charges, none of the charges for hardware and

15

supplies specify what they were used for or, in many cases, what was purchased at all. Similarly, TSO and Lentine fail to explain their labor charges. While *some* of TSO's monthly reports contain a general breakdown of tasks completed, the reports never relate these tasks to labor costs by time spent on each job or any other sensible metric for valuing labor.

Finally, TSO and Lentine submitted many of their expenses to the Receivership without any form of documentation. In the three example months discussed above, TSO submitted **$7,253.04** in expenses without any form of documentation—about 35% of its reported expenditures. Moreover, when TSO and Lentine did provide receipts, their accounting was riddled with duplicates and contained a number of illegible documents. (*E.g.*, Boydston Aff. at Ex. C). TSO failed to provide documentation of alleged labor costs, including when the work was performed, on what property, the duration of the work, and by whom.  Given the foregoing, it would be unreasonable to compensate TSO and Lentine for these inaccurate and artificially inflated expenses.

        **3.**      **TSO Failed to Maintain the Properties, Resulting in Deterioration and Waste. Compensating TSO for These Deficiencies Would Be Unreasonable.**

TSO and Lentine's failure to competently perform the most basic maintenance on the Properties has resulted in extensive damage, leading to deterioration in value and waste. Their conduct flouts the entire principle underlying a receivership. "It is well-established that a receiver 'is appointed to maintain the status quo regarding the property in controversy and to safeguard said property from being dissipated while the plaintiff is pursuing his remedy.'" *Fontain v. Sandhu*, 1st Dist. No. C-200011, 2021-Ohio-2750, ¶ 23 (internal quotation marks omitted) (quoting *Milo v. Curtis*, 100 Ohio App. 3d 1, 9 (9th Dist. 1994)). Indeed, the entire reason Ohio law permits a receiver to apply for compensation as a court cost or administrative expense is to offset "the costs and expenses necessary to preserve the value of the assets held in receivership." *P.M.D. Corp. v.*

16

*Hyland-Helstrom Enters.*, 63 Ohio App. 3d 681, 683 (10th Dist. 1990); *see also Brown v. Winterbottom*, 98 Ohio St. 127, 133 (1918).

Costs incurred which result in depletion of receivership assets, and which are not necessary to preserve the value of the assets in the receivership are not compensable. *Wilkens v. Boken, Inc.*, 8th Dist. No. 64230, 1993 Ohio App. LEXIS 6202, at *15-19 (Ohio Ct. App. Cuya. Dec. 23, 1993). It follows, then, that neither a receivership nor the parties to a receivership action should pay for costs or expenses that do not "preserve the value of the assets" or, as in this case, actually **diminish** the value of the assets.

There are extensive concerns with TSO and Lentine's performance. They neglected the Properties for extended periods of time, and they ignored orders from Code Enforcement to remediate issues affecting the integrity of the Properties. (Cunningham Aff. at Ex. A, p. 2-5; Reisenberg Aff. at Ex. A). They also placed tenants into Properties subject to "Keep the Building Vacant" orders. (Cunninham Aff. at p. 17, 85-103). Aside from being unsafe and unconscionable, Lentine's preference to rent these Properties rather than make repairs subjected the Properties to ongoing deterioration and further diminished their value.

Far from "preserv[ing] the value of" the Properties in Receivership, TSO's and Lentine's actions have diminished the value of the Properties. Therefore, they should not be able to tax their supposed fees, costs, and expenses as court costs or administrative expenses.

### D. TSO's Demand for a "Commission on Rentals" Is Barred by the Statute of Frauds.

Any agreement between TSO and the Receivership for a "Commission on Rentals" could not have been completed within a year and, therefore, is barred by the statute of frauds. Under the statute of frauds, "an agreement that is not to be performed within one year from the making thereof" must be in writing. R.C. 1335.05. TSO and Lentine claim they are entitled to a 10%

17

"Commission on Rentals," but they executed many of the leases subject to this "Commission" for twelve-month terms. (*E.g.*, Ex. 8; Ex. 9). Any agreement to pay a "Commission" could not be completed within one year and, therefore, needed to be in writing. The Recever requested that TSO and Lentine sign a written contract memorializing the agreement between them, but Lentine refused. (Boydston Aff. ¶ 7). Neither TSO nor Mr. Lentine executed a written agreement with the Receiver, and this Commission is barred by the statute of frauds.[4]

## III.    CONCLUSION

TSO and Lentine, failed to fulfill even the most basic functions of their unwritten agreement with the Receiver and left the Receivership assets in worse condition than when they began. TSO has improperly retained all of the rents and security deposits without turning anything over to the Receivership.  TSO and Lentine have no standing to bring this Application, but even if they did, they have failed to present documentation to support their claims.  Compensating them in these circumstances would be unreasonable and unconscionable.

For the foregoing reasons, Plaintiff Hamilton County Land Reutilization Corporation respectfully requests the Court deny Tri-State Organization, Inc. and Joseph Lentine's Application for Payment and, accordingly, deny any compensation sought in that Application be taxed as court costs or administrative expenses.

---

[4] Even if there were a written agreement to pay a commission, which there is not, the commission would be calculated based upon rents collected rather than rents projected.

18

Respectfully submitted,

/s/ *Cynthia M. Fischer*

Cynthia M. Fischer (0073761)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 977-8163
Fax: (513) 977-8141
Email:  cynthia.fischer@dinsmore.com
*Counsel for Substitute Plaintiff Hamilton*
*County Land Reutilization Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing, along with the Affidavit of Richard Boydston, Affidavit of Theodore J. Riestenberg, Sr. REHS, Affidavit of Edward P. Cunningham, and the Affidavit of Angela Uran, were served upon the following parties via U.S. Mail this 5th day of June, 2023:

James L. Nieberding, Esq.
Nieberding & Nieberding Co LPA
810 Sycamore St., Suite 423
Cincinnati, Ohio 45202

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
312 Walnut St., Suite 2450
Cincinnati, Ohio 45202-4028

Christian D. Donovan, Esq.
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052

James S. Sayre, Esq.
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202

John Klosterman
5615 Sidney Rd.
Cincinnati, Ohio 45238

Kate Burroughs, Esq.
Shannon Price, Esp.
Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202

Amy K. Kaufman, Esq.
150 East Gay Street
Columbus, OH 43215-3130

Teresa Perkins, Esq.
222 E. Central Pkwy. 6NW711
Cincinnati, Ohio 45202

/s/ *Cynthia M. Fischer*

Cynthia M. Fischer (0073761)

19

COMMON PLEAS COURT
HAMILTON COUNTY, OHIO



D138666789

**HAMILTON COUNTY LAND**
**REUTILIZATION CORPORATION,**

    Plaintiff,

    v.

**JOHN KLOSTERMAN,**

    Defendant.

:   CASE NO. A2300473

:

:   Judge Jody M. Luebbers

:   Magistrate Anita P. Berding

:

:

:   **MAGISTRATE'S DECISION**

:   **GRANTING HCLRC'S MOTION**

:   **FOR SUMMARY JUDGMENT**

:

:

This matter came before the Court pursuant to the motion for summary judgment by Plaintiff Hamilton County Land Reutilization Corporation ("HCLRC") on its complaint to have Defendant John Klosterman be declared a vexatious litigator under R.C. 2323.52.

"Among the inherent powers possessed by the courts of common pleas in Ohio is the power to secure the orderly administration of justice and safeguard against conduct which would impair the free exercise of judicial functions." *Smith* v. Ohio Dept. of Human Servs., 115 Ohio App.3d 755, 758, 686 N.E.2d 320 (12th Dist. 1996); *citing Zangerle v. Cuyahoga Cty. Court of Common Pleas*, 141 Ohio St. 70, 46 N.E.2d 8654 (1943). The Court has "the ability to curb frivolous litigation practices [as] an essential part of the inherent powers [of the Court] to control and protect the integrity of [the Court's] own processes." *Mayer v. Bristow*, 91 Ohio St.3d 3, 17, 740 N.E.2d 656 (2000), *citing Smith, supra*, at 759.

The Court, having read all of the pertinent submitted materials and reviewed the applicable law, finds that Plaintiff's motion for summary judgment is well-taken and **GRANTS** the same. Thus, the Court finds the Defendant John Klosterman is a vexatious litigator pursuant to R.C. 2323.52(D).



EXHIBIT
F

It is the order of this court, pursuant to R.C. 2323.52(D), that John Klosterman is a vexatious litigator and he shall be prohibited from the following without first obtaining leave of court to proceed: (1) instituting legal proceedings in the court of common pleas, municipal court, or county court; (2) continuing any legal proceedings that the vexatious litigator instituted in any of the courts specified herein prior to this order; and (3) making any application, other than an application for leave to proceed under R.C. 2323.52(F)(1), in any legal proceedings instituted by the vexatious litigator or another person in any of the courts specified herein (including motions and objections).

The Clerk of Courts shall send a certified copy of this Order to the Supreme Court of Ohio for publication deemed appropriate for enforcement of this order.

**IT IS SO ORDERED.**

**ANITA BERDING**
**CHIEF MAGISTRATE**
**COURT OF COMMON PLEAS**

## NOTICE

Objections to the Magistrate's Decision must be filed within fourteen (14) days of the filing date of the Magistrate's Decision. A party shall not assign as error on appeal the Court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b).

Copies to be sent to:

Amy L. Higgins, Esq.
Kelley L. Allesee, Esq.
3 East Fourth Street, Suite 300
Cincinnati, OH 45202

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT COPIES OF THE FOREGOING ORDER HAVE BEEN SENT BY ORDINARY MAIL TO ALL PARTIES OR THEIR ATTORNEYS AS PROVIDED ABOVE.

Date: 7/10/23    Deputy Clerk: Jena Howard





**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| **HAMILTON COUNTY LAND** | | |
| **REUTILIZATION CORP.** | : | Case No. A2300473 |
| Plaintiff, | : | Judge Luebbers |
| v. | : | |
| | : | **ENTRY ADOPTING** |
| **JOHN KLOSTERMAN,** | : | **MAGISTRATE'S DECISION** |
| Defendants. | : | |

Pursuant to Civil Rule 53, the Court hereby adopts the Magistrate's Decision rendered on July 10, 2023. The Court has considered the Objections to the Magistrate's Decision filed by Defendant John Klosterman, Plaintiff's Response to Defendant's Objection to Magistrate's Decision, and Defendant Response to Plaintiffs Motion for Upholding Judges Ruling to Declare Defendant a Vexatious Litigator (sic). The Magistrate's Decision is **ADOPTED** as a judgment of the court.

Plaintiff's Motion for Summary Judgment filed March 28, 2023 is **GRANTED**.

FOR COURT USE ONLY

S.C.
Line # : 10

COURT OF COMMON PLEAS
ENTER

JUDGE LUEBBERS
THE CLERK SHALL SERVE NOTICE
TO PARTIES PURSUANT TO CIVIL
RULE 58 WHICH SHALL BE TAXED
AS COSTS HEREIN.

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

ENTERED

MAR 19 2026

HAMILTON COUNTY LAND
REUTILIZATION CORPORATION,

    Plaintiff(s),

    v.

JOHN KLOSTERMAN,

    Defendant(s).

Case No. A 2300473

Judge Luebbers

ENTRY OF RECUSAL

Pursuant to provisions of Rule 7(D) of the Hamilton County Local Rules of Practice and the Ohio Code of Judicial Conduct, Judge Jody M. Luebbers recuses herself for reasons in the interest of justice and to avoid the appearance of impropriety.



Judge Luebbers

3/18/26

D147707169

EXHIBIT

G 1

**COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO**

ENTERED

MAR 19 2026

HAMILTON COUNTY LAND
REUTILIZATION CORPORATION,

     Plaintiff(s),

        v.

JOHN KLOSTERMAN,

     Defendant(s).

Case No. A 2300473

Judge Luebbers

<u>ENTRY GRANTING MOTION TO
STRIKE</u>

The above captioned matter came before this Court on Plaintiff's Motion to Strike and/or Memorandum in Opposition to Defendant's 60(B) Motion. The procedural posture of this Motion merits explanation.

The Court received a hand-delivered document from Defendant on or about February 24, 2026 captioned "Defendant's Application for Leave to Proceed Pursuant to R.C. §2323.52(F) and Motion for Standing Order Permitting Defensive Filings." This document was not filed due to the prohibitions upon Defendant pursuant to the Judgement Entry Declaring Defendant to be a Vexatious Litigator, filed October 27, 2023. Upon review of Defendant's Application, and the Judgment Entry of October 27, 2023, this Court concluded that Defendant is not prohibited from filing responsive pleadings or briefs to cases brought against him. This was communicated to Defendant and to the Clerk's Office. The Court now acknowledges this to be in error and finds the need for clarification of the October 27, 2023 Judgment Entry. Specifically, the October 27, 2023 Entry requires the Defendant to seek leave of Court to file any document, but currently does not allow Defendant to even file the Motion for Leave. The Court finds this procedurally unworkable, as the Defendant currently could not even file to seek the required leave. The Court hereby finds that Defendant must be able to file a Motion for Leave to File in the instant case in which he was deemed a vexatious litigant, case number A2300473.





EXHIBIT

G 2

D147707068

On March 3, 2026, Defendant filed in the instant case number A2300473 a document titled "Defendant's Motion for Relief from Judgment Pursuant to Ohio Civil Rule 60(B) and Motion to Vacate Vexatious Litigator Designation Based on Newly Discovered Evidence and Fraud." This is the document sought to be struck under Plaintiff's Motion to Strike.

Upon review of Plaintiff's Motion to Strike, and under the current terms of the October 7, 2023 Judgment Entry, the Court finds that the currently applicable procedure was not followed in this case.

Therefore, the Plaintiff's Motion to Strike is **GRANTED**, and the Court hereby strikes the filings made by Defendant on March 2, 2026, the three filings made by Defendant on March 5, 2026, and the Notice filed by Defendant on March 13, 2026 in case number A2300473.

However, the Court further finds that Defendant is currently prohibited from even filing any Motion for Leave to File, which in effect disallows Defendant to even request or be granted leave to file defensive filings. This is overly restrictive. The Court finds and **ORDERS** that Defendant may file a "Motion for Leave to File" in the instant case A2300473. Defendant is restricted solely to filing a Motion for Leave to File until permitted by the Court for further filings.

**SO ORDERED.**

**ENTERED**

MAR 19 2026

_____
Judge Luebbers
JODY M. LUEBBERS, JUDGE

3/18/26

# IN THE COURT OF COMMON PLEAS

# HAMILTON COUNTY, OHIO

**HAMILTON COUNTY LAND
REUTILIZATION CORPORATION,et a;**

**Plaintiff.**

v.

**JOHN KLOSTERMAN,et al**

**Defendant.**

D147647236

Case No. A2300473

Judge Jody M. Luebbers

FILED 2026 MAR 13 P 1:41
CLERK OF COURTS HAMILTON COUNTY, OH COMMON PLEAS

---

## DEFENDANT'S NOTICE TO THIS COURT OF HCLRC'S MOTION TO STRIKE IN CASE NO. A1905588, REQUEST FOR CONFIRMATION OF CLERK AUTHORIZATION,

## AND NOTICE OF PATTERN OF COORDINATED OBSTRUCTION

---

Defendant John Klosterman respectfully brings to this Court's attention a motion filed by Substitute Plaintiff HCLRC in Hamilton County Case No. A1905588 on March 12, 2026, styled as a Motion to Strike Defendant's Memoranda in Opposition. A copy of that motion is attached hereto as Exhibit A. Defendant submits this Notice for three purposes.

## I. THE CLERK AUTHORIZATION

Before filing the Memoranda in Opposition that HCLRC now seeks to strike, Defendant sought and received authorization from the clerk of this Court to file those documents. That authorization was provided by Your Honor's clerk in this case, Case No. A2300473, and constitutes leave of court for purposes of ORC 2323.52(F)(1).

HCLRC's Motion to Strike in Case No. A1905588 asserts that Defendant filed without obtaining leave of court. That assertion is false. Defendant respectfully requests that this Court confirm on the record — whether by entry, notation, or other appropriate means — that the clerk authorization was valid leave under ORC 2323.52(F)(1), so that the record in Case No. A1905588 is complete and accurate when Magistrate Lui and Judge Cross rule on HCLRC's Motion to Strike.

If this Court determines that the clerk authorization was not sufficient leave under the statute, Defendant respectfully requests that this Court issue a formal ruling on that question now, so that Defendant has clarity on the standard required going forward, and so that Defendant's rights in Case No. A1905588 are not prejudiced by a procedural ambiguity that this Court is in the best position to resolve.

## II. THE COORDINATED OBSTRUCTION — SAME DAY, TWO COURTS

2

Defendant brings to this Court's attention that on March 12, 2026 — the same day Dinsmore & Shohl filed the Motion to Strike in Case No. A1905588 — HCLRC's Senior Real Estate Counsel Kelley Allesee sent Defendant a written communication refusing to comply with Defendant's Ohio Public Records Act request served March 6, 2026. Ms. Allesee cited ORC 2323.52(J)(1) — the vexatious litigator statute — as authority to withhold public records.

Two legally unsupported filings by HCLRC and its counsel on the same day — one in a judicial proceeding, one in response to a statutory records request — using the same vexatious litigator designation as the claimed authority, constitutes a pattern. Defendant places that pattern on the record of this Court, which is the court that issued the designation being weaponized.

## III. THE BOYDSTON ADMISSION AND THIS COURT'S DESIGNATION

Defendant further notifies this Court that Appellee Richard Boydston filed a document in Case No. A1905588 on February 25, 2026, stating at Page 13: "HCLRC obtained an order by this Court declaring Klosterman a vexatious litigator. That kind of a fix is not available to the Receiver."

3

The word 'fix' is Boydston's. It was filed in a Hamilton County court document. It post-dates this Court's October 27, 2023 designation order. It constitutes newly discovered evidence bearing directly on the purpose and use of the designation this Court entered. Defendant respectfully submits that this Court is entitled to know that a named party in related proceedings has characterized this Court's order as a tactical instrument — a fix — rather than a legitimate judicial protection mechanism.

Defendant does not ask this Court to vacate its order at this time. Defendant asks only that this Court be aware of how that order is being used and described by the parties who obtained it, and that this awareness inform this Court's evaluation of any further requests by HCLRC to use the vexatious litigator designation as a procedural weapon against Defendant's substantive rights.

## IV. REQUEST FOR FORMAL RULING

Defendant respectfully requests that this Court issue a formal ruling or entry addressing: (1) whether the clerk authorization obtained before the challenged filings constitutes valid leave under ORC 2323.52(F)(1); and (2) if not, what specific procedure Defendant must follow to obtain leave for filings in related Hamilton County proceedings such as Case No. A1905588.

4

A clear ruling from this Court — which is the court of record on the vexatious litigator designation — will resolve the ambiguity that HCLRC is currently exploiting simultaneously in two separate proceedings and in response to a statutory public records request.

Respectfully submitted,

John Klosterman, Pro Se Defendant
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, a true and correct copy of the foregoing was served via E. Mail upon parties

John Klosterman

Exhibit A:  HCLRC filing to strike

5



ENTERED

JUL 24 2024

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HAMILTON COUNTY LAND REUTILIZATION CORPORATION, | : | APPEAL NO. C-230569 TRIAL NO. A-2300473 |
| | : | |
| Plaintiff-Appellee, | | |
| | : | *JUDGMENT ENTRY.* |
| vs. | | |
| | : | |
| JOHN KLOSTERMAN, | | |
| Defendant-Appellant. | : | |

We consider this appeal on the accelerated calendar, and this judgment entry is not an opinion of the court. *See* Rep.Op.R. 3.1; App.R. 11.1(E); Loc.R. 11.1.

Defendant-appellant John Klosterman appeals the decision of the trial court granting summary judgment in favor of Hamilton County Land Reutilization Corporation ("HCLRC") and declaring Klosterman a vexatious litigator.

In Klosterman's first assignment of error, he argues that the trial court erred in declaring him a vexatious litigator. When a trial court grants summary judgment declaring a person a vexatious litigator, this court reviews the trial court's decision de novo. *Stephens v. Downtown Property Mgt.*, 1st Dist. Hamilton No. C-220332, 2023-Ohio-1988, ¶ 11.

R.C. 2323.52 permits the filing of a civil action to declare a person a vexatious litigator. A vexatious litigator is "any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action * * *." R.C. 2323.52(A)(3). "Vexatious conduct" means conduct that "obviously serves merely to harass or maliciously injure another[;]" or "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law[;]" or "imposed solely for delay." R.C. 2323.52(A)(2).

This court has held that vexatious conduct includes raising arguments that have been rejected by the court numerous times. *Stephens* at ¶ 19.



D142

EXHIBIT
H



ENTERED
JUL 24 2024

HCLRC put forth evidence that Klosterman had made more than 40 filings in a foreclosure case, some of which had been made after the final foreclosure judgment. A review of Klosterman's filings in the foreclosure case submitted with HCLRC's summary-judgment motion reveal the repetitive nature of the arguments with respect to the alleged fraud and conspiracies committed by the property-management company and the city during the foreclosure and receivership of Klosterman's properties. Klosterman responded to the summary-judgment motion, arguing that his numerous filings were necessary because of the fraudulent and conspiratorial actions of the property manager and the city in the foreclosure action. According to HCLRC, Klosterman's repeated filings actually stalled the closing on the sale of the properties. We conclude that this amounts to vexatious conduct under R.C. 2323.52. Therefore, the trial court did not err in declaring Klosterman a vexatious litigator, and we overrule his first assignment of error.

In Klosterman's second assignment of error, he argues that the trial court erred in denying him discovery. Klosterman did not seek discovery in the underlying case, and Klosterman's discovery arguments relate to bank records from the foreclosure action. Therefore, the record does not support his argument. We overrule Klosterman's second assignment of error.

We affirm the judgment of the trial court.

The court further orders that 1) a copy of this Judgment constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27. Costs shall be taxed under App.R. 24.

ZAYAS, P.J., BERGERON and WINKLER, JJ.

**To the clerk:**
**Enter upon the Journal of the Court on 7/24/2024 per Order of the Court.**

By: _Ginger S. Bock_
  **Administrative Judge**

2

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| CITY OF CINCINNATI,<br>an Ohio municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN KLOSTERMAN a/k/a<br>JOHN C. KLOSTERMAN a/k/a<br>JOHN CAMPBELL KOSTERMAN, *et al.*,<br><br>Defendants. | Case No. A 1905588<br><br>Judge Wende C. Cross<br><br>Chief Magistrate Judge Anita P. Berding |

### SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S NOTICE OF SUPPLEMENTAL AUTHORITY AND MOTION TO STRIKE ADDITIONAL FILINGS

Substitute Plaintiff Hamilton County Land Reutilization Corporation ("HCLRC"), by and through counsel, respectfully provides notice to the Court of supplemental authority in support of its March 12, 2026 Motion to Strike Defendant John Klosterman's Memoranda in Opposition (the "Motion"), and moves to strike additional filings by Klosterman.

On October 27, 2023, Defendant John Klosterman was declared a vexatious litigator in the related case, *Hamilton County Land Reutilization Corporation v. Klosterman*, Hamilton County C.P. No. A2300473 (the "Vexatious Litigator Action"). On March 19, 2026, Judge Luebbers entered an Order in the Vexatious Litigator Action clarifying limitations on Klosterman's ability to file: "Defendant [John Klosterman] is restricted solely to filing a Motion for Leave to File until permitted by the Court for further filings." Entry Granting Motion to Strike, *Hamilton County Land Reutilization Corporation v. Klosterman*, Hamilton County C.P. No. A2300473 (entered Mar. 19, 2026). That Order further struck five filings that did not comply with that procedure. *Id.*

1

EXHIBIT
I

Klosterman did not seek leave to file his Memoranda in Opposition, and therefore he did not follow the procedure as required in the Vexatious Litigator Action. Accordingly, those filings should be struck consistent with Judge Luebbers' March 19, 2026 Order. Moreover, HCLRC notes several other recent filings for which Klosterman failed to follow the required procedure, and should therefore be struck as well:

- Defendant Klosterman's Notice of Acknowledgement and Reservation of Rights (filed Mar. 11, 2026);

- Defendant John Klosterman's Opposition to Substitute Plaintiff HCLRC's Motion to Strike, and Cross-Motion for Sanctions (filed Mar. 13, 2026); and

- Emergency Motion for Stay of Demolition and for Injunctive Relief Against Hamilton County Land Reutilization Corporation; Request for Emergency Hearing on 700 Delhi Parcel # 153-0002-0037 (filed Mar. 16, 2026).

Based on the ruling in the Vexatious Litigator Action, the Court should strike any filings submitted by Klosterman without obtaining leave to file. To the extent that the Court does not strike these filings, HCLRC respectfully requests an additional two weeks after the Court's ruling on any Motions to Strike to file substantive responses.

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County*
*Land Reutilization Corporation*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing were served upon the following parties via U.S. Mail this 20th day of March, 2026:

James L. Nieberding, Esq.
Nieberding & Nieberding Co LPA
810 Sycamore St., Suite 423
Cincinnati, Ohio 45202

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
312 Walnut St., Suite 2450
Cincinnati, Ohio 45202-4028

Christian D. Donovan, Esq.
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052

C/O Prosecuting Attorney
Hamilton County Prosecutor's Office
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202

John Klosterman
5615 Sidney Rd.
Cincinnati, Ohio 45238

Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202

Amy K. Kaufman, Esq.
150 East Gay Street
Columbus, OH 43215-3130

Teresa Perkins, Esq.
222 E. Central Pkwy. 6NW711
Cincinnati, Ohio 45202

/s/ Kara A. Czanik
Kara A. Czanik (0075165)

3

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 1:21 mj 633 |
| JOSEPH LENTINE | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____6/23/2020_____ in the county of _____Hamilton_____ in the
_Southern_ District of _____Ohio_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 641 | Conversion of Public Money |
| 18 U.S.C. § 1014 | False Statements in Loan and Credit Applications |
| 18 U.S.C. § 1040 | Fraud in connection with major disaster or emergency benefits |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

> I CERTIFY THAT THIS IS A
> TRUE AND CORRECT COPY OF THE
> ORIGINAL FILED IN MY OFFICE
> ON _8-31-2021_
> RICHARD W NAGEL, Clerk of Court
> By _____
> Deputy Clerk
> Date _6-5-2023_

_Complainant's signature_

Ferron M. Yi, SA FBI
_Printed name and title_

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Aug 31, 2021**

City and state:        CINCINNATI, OHIO

Karen L. Litkovitz
United States Magistrate

**EXHIBIT**
J + K

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Angel Strunk | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_X Angel Strunk_
*Defendant's signature*

_____
*Signature of defendant's attorney*

Louis Rubenstein  #0016992
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

Print    Save As...    Reset

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CITY OF CINCINNATI, :  Case No. A1905588
          :  (Judge Wende C. Cross)
  Plaintiff,    :  (Magistrate Anita P. Berding)
          :
  v.       :
          :
JOHN KLOSTERMAN, et al., :
          :
  Defendants.   :

## AFFIDAVIT OF RICHARD BOYDSTON

STATE OF OHIO   )
        ) SS:
COUNTY OF HAMILTON )

Comes now Richard Boydston and first being duly cautioned and sworn deposes and says as follows:

1. I am the Manager of Konza, LLC, the receiver appointed in this action (the "Receiver").

2. I make this affidavit in response to statements made in the Affidavit of Joseph Lentine dated June 20, 2023 (the "Lentine Affidavit") attached to TriState Organization, Inc. and Joseph Lentine [sic] Reply to Substitute Plaintiff [sic] Memorandum in Opposition to Application for Payment of Costs [sic] Expenses and Fees filed June 20, 2023 by TriState Organization, Inc. ("TSO") and Joseph Lentine.

3. I make this affidavit based upon my personal knowledge.

4. Several of the paragraphs in the Lentine Affidavit contain assertions of fact I believe are not true or otherwise require a response. I set forth below in the left column the paragraph number in the Lentine Affidavit and next to each in the right column my response.



22987211.v1

| Lentine Affidavit Paragraph | Response |
|---|---|
| 10. Receiver, by its Manager Richard Boydston, agreed that I would receive compensation for professional services rendered as project/construction manager for the receivership. | I did not agree that Mr. Lentine, individually, would receive compensation for professional services rendered as project/construction manager for the receivership. |
| 11. At no time did Konza LLC or Richard Boydston request, prepare or tender for review to TSO or me, a written agreement memorializing the relationship with the Receiver for management of the Receivership properties. | I sent Mr. Lentine a proposed property management agreement by email on May 14, 2020. I attach a copy of that proposal marked Exhibit A. Mr. Lentine did not respond to that proposal. |
| 15. At the express direction of Receiver/Konza LLC, TSO and I commenced management of the Properties on or about March 1, 2020, and continuously performed that role until January 20, 2023, at which time Konza LLC, at the direction of City of Cincinnati and HCLRC, as consequence of wrongful interference by Cincinnati officials, terminated the TSO management contract. | TSO was terminated as property manager for the Receiver on the morning of January 20, 2023 effective immediately. Neither the City of Cincinnati nor HCLRC nor any person working at, for or affiliated with either of them directed that termination. |
| 16. During that period, TSO collected rents from tenants, completed all maintenance, repair and restoration of the Receivership properties, responded to tenant complaints and service requests. | TSO did not complete all maintenance, repair and restoration of the Receivership properties and TSO did not properly respond to all tenant complaints and service requests. |
| 20. There was no management fee charged or paid to TSO or Lentine during the period. | TSO clearly charged a 10% management fee on rents due, not rents paid, in every monthly report by TSO which are attached to each of the Receiver's monthly reports. Every TSO monthly report contained a line "TSO Management Fee – 10% of Rent Roll" and in each report the amount shown for this item equals the total rent due, not the total rent paid. In addition, in each of the first two TSO reports, TSO claimed an additional fee described as "TSO Labor Management Fee – 6% of Labor Costs". |

2

| Lentine Affidavit Paragraph | Response |
|---|---|
| 21. Mr. Boydston and I were in near daily contact, and all TSO activities were supervised and reviewed by Receiver Konza LLC. All new lease agreements were provided to Mr. Boydston. | I attempted to keep informed of all TSO activities including through near daily contact with Mr. Lentine and frequent meetings at TSO's offices at 671-673 Delhi. I was unable to supervise and review all TSO's activities and relied on Mr. Lentine's reports to me as well as my own investigations. |
| 25. For the period from March 1, 2020 through January 2023, total of rents collected was insufficient to cover TSO expenses for maintenance, repair and restoration of Receivership Properties. | TSO stated in its monthly reports that the total of expense, labor and management fees exceeded rents collected. A chart based on those monthly reports by TSO is attached marked Exhibit B and shows the total difference between the total income and the total expenses reported by TSO is $145,138.35. |
| 27. During the second year of the Receivership, TSO requested to be relieved of the engagement. The revenue shortfall from Receivership operations was borne by TSO. On Mr. Boydston repeated assurances that TSO and I would be paid and made whole upon sale of the properties, TSO and I agreed to continue the management. | Mr. Lentine never requested that he be relieved of the engagement. I never assured Mr. Lentine that TSO or he would be paid and made whole upon sale of the properties. |
| 29. With the Receiver's 35th Report, filed on February 17, 2023, TSO reported a cumulative deficit balance $148,181.40, was due and owning to it for costs and expenses incurred on behalf of the Receiver, for management, maintenance, repair and restoration of the Receivership Properties, for the period March 1, 2020 through January 20, 2023. TSO claimed additional sum of $21,325 as commission on rentals of Receivership Properties. The balance due to TSO for costs and expenses incurred, for and on behalf of Receiver has not been paid. | There was no agreement for payment by the Receiver to TSO of any commission on new rentals. The TSO report attached the Receiver's 2nd Report contains an expense item of $400 described as "TSO bonus for new tenant" without further information. No subsequent report by TSO contained any such line item or any claim for commission on new rentals. The "cumulative deficient balance" stated by TSO as of January 20, 2023 when TSO was terminated is $145,138.35 as set forth in Exhibit B referenced in paragraph 25 above. TSO has made no accounting on the disposition of security deposits it collected from tenants. |

5. Mr. Lentine and Kelley Allesee, counsel for the Hamilton County Land Reutilization Corporation (the "Landbank"), and I met at the Landbank's officers on January 24, 2023 to

3

discuss the Landbank's opposition to payment of claims by TSO and Mr. Lentine.  Mr. Allesee had with her copies of all papers provided to the Receiver by TSO in support of the statements of expenses and labor contained in the monthly reports by TSO attached to the Receiver's monthly reports filed and served in this action.  Ms. Allesee had prepared and given to Mr. Lentine a preliminary list of expenses compiled from the TSO monthly reports which the Landbank contends are not properly identified and or are not chargeable to the receivership.  The total expenses on that list is $168,428.00.  Ms. Allesee requested Mr. Lentine provide further documentary information on those claims.  I do not believe he, or anyone else, provided any information to the Landbank or anyone as requested.

Further affiant sayeth naught.

Respectfully submitted,

*Richard Boydston*

Richard Boydston (KBA# 84322)
Counsel for Konza, LLC, Receiver
Dentons Bingham Greenebaum LLP
312 Walnut Street, Suite 2450
Cincinnati, OH  45202
513.455.7663
513.762.7963 (fax)
richard.boydston@dentons.com

STATE OF OHIO          )
                                     )
COUNTY OF HAMILTON  )

The foregoing was acknowledged before me this the 5th day of July, 2023 by Richard Boydston.

*Leeann Bareswilt*

Notary Public
My Commission Expires: May 26, 2026

LEEANN BARESWILT
Notary Public, State of Ohio
My Commission Expires
May 26, 2026

4

CERTIFICATE OF SERVICE

I certify that copies of the foregoing and attachments were served on each of the following by email on July 5, 2023.

Kelley L. Allesee, Esq.
Counsel for Plaintiff Hamilton County
   Land Reutilization Corporation
3 East Fourth Street., Ste. 300
Cincinnati, OH 45202
kallesee@cincinnatiport.org

Kate Burroughs, Esq.
Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202
kate.burroughs@cincinnati-oh.gov
erica.faaborg@cincinnati-oh.gov

Cynthia M. Fisher, Esq.
Counsel for Plaintiff Hamilton County Land
   Reutilization Corporation
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
cynthia.fischer@dinsmore.com

James L. Nieberding, Esq.
Counsel for non-parties Joseph Lentine and
   TriState Organization, Inc.
810 Sycamore Street, Ste. 423
Cincinnati, OH 45202
jlnieberding1117@gmail.com

James S. Sayre, Esq.
Counsel for Defendants
   Hamilton County Auditor and Treasurer
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202
james.sayre@hcpros.org

Christian D. Donovan, Esq.
Counsel for Defendant
   Warsaw Federal Savings and Loan
   Association aka Warsaw FS & LA
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052
cdonovan@LNLattorneys.com

Teresa Perkins, Esq.
Counsel for Defendant Hamilton County Child
   Support Enforcement Agency
CSEA 222 E. Central Parkway
6NW711
Cincinnati, OH 45202
perkit02@JFS.HAMILTON-CO.org

Amy K. Kaufman, Esq.
Counsel for Defendants State of Ohio,
   Department of Taxation and
   Department of Job & Family Services
Dave Yost, Attorney General of Ohio
Collections Enforcement
150 East Gay Street
Columbus, OH 43215-3130
amy.kaufman@ohioattorneygeneral.gov

John Klosterman
5615 Sidney Road
Cincinnati, OH 45238
johncklosterman@gmail.com

/s/ Richard Boydston

5

# EXHIBIT A

6

## Property Management Agreement

This Property Management Agreement (this "Agreement") is made at Cincinnati, Ohio effective May 15, 2020 (the "Effective Date") by and between Konza, LLC, an Ohio limited liability company, by and through Richard Boydston as its Manager as receiver appointed by order entered February 14, 2020 (the "Receiver Order") by the Hamilton County Court of Common Pleas (the "Court") in Case Number A1905588 styled City of Cincinnati, plaintiff versus John Klosterman and others, defendants ("Receiver"), on the one hand, and TriState Organization, Inc., a Connecticut corporation by and through Joseph Lentine as its President ("TriState"), on the other hand.

## Recitals

A. Receiver was appointed by the Court pursuant to the Receivership Order to take control of approximately 66 parcels of real estate located in the Sedamsville neighborhood of Cincinnati, Ohio listed in the Receivership Order (collectively, the "Properties").

B. Prior to the appointment of the Receiver, TriState was performing property management services for John Klosterman with respect at least some of the Properties and TriState has continued to perform property management services subsequent to entry of the Receiver Order.

C. Receiver and TriState wish to set forth terms and conditions for continued services by TriState with respect to the Properties.

## Agreement

1. Collection of Rent. TriState shall collect all rent from all tenants residing at the Properties (collectively, the "Occupied Properties"). All rent collected by TriState shall be promptly deposited in account 90205580394 at Emery Federal Credit Union (the "Rent Account").

2. Marketing and Securing New Leases. TriState shall market and undertake leasing of rentable units of the Properties.

3. Security Deposits. TriState shall promptly collect and pay to Receiver all deposits to be paid by tenants after the Effective Date (collectively, the "Deposits") and Receiver shall hold and not pay out any amount of the Deposits except pursuant to the written request by TriState and the agreement of Receiver.

4. Routine Maintenance of Occupied Properties. TriState shall promptly perform all necessary routine maintenance for the Occupied Properties.

5. Non-Routine Maintenance. TriState shall provide all labor and materials for non-routine maintenance and construction for any of the Properties as may be from time to time

1

agreed upon in writing including a budget by Receiver and TriState and TriState shall obtain all required permits for all such maintenance and construction.

6. <u>Maintenance of Unoccupied Buildings and Vacant Land Properties</u>. TriState shall mow grass and remove litter around all buildings on the Properties other than Occupied Buildings (collectively, "Unoccupied Buildings") and on all of the Properties other than Occupied Buildings and Unoccupied Buildings (collectively, "Vacant Land Properties") and TriState shall otherwise maintain all Unoccupied Buildings and Vacant Land Properties in compliance with best practices and City of Cincinnati ordinances and regulations.

7. <u>Reporting by TriState</u>. TriState shall provide Receiver by the seventh of each month a written report on all income and expenses incurred by TriState for the immediately preceding month. In addition, TriState shall promptly provide Receiver with all such further reports as Receiver may from time to time reasonably request.

8. <u>Payment of Expenses</u>. TriState shall promptly pay from the Rent Account all expenses incurred for labor and materials for Routine Maintenance of Occupied Buildings, for Non-Routine Maintenance and for Maintenance of Unoccupied Buildings and Vacant Land.

9. <u>Compensation of TriState</u>. For its services to be performed under this Agreement, TriState shall receive an amount equal to (A) 15% of all rent collected and deposited in the Rent Account plus (B) an amount equal to one month rent for all new leases entered into by TriState for Receiver with new tenants in Occupied Properties. All amounts due to TriState for the foregoing shall be paid out of the Rent Account.

10. <u>Compliance with Law</u>. TriState shall comply with all federal, Ohio, and City of Cincinnati laws, ordinances, regulations and procedures of whatever kind or nature with respect to the Properties including, but not limited to, regarding landlord and residential tenant matters and construction.

11. <u>Termination</u>. This Agreement may be terminated by either Receiver or TriState immediately upon written notice by the one to the other.

In witness whereof, Receiver and TriState have set their respective hands below as of the Effective Date.

Receiver:                                      TriState:
Konza, LLC                                     TriState Organization, Inc.

by:_____          by:_____
Richard Boydston, Manager                      Joseph Lentine, President

21062274.1

2

# EXHIBIT B

7

F-FILED 07/05/2023 11:37 PM / CONFIRMATION 1340652 / A 1905588 / JUDGE CROSS / COMMON PLEAS DIVISION / AFFD

F-FII FD 07/05/2023 11:37 PM / CONFIRMATION 1340652 / A 1905588 / JUDGE CROSS / COMMON PLEAS DIVISION / AFFD

revised
7/3/23

## TriState Organization, Inc.
## Klosterman Sedamsville Receivership
### Income and Expenses as Shown on TSO Monthly Reports

| 1 report # | 2 period | 3 rent received | 4 rent deposit received | 5 expenses paid | 6 labor paid | 7 other due to TSO | 8 management fee claimed by TSO for month[1] | 9 total amount due to TSO for month before payment to TSO (5 plus 6 plus 8 less 7) from monthly reports | 10 total paid to TSO during month from monthly reports | 11 cumulative balance due to TSO for month remaining unpaid from monthly reports |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2/14-3/31/20 | $3,855.00 | 0.00 | $1,293.73 | $1,827.00 | 0.00 | $899.62 | $4,020.33 | 3,855.00 | 165.33 |
| 2 | 4/1-30/20 | 8,135.42 | 0.00 | 5,127.74 | 5,573.00 | $400.00[2] | 1,268.88 | 11,569.62 | 8,135.42 | 4,234.20 |
| 3 | 5/1-31/20 | 7,330.00 | 0.00 | 3,437.58 | 8,825.75 | 0.00 | 733.00 | 12,996.33 | 7,330.00 | 9,167.53 |
| 4 | 6/1-30/20 | 7,355.00 | 0.00 | 6,693.92 | 6,902.00 | 0.00 | 775.50 | 14,371.42 | 7,355.00 | 9,167.53 |
| 5 | 7/1-31/20 | 9,255.00 | 0.00 | 10,245.36 | 9,619.36 | 0.00 | 900.50 | 20,765.22 | 9,255.00 | 27,694.17 |
| 6 | 8/1-31/20 | 8,905.00 | 0.00 | 19,546.28 | 14,087.43 | 0.00 | 865.50 | 34,499.21 | 8,905.00 | 53,288.38 |
| 7 | 9/1-30/20 | 7,945.00 | 0.00 | 5,033.84 | 6,295.68 | 0.00 | 825.50 | 12,155.02 | 7,570.00 | 57,873.40 |
| 8 | 10/1-31/20 | 7,580.00 | 0.00 | 3,606.80 | 8,558.53 | 0.00 | 825.50 | 12,990.83 | 8,405.50 | 59,633.23 |
| 9 | 11/1-30/20 | 6,930.00 | 0.00 | 3,774.29 | 8,698.42 | 0.00 | 858.00 | 13,330.71 | 7,788.00 | 64,317.94 |
| 10 | 12/1-31/20 | 6,430.00 | 1,200.00 | 9,254.23 | 10,286.88 | 0.00 | 0.00 | 19,541.11 | 8,110.50 | 75,748.55 |
| 11 | 1/1-31/21 | 9,280.00 | 2,750.00 | 9,588.34 | 15,353.54 | 0.00 | 0.00 | 24,941.88 | 12,983.00 | 87,707.23 |
| 12 | 2/1-28/21 | 8,430.00 | 0.00 | 13,119.50 | 10,237.30 | 0.00 | 4,535.00 | 27,891.80 | 8,430.00 | 19,461.80 |
| 13 | 3/1-31/21 | 19,094.00 | 0.00 | 8,466.22 | 14,750.34 | 0.00 | 1,108.00 | 24,324.56 | 19,094.00 | 112,399.53 |
| 14 | 4/1-30/21 | 11,030.00 | 0.00 | 10,343.40 | 16,005.47 | 0.00 | 1,103.00 | 27,451.87 | 11,030.00 | 128,751.46 |
| 15 | 5/1-31/21 | 12,505.00 | 0.00 | 3,571.28 | 16,997.25 | 0.00 | 1,180.28 | 21,748.81 | 12,985.50 | 136,334.49 |
| 16 | 6/1-30/21 | 10,055.00 | 3,200.00 | 7,937.36 | 11,129.25 | 0.00 | 1,150.50 | 20,217.11 | 13,255.00 | 143,296.60 |

[1] 10% of rent roll; 6% of labor for 1st and 2nd reports

[2] new tenant bonus

E-FILED 07/05/2023 11:37 PM / CONFIRMATION 1340652 / A 1905588 / JUDGE CROSS / COMMON PLEAS DIVISION / AFFD

| 1 report # | 2 period | 3 rent received | 4 rent deposit received | 5 expenses paid | 6 labor paid | 7 other due to TSO | 8 management fee claimed by TSO for month[1] | 9 total amount due to TSO for month before payment to TSO (5 plus 6 plus 8 less 7) from monthly reports | 10 total paid to TSO during month from monthly reports | 11 cumulative balance due to TSO for month remaining unpaid from monthly reports |
|---|---|---|---|---|---|---|---|---|---|---|
| 17 | 7/1-31/21 | 11,605.00 | 1,900.00 | 4,686.09 | 7,575.48 | 0.00 | 1,375.50 | 13,637.07 | 13,505.00 | 143,428.67 |
| 18 | 8/1-31/21 | 13,255.00 | 2,275.00 | 3,708.06 | 52,231.63 | 0.00 | 1,418.00 | 57,357.69 | 15,530.00 | 185,256.36 |
| 19 | 9/1-30/21 | 16,780.00 | 0.00 | 8,200.44 | 13,281.14 | 0.00 | 1,423.00 | 22,904.58 | 16,750.00 | 191,555.94 |
| 20 | 10/1-31/21 | 14,980.00 | 0.00 | 7,070.41 | 6,158.00 | 0.00 | 1,423.00 | 14,651.41 | 14,980.00 | 191,227.85 |
| 21 | 11/1-30/21 | 14,835.00 | 0.00 | 3,350.03 | 8,329.54 | 0.00 | 1,353.50 | 13,033.07 | 14,835.00 | 189,754.01 |
| 22 | 12/1-31/21 | 15,125.00 | 0.00 | 7,584.22 | 5,490.00 | 0.00 | 1,433.00 | 14,507.22 | 15,125.00 | 189,136.23 |
| 23 | 1/1-31/22 | 24,405.00 | 0.00 | 5,788.00 | 5,148.99 | 0.00 | 1,360.50 | 12,297.49 | 24,405.00 | 177,028.72 |
| 24 | 2/1-28/22 | 14,330.00 | 0.00 | 1,223.69 | 6,363.21 | 0.00 | 1,433.00 | 9,019.90 | 14,330.00 | 171,718.62 |
| 25 | 3/1-31/22 | 15,755.00 | 0.00 | 6,552.86 | 14,797.21 | 0.00 | 1,468.00 | 22,818.07 | 15,755.00 | 178,781.69 |
| 26 | 4/1-30/22 | 13,530.00 | 0.00 | 1,272.61 | 8,224.59 | 0.00 | 1,433.00 | 10,930.20 | 13,530.00 | 176,181.89 |
| 27 | 5/1-31/22 | 13,530.00 | 0.00 | 756.88 | 7,999.97 | 0.00 | 1,433.00 | 10,189.85 | 13,530.00 | 164,101.42 |
| 28 | 6/1-30/22 | 13,850.00 | 0.00 | 2,103.63 | 4,970.22 | 0.00 | 1,472.50 | 8,546.35 | 13,850.00 | 163,718.92 |
| 29 | 7/1-31/22 | 14,650.00 | 0.00 | 986.63 | 6,502.88 | 0.00 | 1,465.00 | 8,954.51 | 14,650.00 | 162,847.08 |
| 30 | 8/1-31/22 | 14,650.00 | 0.00 | 1,176.77 | 4,913.75 | 0.00 | 1,465.00 | 7,555.52 | 14,650.00 | 160,787.12 |
| 31 | 9/1-30/22 | 14,105.00 | 725.00 | 1,894.52 | 7,059.88 | 0.00 | 1,465.00 | 10,419.40 | 14,104.00 | 156,376.52 |
| 32 | 10/1-31/22 | 12,455.00 | 1,755.00 | 2,510.42 | 6,931.89 | 0.00 | 1,465.00 | 10,907.31 | 12,455.00 | 157,717.62 |
| 33 | 11/1-30/22 | 14,080.00 | 0.00 | 3,746.24 | 7,299.84 | 0.00 | 1,757.50 | 12,803.58 | 14,080.00 | 156,441.20 |
| 34 | 12/1-31/22 | 12,938.00 | 0.00 | 4,129.45 | 6,844.55 | 0.00 | 1,757.50 | 12,731.50 | 12,938.00 | 155,634.70 |
| 35 | 1/1-20/23 | 14,197.00 | 0.00 | 724.56 | 4,341.64 | 0.00 | 1,677.50 | 6,743.70 | 14,197.00 | 148,181.40 |
| | totals | $423,169.42 | $13,805.00 | $188,505.38 | $349,611.61 | $400.00 | $45,107.28 | $582,824.25 | $437,685.92 | |

2

F-FILED 07/05/2023 11:37 PM / CONFIRMATION 1340652 / A 1905588 / JUDGE CROSS / COMMON PLEAS DIVISION / AFFD

## Amount Claimed by TSO to be Due from Monthly Reports

Column
#

9.   total amount claimed due by TSO before payment
     made to TSO from monthly reports ...........................582,824.27

10.  total paid monthly to TSO from monthly reports ..........(437,685.92)
         difference/ amount claimed by TSO to be due      $145,138.35

21159523.v1

3

April 28, 2023

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238

Dentons Bingham Greenebaum LLP
Bradley Arnett
312 Walnut Street #2450
Cincinnati, Ohio 45202
Via Email: bradley.arnett@dentons.com

RE: Richard Boydston double legal billing in case #A1095588

Dear Mr. Arnett:

I am writing this letter regarding a matter that requires your immediate attention. It came to my attention that Mr. Boydston has been caught double billing in the amount over $175,000.00. (enclosed) It is not alleged, it is on the enclosed document examples. The complete document is over 90 pages long.

## BACKGROUND

Mr. Boydston, created an LLC to shield himself as well as ready that LLC to be involved in real estate investment and management, as he stated in the filing in 2018. As you are aware, he made himself the manager of Konza, LLC in the above case.

When he submitted his invoice to the courts for payment several months ago, red flags were raised. Konza, LLC , on the same dates, memo's, as he Mr. Boydston, as the manager had, only the billing rate was reduced, were almost exactly the same. (enclosed) I set them side by side to show the false billing. It's as though two attorneys were present for all that he billed for by himself and an associate. Legal law firms are responsible for the actions of their lawyers. In this case, it is clear that Mr. Boydston's actions have not only put your firm's reputation at risk but also exposed it to legal liability.

It is imperative that your firm takes swift action to address this issue. I, as the defendant in the case am+ required to pay the legitimate bills from the receivership. I would request that you perform an internal investigation to find the extent of the wrongdoing. I have received no answers from any of my requests via email. He has used obfuscation on every motions and not answered



any pertinent request via email in the past 3 years. Information that is required by ORC 1785 code. I understand in reading the code, that each partner or member of a professional association shall be responsible for the acts of any other partner or member of the association in the conduct of the professional business of the association. This means that a law firm and its partners are jointly and severally liable for the actions of each other in relation to their professional business.

Mr. Boydston is well aware that we are preparing a civil RICO action and the information listed below are for Discovery. We would like your cooperation now vs later.

1. The bank statements from TSO and Konza, LLC.
2. Mr. Boydston's bank records are required to show proof that he personally paid mortgages in the amount of nearly $35,000.00 over 33 months. Note: Warsaw Federal has not been paid in 4 months. Total amount due $5,251.58 (since Joseph Lentine was fired.) Defendant alleges Mr.Boydston had the payments of $1,022.02 slipped to him by Mr. Lentine monthly and was unreported. Why else would he refuse to show his personal accounts on where the $35K came from.
3. Explain why he billed essentially the same amounts as Konza, LLC did and then submitted them for payment. Totaling nearly $500,000.00.
4. Produce the real estate agent agreement as well as the sales offer from HCLRC and final sales document to the Land Bank.
5. Ask Mr. Boydston why he never made any adjustments totaling over $150,000.00 that were paid by the receiver to TSO, but in fact were falsely reported " paid".
6. Known insurance cancellations due to non payment.
7. The manage agreement with TSO and Joseph Lentine.( there were 2)

All these and many other records are too numerous to mention, were missing in the 4100 records submitted to me via the Land Bank from Mr. Boydston.

I am requesting that your office provide this information from Mr. Boydston. He refuses. Your office or I will provide it to the court. Your cooperation is greatly appreciated. There are many who colluded with Mr. Boydston, I am confident that with your cooperation, your firm was not complicit.

We understand that this situation may be difficult for your firm, but it is important to take responsibility for the actions of your partners and take the necessary steps to restore trust and confidence in your firm.

Thank you for your attention to this matter. We look forward to hearing from you soon.

Sincerely,

John Klosterman

enclosures

Cc: Feroon Yi, FBI

Christian Donovan Esq

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

Invoice No.:          ******
Invoice Date:    December 2, 2022
Page               29

12/5/22
revision

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 04/07/22 | RB | Emails and phone conferences Joseph Lentine; emails Matthew Strauss; emails and phone conferences Katrina Godbey | 0.30 | 105.00 |
| 04/08/22 | RB | Phone conferences, emails and meeting with Joseph Lentine; properties drive by; emails Matthew Strauss; phone conference and emails Kim Knoppe; phone conferences Philip Denning and Jaci Martin | 1.30 | 455.00 |
| 04/11/22 | RB | Phone conference and emails Joseph Lentine and Jennifer Donathan; properties drive by; emails Matthew Strauss; phone conferences Jaci Martin; edit marketing materials; meeting Tim Oakes and Mr. Lentine | 1.00 | 350.00 |
| 04/12/22 | RB | Phone conferences Joseph Lentine and Jennifer Donathan; review and edit Listing Agent agreement | 1.00 | 350.00 |
| 04/26/22 | RB | Phone conferences and emails Joseph Lentine; internal conferences on locating emails in response to John Klosterman demand | 1.00 | 350.00 |
| 06/16/22 | RB | Phone conferences Joseph Lentine; draft motion to approve sale | 0.60 | 210.00 |
| 06/17/22 | RB | Phone conferences Joseph Lentine and Kate Burroughs, Erica Faaborg and Shannon Price; office conference Mr. Lentine; properties drive by | 0.50 | 175.00 |
| 06/21/22 | RB | Phone conferences Marty Arlinghaus and Joseph Lentine | 0.20 | 70.00 |
| 06/22/22 | RB | Phone conferences Dial One, Jennifer Donathan and Joseph Lentine; attend 637 Steiner alarm | 0.20 | 70.00 |
| 06/23/22 | RB | Phone conferences Jennifer Donathan, Dial One, George Wallace, Kelly Alessee, Joseph Lentine | 0.10 | 35.00 |
| 06/24/22 | RB | Phone conferences George Wallace, Dial One, Joseph Lentine and Shannon Price and Erica Faaborg; meeting with Randy Williams and attend to GCWW payment; voicemails Mary Lee Bosom; emails Mr. Williams and Melissa Darby | 0.20 | 70.00 |
| 06/27/22 | RB | Attend to Dial One work at 637 Steiner | 0.10 | 35.00 |
| 06/28/22 | RB | Phone conference Joseph Lentine; email Ted Gable | 0.10 | 35.00 |
| 06/29/22 | RB | Phone conferences Joseph Lentine, Kelly Alessee and Jennifer Donathan | 0.50 | 175.00 |
| 06/30/22 | RB | Conference Joseph Lentine; properties drive by | 0.10 | 35.00 |
| 07/01/22 | RB | Emails Kelley Allesee and Jennifer Donathan; review Port purchase contract; phone conferences Joseph Lentine | 0.50 | 175.00 |

Work performed by Konza LLC as Receiver

| date | description | time | amount |
|---|---|---|---|
| 4/7/22 | emails and phone conferences Joseph Lentine; emails Matthew Strauss; emails and phone conferences Katrina Godbey | 1.20 | 420.0 |
| 4/8/22 | phone conferences, emails and meeting with Joseph Lentine; properties drive by; emails Matthew Strauss; phone conference and emails Kim Knoppe; phone conferences Philip Denning and Jaci Martin | 2.50 | 750.00 |
| 4/11/22 | phone conference and emails Joseph Lentine and Jennifer Donathan; properties drive by; emails Matthew Strauss; phone conferences Jaci Martin; edit marketing materials; meeting Tim Oakes and Mr. Lentine | 2.50 | 750.00 |
| 4/12/22 | phone conferences Joseph Lentine and Jennifer Donathan; review and edit Listing Agent agreement | 1.00 | 300.00 |
| 4/26/22 | phone conferences and emails Joseph Lentine; internal conferences on locating emails in response to John Klosterman demand | .20 | 0 |
| 6/16/22 | phone conferences Joseph Lentine; draft motion to approve sale | .10 | 30.00 |
| 6/17/22 | phone conferences Joseph Lentine and Kate Burroughs, Erica Faaborg and Shannon Price; office conference Mr. Lentine; properties drive by | 1.50 | 450.00 |
| 6/21/22 | phone conferences Marty Arlinghaus and Joseph Lentine | .20 | 60.00 |
| 6/22/22 | phone conferences Dial One, Jennifer Donathan and Joseph Lentine; attend 637 Steiner alarm | 1.50 | 450.00 |
| 6/23/22 | phone conferences Jennifer Donathan, Dial One, George Wallace, Kelly Allesee, Joseph Lentine | .30 | 90.00 |
| 6/24/22 | phone conferences George Wallace, Dial One, Joseph Lentine and Shannon Price and Erica Faaborg; meeting with Randy Williams and attend to GCWW payment; voicemails Mary Lee Bosom; emails Mr. Williams and Melissa Darby | 2.00 | 600.00 |
| 6/27/22 | attend to Dial One work at 637 Steiner | 2.50 | 750.00 |
| 6/28/22 | phone conference Joseph Lentine; email Ted Gable | .50 | 150.00 |
| 6/29/22 | phone conferences Joseph Lentine, Kelly Allesee and Jennifer Donathan | .50 | 150.00 |
| 6/30/22 | conference Joseph Lentine; properties drive by | .80 | 240.00 |
| 7/1/22 | emails Kelley Allesee and Jennifer Donathan; review Port purchase contract; phone conferences Joseph Lentine | .50 | 150.00 |

Case: 26-3149   Document: 11   Filed: 04/23/2026   Page: 155

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

Invoice No.: ******
Invoice Date: December 2, 2022
Page 29

12/5/22
revision

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 07/05/22 | RB | Phone conferences Joseph Lentine and Jennifer Donathan; edit Port draft purchase agreement | 0.50 | 175.00 |
| 07/06/22 | RB | Phone conferences Marty Arlinghaus and Joseph Lentine; edit mark up of Port draft purchase agreement; email Kelley Allesee | 1.20 | 420.00 |
| 07/07/22 | RB | Edit rent roll; office conference Joseph Lentine; properties drive by; emails Melissa Darby | 0.10 | 35.00 |
| 07/08/22 | RB | Review receiver's monthly report and have filed and served; edit operating reports; phone and in person conference Joseph Lentine; phone conference and in person meeting Randy Williams; letter to Mr. Lentine' properties drive by | 1.00 | 350.00 |
| 07/11/22 | RB | Phone conferences Kelly Allesee and Joseph Lentine | 0.50 | 175.00 |
| 07/12/22 | RB | Office and phone conferences Joseph Lentine; prepare for and attend office conference Kelley Allesee | 2.00 | 700.00 |
| 07/13/22 | RB | Phone conference Joseph Lentine; draft motion to approve sale and order on same | 1.00 | 350.00 |
| 10/19/22 | RB | Phone conferences Joseph Lentine; emails St. Vincent De Paul, Jennifer Donathan, Kelley Allesee and Shannon Price; obtain Magistrate Berding signature to sale order and file | 1.00 | 350.00 |
| 10/20/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 10/21/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 10/24/22 | RB | Phone conferences Joseph Lentine and Kate Burroughs and Shannon Price; edit GCWW chart | 0.30 | 105.00 |
| 10/25/22 | RB | Emails Rhonda Dove; phone conferences and emails Joseph Lentine; internet and clerk of courts searches re John Klosterman arrest | 0.20 | 70.00 |
| 10/26/22 | RB | Phone conferences Joseph Lentine; emails Robert Hines , Kate Burroughs and Angel Strunk | 0.30 | 105.00 |
| 10/27/22 | RB | Emails Joseph Lentine and Rhonda Dove; phone conferences Mr. Lentine | 0.10 | 35.00 |
| 10/28/22 | RB | Phone conferences Joseph Lentine; emails Melissa Darby and Erin Lovitt; emails Robert Hines | 0.30 | 105.00 |
| 10/31/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 11/01/22 | RB | Phone conference Joseph Lentine; emails Erin Lovitt and Robert Hines (.20) | 0.10 | 35.00 |
| 11/02/22 | RB | Email Kate Burroughs; review health department reports; phone conferences Joseph Lentine (.70) | 0.30 | 105.00 |
| 11/03/22 | RB | Emails Rhonda Dove, Kate Burroughs; phone conferences Joseph Lentine (.30) | 0.10 | 35.00 |
| 11/04/22 | RB | Phone conference Joseph Lentine and Shannon Price; emails Angel Strunk, Erin Lovitt; review receiver report attachment and draft and serve report | 0.60 | 210.00 |
| 11/07/22 | RB | Office conference Joseph Lentine; properties drive by; edit operations charts; draft motion for approval and payment of receiver's fees and expenses; emails Angel Strunk, Mr. Lentine (1.50) | 1.50 | 525.00 |
| 11/08/22 | RB | Emails and phone conferences Kelley Allesee and Joseph Lentine; emails Mr. Lentine and Deanna White; edit fee and expense motion (.80) | 0.70 | 245.00 |

## Work performed by Konza LLC as Receiver

| date | description | time | amount |
|---|---|---|---|
| 7/5/22 | phone conferences Joseph Lentine and Jennifer Donathan; edit Port draft purchase agreement | .30 | 90.00 |
| 7/6/22 | phone conferences Marty Arlinghaus and Joseph Lentine; edit mark up of Port draft purchase agreement; email Kelley Allesee | .80 | 240.00 |
| 7/7/22 | edit rent roll; office conference Joseph Lentine; properties drive by; emails Melissa Darby | 1.80 | 540.00 |
| 7/8/22 | review receiver's monthly report and have filed and served; edit operating reports; phone and in person conference Joseph Lentine; phone conference and in person meeting Randy Williams; letter to Mr. Lentine' properties drive by | 2.50 | 750.00 |
| 7/11/22 | phone conferences Kelly Allesee and Joseph Lentine | .30 | 90.00 |
| 7/12/22 | office and phone conferences Joseph Lentine; prepare for and attend office conference Kelley Allesee | 1.00 | 300.00 |
| 7/13/22 | phone conference Joseph Lentine; draft motion to approve sale and order on same | .20 | 60.00 |
| 10/19/22 | phone conferences Joseph Lentine; emails St. Vincent De Paul, Jennifer Donathan, Kelley Allesee and Shannon Price; obtain Magistrate Berding signature to sale order and file | 1.20 | 360.00 |
| 10/20/22 | phone conferences Joseph Lentine | .10 | 30.00 |
| 10/21/22 | phone conferences Joseph Lentine | .10 | 30.00 |
| 10/24/22 | phone conferences Joseph Lentine and Kate Burroughs and Shannon Price; edit GCWW chart | .70 | 210.00 |
| 10/25/22 | emails Rhonda Dove; phone conferences and emails Joseph Lentine; internet and clerk of courts searches re John Klosterman arrest | .40 | 120.00 |
| 10/26/22 | phone conferences Joseph Lentine; emails Robert Hines , Kate Burroughs and Angel Strunk | .30 | 90.00 |
| 10/27/22 | emails Joseph Lentine and Rhonda Dove; phone conferences Mr. Lentine | .10 | 30.00 |
| 10/28/22 | phone conferences Joseph Lentine; emails Melissa Darby and Erin Lovitt; emails Robert Hines | .70 | 210.00 |
| 10/31/22 | phone conferences Joseph Lentine | .10 | 30.00 |
| 11/1/22 | phone conference Joseph Lentine; emails Erin Lovitt and Robert Hines | .20 | 60.00 |
| 11/2/22 | email Kate Burroughs; review health department reports; phone conferences Joseph Lentine | .70 | 210.00 |
| 11/3/22 | emails Rhonda Dove, Kate Burroughs; phone conferences Joseph Lentine | .30 | 90.00 |
| 11/4/22 | phone conference Joseph Lentine and Shannon Price; emails Angel Strunk, Erin Lovitt; review receiver report attachment and draft and serve report | 1.00 | 300.00 |
| 11/7/22 | office conference Joseph Lentine; properties drive by; edit operations charts; draft motion for approval and payment of receiver's fees and expenses; emails Angel Strunk, Mr. Lentine | 1.50 | 450.00 |
| 11/8/22 | emails and phone conferences Kelley Allesee and Joseph Lentine; emails Mr. Lentine and Deanna White; edit fee and expense motion | .80 | 240.00 |

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

Invoice No.: ******
Invoice Date: December 2, 2022
Page 29

12/5/22
revision

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 09/28/21 | RB | Phone conference Joseph Lentine; review operating charts | 0.40 | 140.00 |
| 10/12/21 | RB | Prepare for and attend hearing on all motions before Magistrate Berding; edit magistrate's decision on receiver's sale motion and sale terms and procedures; emails Jaci Martin and Tina Woods; office conference Joseph Lentine and Angel Strunk; check church security; phone conferences Joseph Lentine | 2.00 | 700.00 |
| 10/13/21 | RB | Edit magistrate's decision on sale motion; emails Jaci Martin and Tina Woods; review 3 John Klosterman filings; phone conferences Joseph Lentine | 1.50 | 525.00 |
| 11/14/21 | RB | Meeting Charles Wanamaker at 637 Steiner; properties drive by; edit GCWW chart; email Joseph Lentine | 0.10 | 35.00 |
| 02/02/22 | RB | Phone conferences Kim Knoppe, Jennifer Donathan and Joseph Lentine; drive by properties; edit insurance chart; email Mr. Lentine | 1.00 | 350.00 |
| 03/03/22 | RB | Phone conferences and emails Joseph Lentine; office conference Mr. Lentine and Angel Strunk; properties | 0.20 | 70.00 |
| 03/04/22 | RB | Phone conference and emails Joseph Lentine; phone conference Jaci Martin; update operations charts; arrange for filing and service of receiver's report; emails Angel Strunk; draft Port sale outline | 1.20 | 420.00 |
| 03/21/22 | RB | Meeting George Wallace and attend to clean out of 639 Steiner; properties drive by; office conference Joseph | 0.50 | 175.00 |
| 03/22/22 | RB | Draft letter to GCWW; phone conferences Marty Arlinghaus and Joseph Lentine | 0.50 | 175.00 |
| 03/25/22 | RB | Phone conference and emails Yvette Hanley; emails Jennifer Donathan; phone conferences Jaci Martin and Joseph Lentine; overnite letter to GCWW; review John Klosterman and City filings | 1.00 | 350.00 |
| 03/28/22 | RB | Phone conference Joseph Lentine; emails Joshua Carlton | 0.20 | 70.00 |
| 03/29/22 | RB | Phone conference Joseph Lentine; email Yvette Honley; email Tim Oakes | 0.30 | 105.00 |
| 03/30/22 | RB | Office conference Joseph Lentine and Angel Strunk; properties drive by; read John Klosterman 3/29/22 filings; phone conference Mr. Lentine | 0.30 | 105.00 |
| 03/31/22 | RB | Phone conference Joseph Lentine; emails Jennifer Donathan Kelly Allesee, Melissa Darby and Angel Strunk | 0.20 | 70.00 |
| 04/01/22 | RB | Phone conferences Jaci Martin and Joseph Lentine; emails David Boe and Yvette Harley | 0.40 | 140.00 |
| 04/04/22 | RB | Office conference Joseph Lentine and Angel Strunk and with Jennifer Donathan; properties drive by; emails Jennifer Donathan; emaild David Boe; emails Matthew Strauss and Kim Knoppe | 1.00 | 350.00 |
| 04/05/22 | RB | Office conference Joseph Lentine; properties drive by; edit offer solicitation package; emails Matthew Strauss, | 0.50 | 175.00 |
| 04/06/22 | RB | Phone conferences and emails Joseph Lentine; emails and phone conference Matthew Strauss; review CAA landlord statements; arrange filing and service of 25th Receiver's Report; phone conference and emails Jennifer Donathan; edit offer solicitation package | 1.00 | 350.00 |

## Work performed by Konza LLC as Receiver

| date | description | time | amount |
|---|---|---|---|
| 9/28/21 | phone conference Joseph Lentine; review operating charts | .60 | 180.00 |
| 10/12/21 | prepare for and attend hearing on all motions before Magistrate Berding; edit magistrate's decision on receiver's sale motion and sale terms and procedures; emails Jaci Martin and Tina Woods; office conference Joseph Lentine and Angel Strunk; check church security; phone conferences Joseph Lentine | 2.00 | 600.00 |
| 10/13/21 | edit magistrate's decision on sale motion; emails Jaci Martin and Tina Woods; review 3 John Klosterman filings; phone conferences Joseph Lentine | 1.00 | 300.00 |
| 11/14/21 | meeting Charles Wanamaker at 637 Steiner; property drive by; edit GCWW chart; email Joseph Lentine | 1.00 | 300.00 |
| 2/2/22 | phone conferences Kim Knoppe, Jennifer Donathan and Joseph Lentine; drive by properties; edit insurance chart; email Mr. Lentine | 1.50 | 450.00 |
| 3/3/22 | phone conferences and emails Joseph Lentine; office conference Mr. Lentine and Angel Strunk; properties drive by; email Matthew Strauss | 1.80 | 540.00 |
| 3/4/22 | phone conference and emails Joseph Lentine; phone conference Jaci Martin; update operations charts; arrange for filing and service of receiver's report; emails Angel Strunk; draft Port sale outline | 2.00 | 600.00 |
| 3/21/22 | meeting George Wallace and attend to clean out of 639 Steiner; properties drive by; office conference Joseph Lentine; emails Angel Strunk; emails Vicki Asbury; letter and delivery to David Boe; email Philip Denning | 3.00 | 900.00 |
| 3/22/22 | draft letter to GCWW; phone conferences Marty Arlinghaus and Joseph Lentine | 1.10 | 330.00 |
| 3/25/22 | phone conference and emails Yvette Hanley; emails Jennifer Donathan; phone conferences Jaci Martin and Joseph Lentine; overnite letter to GCWW; review John Klosterman and City filings | 1.50 | 450.00 |
| 3/28/22 | phone conference Joseph Lentine; emails Joshua Carlton | .20 | 60.00 |
| 3/29/22 | phone conference Joseph Lentine; email Yvette Honley; email Tim Oakes | .40 | 120.00 |
| 3/30/22 | phone conference Joseph Lentine; emails Jennifer Donathan Kelly Allesee, Melissa Darby and Angel Strunk | 1.70 | 510.00 |
| 3/31/22 | phone conference Joseph Lentine; emails Jennifer Donathan Kelly Allesee, Melissa Darby and Angel Strunk | .50 | 150.00 |
| 4/1/22 | phone conferences Jaci Martin and Joseph Lentine; emails David Boe and Yvette Harley | .40 | 120.00 |
| 4/4/22 | office conference Joseph Lentine and Angel Strunk and with Jennifer Donathan; properties drive by; emails Jennifer Donathan; emaild David Boe; emails Matthew Strauss and Kim Knoppe | 1.50 | 450.00 |
| 4/5/22 | office conference Joseph Lentine; properties drive by; edit offer solicitation package; emails Matthew Strauss, GCWW and Angel Strunk | 1.50 | 450.00 |
| 4/6/22 | phone conferences and emails Joseph Lentine; emails and phone conference Matthew Strauss; review CAA landlord statements; arrange filing and service of 25th Receiver's Report; phone conference and emails Jennifer Donathan; edit offer solicitation package | 2.50 | 750.00 |

Dentons Bingham Greenebaum LLP

Invoice No.: ******
Invoice Date: December 2, 2022
Page 29

Konza LLC
131170.000002

12/5/22
revision

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|------|------|------|------|------|
| 11/09/22 | RB | Phone conferences Joseph Lentine; emails Mr. Lentine, Angel Strunk, Deanna White; texts Ayman Nabi (.50) | 0.20 | 70.00 |
| 11/10/22 | RB | Phone conferences Joseph Lentine; texts Ayman Nabi; edit fee and expense motions; emails Jennifer | 1.00 | 350.00 |

### Work performed by Konza LLC as Receiver

| date | description | time | amount |
|------|------|------|------|
| 11/9/22 | phone conferences Joseph Lentine; emails Mr. Lentine, Angel Strunk, Deanna White; texts Ayman Nabi | .50 | 150.00 |
| 11/10/22 | phone conferences Joseph Lentine; texts Ayman Nabi; edit fee and expense motions; emails Jennifer Donathan, Kate Burroughs | .70 | 210.00 |

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

| | Invoice No.: | ****** |
|---|---|---|
| | Invoice Date: | September 7, 2023 |
| | Page | 11 |

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| | | conference Ms. Allesee; prepare for closing and execute dox at Prominent Title | | |
| 05/02/23 | RB | Emails Brian Pyles, Anna Asmun, Christian Donovan; meeting Ronald Shouse at 637 Steiner; letter Anna Ausman; phone conference Matthew Flannery; review James Neiberding filings | 1.00 | 350.00 |
| 05/03/23 | RB | Edit objection to John Klosterman motion to disqualify Magistrate Anita Berding; draft response to application for payment to TSO and Joseph Lentine; emails Allie Rice, John Klosterman, Robert Hines, Erin Lovitt, Kelley Allesee; review Gateway portal and Clerk of Courts website | 0.60 | 210.00 |
| 05/04/23 | RB | Phone conferences Kelley Allesee; texts Susan Zurface; review John Klosterman 5/3/23 filings; legal research; emails Christian Donovan and Brian Pyles, Alexis Royse | 1.20 | 420.00 |
| 05/05/23 | RB | Review John Klosterman filing; draft response to Joseph Lentine application; review Gateway portal; email Jennifer Donathan | 0.40 | 140.00 |
| 05/08/23 | RB | Review John Klosterman filings; legal research; review Gateway portal; phone conferences Kelley Allesee | 2.50 | 875.00 |
| 05/09/23 | RB | Emails Allie Rice; phone conferences Joseph Lentine; draft reply to TSO and Mr. Lentine application for payment | 1.00 | 350.00 |
| 05/10/23 | RB | Phone conferences Joseph Lentine and James Nieberding; emails Mr. Lentine, Susan Zurface, Kelley Allesee, Katrina Frei; edit response to TSO & Mr. Lentine application | 1.50 | 525.00 |
| 05/11/23 | RB | Emails Allie Rice | 0.10 | 35.00 |
| 05/15/23 | RB | Phone conference Kelly Allesee; review Gateway portal | 0.30 | 105.00 |
| 05/16/23 | RB | Review Gateway report; review Gateway portal; edit GCWW chart; email Kelley Allesee | 1.00 | 350.00 |
| 05/17/23 | RB | Emails Tony Searls and Kelley Allesee; assemble documents for review | 0.30 | 105.00 |
| 05/18/23 | RB | Emails Allie Rice and Cynthia Fischer | 0.20 | 70.00 |
| 05/19/23 | RB | Emails Cynthia Fischer; check docket sheets and Gateway portal | 0.20 | 70.00 |
| 05/22/23 | RB | Prepare for and attend conference with Cynthia Fischer | 0.50 | 175.00 |
| 05/23/23 | RB | Prepare for and attend hearing in State v. Klosterman; prepare for 5/24/23 status report | 0.60 | 210.00 |
| 05/24/23 | RB | Prepare for and attend hearing and report before Magistrate Berding; courthouse conferences Kelley | | |

EXHIBIT

R

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

Invoice No.:       ******
Invoice Date:      September 7, 2023
Page               12

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|------|---------------------|-------------|-------|--------|
| | | Allesee and Cynthia Fischer; James Nieberding and Joseph Lentine; check clerk's website on criminal actions; edit GCWW charts; phone conferences Mr. Lentine and Ms. Allesee | | |
| 05/25/23 | RB | Emails Kelley Allesee | 0.10 | 35.00 |
| 05/26/23 | RB | Docket checks | 0.10 | 35.00 |
| 05/30/23 | RB | Phone conferences Joseph Lentine; emails Kelley Allesee; draft affidavits as to service of notices to commence suit | 0.50 | 175.00 |
| 05/31/23 | RB | Phone conferences Cynthia Fischer; emails Allie Rice and David Donnett office; Kelley Allesee; edit affidavits of TSO/Joseph Lentine mechanic's liens | 0.50 | 175.00 |
| 06/01/23 | RB | Edit affidavits on TSO/Joseph Lentine mechanic's lien; emails David Donnett office | 0.30 | 105.00 |
| 06/02/23 | RB | Prepare for and attend office conferences Cynthia Fischer; phone conference Joseph Lentine; record 3 affidavits on service of notice to commence suit; emails Ms. Fischer and Kelley Allesee | 1.50 | 525.00 |
| 06/05/23 | RB | Office conference Cynthia Fischer; draft second receiver fee application etc.; organize pleadings files; emails Ms. Fischer and Kelley Allesee | 1.30 | 455.00 |
| 06/06/23 | RB | Draft receiver motion for fees and expenses and discharge and termination; review Landbank 6/5/23 filing | 0.70 | 245.00 |
| 06/07/23 | RB | Emails Allie Rice and Jennifer Donathan; phone conferences Kelley Allesee and Ms. Donathan | 0.30 | 105.00 |
| 06/08/23 | RB | Emails Nick Stone; review dockets sheets | 0.10 | 35.00 |
| 06/12/23 | RB | Edit second fee application; email Allie Rice | 0.50 | 175.00 |
| 06/20/23 | RB | Emails Amy Higgins | 0.10 | 35.00 |
| 06/21/23 | RB | Phone conference Allie Rice; review TriState Organization, Inc./Joseph Lentine filings; edit GCWW charts | 0.40 | 140.00 |
| 06/22/23 | RB | Review Gateway billing | 0.50 | 175.00 |
| 06/23/23 | RB | Edit Gateway charts; phone conference Cynthia Fischer | 0.10 | 35.00 |
| 06/26/23 | RB | Attend to GCWW billing; email Melissa Darby; prepare for 7/5/23 hearing; review docket sheets | 0.30 | 105.00 |
| 06/27/23 | RB | Edit Gateway billing charts | 0.10 | 35.00 |
| 06/28/23 | RB | Phone conference Cynthia Fischer; email Allie Rice; edit Gateway charts | 0.20 | 70.00 |
| 06/29/23 | RB | Prepare for attend meeting with Cynthia Fischer; draft | 1.50 | 525.00 |

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

Invoice No.:     ******
Invoice Date:    September 7, 2023
Page             13

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| | | affidavit | | |
| 06/30/23 | RB | Draft affidavit | 1.00 | 350.00 |
| 07/03/23 | RB | Edit affidavit; prepare for 7/5/23 hearings; review John Klosterman filing | 2.00 | 700.00 |
| 07/05/23 | RB | Edit affidavit; prepare for and attend hearings | 3.00 | 1,050.00 |
| 07/07/23 | RB | Phone conferences Amy Higgins and Cynthia Fischer; review John Klosterman 7/5/23 filing and clerk's website | 0.10 | 35.00 |
| 07/11/23 | RB | Review vexatious litigator order; check docket sheets; draft responses to 7/3 and 7/5/23 John Klosterman filings | 0.30 | 105.00 |
| 07/12/23 | RB | Edit second fee application; edit responses to 7/3 and 7/5/23 John Klosterman filings | 0.40 | 140.00 |
| 07/14/23 | RB | Edit second fee application | 0.40 | 140.00 |
| 07/17/23 | RB | Emails Sara Sheets, Tom Mullikan, Kelley Allesee and Nick Stone; review John Klosterman 7/14/23 filings | 0.20 | 70.00 |
| 07/21/23 | RB | Email Mark Grundy | 0.30 | 105.00 |
| 07/24/23 | RB | Review federal PPP litigation filings; phone conference Cynthia Fischer | 0.10 | 35.00 |
| 08/02/23 | RB | Edit second fee application | 0.20 | 70.00 |
| 08/04/23 | RB | Emails Allie Rice | 0.10 | 35.00 |
| 08/10/23 | RB | Email Allie Rice | 0.10 | 35.00 |
| 08/11/23 | RB | Prepare for and attend Google conference Allie Rice and Sabrina Hazen; edit second fee application | 0.50 | 175.00 |
| 08/14/23 | RB | Edit second fee application; email Cynthia Fischer | 0.30 | 105.00 |
| 08/15/23 | RB | Email John Klosterman; text Susan Zurface | 0.10 | 35.00 |
| 08/16/23 | RB | Email Allie Rice | 0.10 | 35.00 |
| 08/17/23 | RB | Emails Allie Rice | 0.10 | 35.00 |
| 08/21/23 | RB | Email John Klosterman | 0.10 | 35.00 |
| 08/25/23 | RB | Phone conference Cynthia Fischer | 0.30 | 105.00 |
| 08/28/23 | RB | Phone conference Cynthia Fischer; edit second fee application | 0.10 | 35.00 |
| 08/29/23 | RB | Draft memo in oppostion to John Klosterman 8/21/23 motion | 0.20 | 70.00 |

FEES FOR PROFESSIONAL SERVICES RENDERED                    $    28,035.00

OUT-OF-POCKET EXPENSES

| | | receiver at $300/hour | |
|---|---|---|---|
| date | description | time | amount |
| 5/22/23 | prepare for and attend conference with Cynthia Fischer | .50 | 150.00 |
| 5/23/23 | prepare for and attend hearing in State v. Klosterman; prepare for 5/24/23 status report | .60 | 180.00 |
| 5/24/23 | prepare for and attend hearing and report before Magistrate Berding; courthouse conferences Kelley Allesee and Cynthia Fischer; James Nieberding and Joseph Lentine; check clerk's website on criminal actions; edit GCWW charts; phone conferences Mr. Lentine and Ms. Allesee | 1.00 | 300.00 |
| 5/25/23 | emails Kelley Allesee | 0 | 0 |
| 5/26/23 | docket checks | 0 | 0 |
| 5/30/23 | phone conferences Joseph Lentine; emails Kelley Allesee; draft affidavits as to service of notices to commence suit | .20 | 60.00 |
| 5/31/23 | phone conferences Cynthia Fischer; emails Allie Rice and David Donnett office; Kelley Allesee; edit affidavits of TSO/Joseph Lentine mechanic's liens | .50 | 150.00 |
| 6/1/23 | edit affidavits on TSO/Joseph Lentine mechanic's lien; emails David Donnett office | 0 | 0 |
| 6/2/23 | office conference Cynthia Fischer; draft second receiver fee application etc.; organize pleadings files; emails Ms. Fischer and Kelley Allesee | 1.50 | 450.00 |
| 6/5/23 | office conference Cynthia Fischer; draft second receiver fee application etc.; organize pleadings files; emails Ms. Fischer and Kelley Allesee | 1.00 | 300.00 |
| 6/6/23 | draft receiver motion for fees and expenses and discharge and termination; review Landbank 6/5/23 filing | .10 | 30.00 |
| 6/7/23 | emails Allie Rice and Jennifer Donathan; phone conferences Kelley Allesee and Ms. Donathan | .30 | 90.00 |
| 6/8/23 | emails Nick Stone; review dockets sheets | 0 | 0 |
| 6/12/23 | edit second fee application; email Allie Rice | .50 | 150.00 |
| 6/20/23 | emails Amy Higgins | 0 | 0 |
| 6/21/23 | phone conference Allie Rice; review TriState Organization, Inc./Joseph Lentine filings; edit GCWW charts | .20 | 60.00 |
| 6/22/23 | review Gateway billing | 0 | 0 |

11

|  |  | receiver at $300/hour | |
|---|---|---|---|
| date | description | time | amount |
| 6/23/23 | edit Gateway charts; phone conference Cynthia Fischer | .20 | 60.00 |
| 6/26/23 | attend to GCWW billing; email Melissa Darby; prepare for 7/5/23 hearing; review docket sheets | .70 | 210.00 |
| 6/27/23 | edit Gateway billing charts | .50 | 150.00 |
| 6/28/23 | phone conference Cynthia Fischer; email Allie Rice; edit Gateway charts | .30 | 90.00 |
| 6/29/23 | prepare for attend meeting with Cynthia Fischer; draft affidavit | 0 | 0 |
| 6/30/23 | draft affidavit | 1.00 | 300.00 |
| 7/3/23 | edit affidavit; prepare for 7/5/23 hearings; review John Klosterman filing | 0 | 0 |
| 7/5/23 | edit affidavit; prepare for and attend hearings | 0 | 0 |
| 7/7/23 | phone conferences Amy Higgins and Cynthia Fischer; review John Klosterman 7/5/23 filing and clerk's website | .50 | 150.00 |
| 7/11/23 | review vexatious litigator order; check docket sheets; draft responses to 7/3 and 7/5/23 John Klosterman filings | .20 | 60.00 |
| 7/12/23 | edit second fee application; edit responses to 7/3 and 7/5/23 John Klosterman filings | .40 | 120.00 |
| 7/14/23 | edit second fee application | 0 | 0 |
| 7/17/23 | emails Sara Sheets, Tom Mullikan, Kelley Allesee and Nick Stone; review John Klosterman 7/14/23 filings | .20 | 60.00 |
| 7/21/23 | email Mark Grundy | 0 | 0 |
| 7/24/23 | review federal PPP litigation filings; phone conference Cynthia Fischer | .20 | 60.00 |
| 8/11/23 | prepare for and attend Google Conference with Allie Rice and Sabrina Hazen; edit second fee application | .50 | 150.00 |
| 8/14/23 | Edit second fee application; email Cynthia Fischer | .20 | 70.00 |
| | totals | 124.60 | $37,390.00 |

12

22699801.v3

HAMILTON COUNTY

MAR 29 2021

BOARD OF REVISION

Tax year_____ BOR no. *2020-0515260*    DTE 1 Rev. 02/19

County_____ Date received _____

## Complaint Against the Valuation of Real Property

Answer all questions and type or print all information. Read instructions on back before completing form.
Attach additional pages if necessary.
This form is for full market value complaints only. All other complaints should use DTE Form 2

☒ Original complaint    ☐ Counter complaint
Notices will be sent only to those named below.

| | Name | Street address, City, State, ZIP code |
|---|---|---|
| 1. Owner of property | VIRGINIA WILLIAMSBURG LLC | 5615 SIDNEY ROAD, CINCINNATI, OH 45238 |
| 2. Complainant if not owner | KONZA LLC | 1635 DEXTER AVENUE, CINCINNATI, |
| 3. Complainant's agent | RICHARD BOYDSTON | 45206-1459 |
| 4. Telephone number of contact person | 513. 455. 7663 | |
| 5. Email address of complainant | richard.boydston@dentons.com | |
| 6. Complainant's relationship to property, if not owner | RECEIVER PER 2/14/20 ORDER IN CASE NO A1905588 | |

If more than one parcel is included, see "Multiple Parcels" on back.

| 7. Parcel numbers from tax bill | Address of property |
|---|---|
| 155-0048-0001-00 | 685 HALSEY, CINCINNATI, OH 45204 |
| | |
| | |

8. Principal use of property **RESIDENCE**

9. The increase or decrease in market value sought. Counter-complaints supporting auditor's value may have -0- in Column C.

| Parcel number | Column A Complainant's Opinion of Value (Full Market Value) | Column B Current Value (Full Market Value) | Column C Change in Value |
|---|---|---|---|
| 155-0048-0001-00 | 1,000 | 23,520 | 22,520 |
| | | | |
| | | | |

10. The requested change in value is justified for the following reasons:
SEE 3/2/21 LETTER FROM JENNIFER DONATHAN ATTACHED AND
9/15/20 AND 9/22/20 LETTERS FROM CITY OF CINCINNATI

11. Was property sold within the last three years? ☐ Yes ☒ No ☐ Unknown If yes, show date of sale_____
and sale price $ _____ ; and attach information explained in "Instructions for Line 11" on back.
12. If property was not sold but was listed for sale in the last three years, attach a copy of listing agreement or other available evidence.
13. If any improvements were completed in the last three years, show date _____ and total cost $ _____
14. Do you intend to present the testimony or report of a professional appraiser? ☒ Yes ☐ No ☐ Unknown
15. If you have filed a prior complaint on this parcel since the last reappraisal or update of property values in the county, the reason for the valuation change requested must be one of those below. Please check all that apply and explain on sheet. See R.C. section 5715.19(A)(2) for a complete explanation.

☐ The property was sold in an arm's length transaction.    ☐ The property lost value due to a casualty.
☐ A substantial improvement was added to the property.    ☐ Occupancy change of at least 15% had a s[...] economic impact on my property.

EXHIBIT
O, P, Q

I declare under penalties of perjury that this complaint (including any attachments) has been examined by me and [...]
knowledge and belief is true, correct and complete.

Date 3-29-2021 Complainant or agent _Richard Boydston, Manager Konza LLC_    Title Manager RECEIVER

Sworn to and signed in my presence, this 29th day of _____

Notary _____ Signature

RHONDA E. DOVE
Notary Public, State of Ohio
My Commission Expires
10-19-2024

Case: 26-3149   Document: 11   Filed: 04/23/2026   Page: 164

*Exhibit C*
*2 pgs*

**HAMILTON COUNTY**
**MAR 29 2021**
**BOARD OF REVISION**

Tax year _____ BOR no. 2020-051560  DTE 1 Rev. 02/19

County _____ Date received _____

## Complaint Against the Valuation of Real Property

Answer all questions and type or print all information. Read instructions on back before completing form.
Attach additional pages if necessary.
This form is for full market value complaints only. All other complaints should use DTE Form 2

☒ Original complaint   ☐ Counter complaint
Notices will be sent only to those named below.

| | Name | Street address, City, State, ZIP code |
|---|---|---|
| 1. Owner of property | VIRGINIA WILLIAMSBURG LLC | 5615 SIDNEY ROAD, CINCINNATI O 452 |
| 2. Complainant if not owner | KONZA LLC | 1635 DEXTER AVENUE, CINCINNATI |
| 3. Complainant's agent | RICHARD BOYDSTON | 45206-1459 |
| 4. Telephone number of contact person: 513.455.7663 | | |
| 5. Email address of complainant: richard.boydston@dentons.com | | |
| 6. Complainant's relationship to property, if not owner: RECEIVER PER 2/14/20 ORDER IN CASE NO A1905 | | |

If more than one parcel is included, see "Multiple Parcels" on back.

| 7. Parcel numbers from tax bill | Address of property |
|---|---|
| 155-0048-0001-00 | 865 HALSEY, CINCINNATI, OH 45204 |

8. Principal use of property: RESIDENCE

9. The increase or decrease in market value sought. Counter-complaints supporting auditor's value may have -0- in Column C.

| Parcel number | Column A Complainant's Opinion of Value (Full Market Value) | Column B Current Value (Full Market Value) | Column C Change in Value |
|---|---|---|---|
| 155-0048-0001-00 | 1,000 | 23,520 | 22,520 |

10. The requested change in value is justified for the following reasons:
SEE 3/21/21 LETTER FROM JENNIFER DONATHAN ATTACHED AND 9/16/20 AND 9/22/20 LETTERS FROM CITY OF CINCINNATI

11. Was property sold within the last three years? ☐ Yes ☒ No ☐ Unknown If yes, show date of sale _____ and sale price $ _____; and attach information explained in "Instructions for Line 11" on back.
12. If property was not sold but was listed for sale in the last three years, attach a copy of listing agreement or other available evidence.
13. If any improvements were completed in the last three years, show date _____ and total cost $ _____.
14. Do you intend to present the testimony or report of a professional appraiser? ☒ Yes ☐ No ☐ Unknown
15. If you have filed a prior complaint on this parcel since the last reappraisal or update of property values in the county, the reason for the valuation change requested must be one of those below. Please check all that apply and explain on attached sheet. See R.C. section 5715.19(A)(2) for a complete explanation.
☐ The property was sold in an arm's length transaction.   ☐ The property lost value due to a casualty.
☐ A substantial improvement was added to the property.   ☐ Occupancy change of at least 15% had a substantial economic impact on my property.

I declare under penalties of perjury that this complaint (including any attachments) has been examined by me and to the best of my knowledge and belief is true, correct and complete.

Date 3-29-2021  Complainant or agent _Richard Boydston, Manager Konza LLC_

Sworn to and signed in my presence, this 29th day of March 2021
Notary _Rhonda E Dove_

RHONDA E. DOVE
Notary Public, State of Ohio
My Commission Expires
10-19-2024

---

**HAMILTON COUNTY**
**MAR 29 2021**
**BOARD OF REVISION**

Tax year _____ BOR no. 2020-051556  DTE 1 Rev. 02/19

County _____ Date received _____

## Complaint Against the Valuation of Real Property

Answer all questions and type or print all information. Read instructions on back before completing form.
Attach additional pages if necessary.
This form is for full market value complaints only. All other complaints should use DTE Form 2

☒ Original complaint   ☐ Counter complaint
Notices will be sent only to those named below.

| | Name | Street address, City, State, ZIP code |
|---|---|---|
| 1. Owner of property | JOHN KLOSTERMAN | 5615 SIDNEY, CINCINNATI, OH 4523 |
| 2. Complainant if not owner | KONZA LLC | 1635 DEXTER, CINCINNATI, OH |
| 3. Complainant's agent | RICHARD BOYDSTON | 45206-1459 |
| 4. Telephone number of contact person: 513.455.7663 | | |
| 5. Email address of complainant: richard.boydston@dentons.com | | |
| 6. Complainant's relationship to property, if not owner: RECEIVER PER 2/4/20 ORDER IN CASE NO: A1905588 | | |

If more than one parcel is included, see "Multiple Parcels" on back.

| 7. Parcel numbers from tax bill | Address of property |
|---|---|
| 153-0002-0864-00 | 636 DELHI, CINCINNATI, OH 45204 |

8. Principal use of property: TWO FAMILY RESIDENCE

9. The increase or decrease in market value sought. Counter-complaints supporting auditor's value may have -0- in Column C.

| Parcel number | Column A Complainant's Opinion of Value (Full Market Value) | Column B Current Value (Full Market Value) | Column C Change in Value |
|---|---|---|---|
| 153-0002-0864-00 | 50,000 | 36,420 | 13,580 |

10. The requested change in value is justified for the following reasons:
SEE 3/21/21 LETTER FROM JENNIFER DONATHAN ATTACHED

11. Was property sold within the last three years? ☐ Yes ☒ No ☐ Unknown If yes, show date of sale _____ and sale price $ _____; and attach information explained in "Instructions for Line 11" on back.
12. If property was not sold but was listed for sale in the last three years, attach a copy of listing agreement or other available evidence.
13. If any improvements were completed in the last three years, show date _____ and total cost $ _____.
14. Do you intend to present the testimony or report of a professional appraiser? ☒ Yes ☐ No ☐ Unknown
15. If you have filed a prior complaint on this parcel since the last reappraisal or update of property values in the county, the reason for the valuation change requested must be one of those below. Please check all that apply and explain on attached sheet. See R.C. section 5715.19(A)(2) for a complete explanation.
☐ The property was sold in an arm's length transaction.   ☐ The property lost value due to a casualty.
☐ A substantial improvement was added to the property.   ☐ Occupancy change of at least 15% had a substantial economic impact on my property.

I declare under penalties of perjury that this complaint (including any attachments) has been examined by me and to the best of my knowledge and belief is true, correct and complete.

Date 3-29-2021  Complainant or agent _KONZA LLC_  Title agent

Sworn to and signed in my presence, this 29th day of March 2021
Notary _Rhonda E Dove_

RHONDA E. DOVE
Notary Public, State of Oh
My Commission Expires
10-19-2024



Jennifer M. Donathan
KW Commercial
3505 Columbia Parkway, Ste. 125
Cincinnati, Ohio 45226
Telephone: 513-520-3540

March 21, 2021

Richard Boydston
Dentons Bingham Greenebaum LLP
312 Walnut Street, Suite 2450
Cincinnati, OH, 45202
richard.boydston@dentons.com

RE:   685 Halsey Avenue
      Cincinnati, Ohio
      Parcel ID: 155-0048-0001-00

Dear Mr. Boydston,

As requested, I have inspected the above referenced property for the purpose of estimating the fee simple interest or "fair market value" of the subject property. I have analyzed information pertinent to the formulation of the value estimate and am reporting the conclusions in this report.

No personal property is included in this report. The value opinion is qualified by limiting conditions which are set forth in this report.

This report was prepared for Richard Boydston and is intended to assist Mr. Boydston n in determining the "fair market value" of the property located at 685 Halsey Avenue and known as parcel ID 155-0048-0001-00.

The estimated value is based on a personal site visit. After careful consideration of the factors pertaining to and influencing the subject's fair market value the data and analysis supports the following final market value opinion for the subject property as of March 17, 2021:

**$1000.00 "As-Is"**

I am pleased to provide you with my professional services. If you have any questions, please do not hesitate to call.

Sincerely,

Jennifer M. Donathan
Licensed Real Estate Agent (Ohio License 2004004706)
Commercial Real Estate Specialist

 **U-HAUL** Receipt



**In-Town Return (In)**

**Contract No:** 99570202
Saturday, September 19, 2020 11:42 AM

U-HAUL MOVING & STORAGE AT
GLENCROSSING WAY
770028

5131 GLENCROSSING WAY
CINCINNATI, OH 45238

(513) 322-5165

**Customer Name:**
JOHN KLOSTERMAN
5615 Sidney Road
CINCINNATI, OH 45238

**Cust Ph - EMail:**
(513) 250-2610
worldwidemobile@hotmail.com

**Authorized Driver(s):** JOHN KLOSTERMAN

**Rental Date/Time:** 9/17/2020 8:00 AM
**Return Date/Time:** 9/19/2020 11:40 AM
**Chargeable Rental Periods:** 3

| Equipment | Coverage | Missing/Damage Charge | Rental Rate | Rental Charge | Actual Charges |
|---|---|---|---|---|---|
| RV - 6' x 12' Van Trailer RV2817D 63477R - TN | No Coverage: $0.00 | $0.00 | $29.95 | $89.85 | $89.85 |

| | | |
|---|---|---|
| | **Subtotal:** | $89.85 |
| | **Rental Tax:** | $6.29 |
| | **Total Rental Charges** | $96.14 |

**Card Type:** Visa
**Account:** XXXX-XXXX-XXXX-8250
**Type:** PAYMENT
**Ref No.:** 
**Approved:** 080054

**Entry Method:** MAG  **Application Label:** Visa  **Merchant ID:** 4445013037820
**Term ID:** 003

**Credit Card Payment:** $96.14
**Net Paid Today:** $96.14

- I confirm that during the term of my rental there was not an accident involving the rented U-Haul equipment and no incidence where this equipment struck or otherwise caused damage to any person or property either while on a public road or private property. There was no injury or damage sustained by me or any other drivers or passengers of this equipment.

Antoine Rucker jr.

X _____

JOHN KLOSTERMAN

U-Haul Signature - (Antoine Rucker jr.)

MobileContractClose



EXHIBIT
S



133398 - 37733

09/01/2020 thru 09/30/2020
Account Number: 921797

## ID 80 - SHARE CHECKING (Continued)

| Date | Withdrawal | Deposit | Balance | Transaction Description |
|---|---|---|---|---|
| 09/05/2020 | -19.94 | | 3,499.92 | Withdrawal POS #701639<br>UNITED DAIRY FAR CINCINNATI OH |
| 09/05/2020 | -74.99 | | 3,424.93 | Recurring Withdrawal Bill Payment #022328<br>SPECTRUM 855-707-7328 OH |
| 09/06/2020 | -31.65 | | 3,393.28 | Withdrawal POS #079527<br>PILOT #0242 SHELBYVILLE IN |
| 09/07/2020 | -64.99 | | 3,328.29 | Recurring Withdrawal Bill Payment #014381<br>SPECTRUM 855-707-7328 OH |
| 09/07/2020 | -600.00 | | 2,728.29 | Withdrawal Debit Card CHECK CARD<br>09/07 0449215000004961 8496180 PP*GEIENGRGR 402-935-2244 OH |
| 09/08/2020 | | 650.00 | 3,378.29 | Deposit ACH VENMO<br>TYPE: CASHOUT CO: VENMO |
| 09/08/2020 | | 750.00 | 4,128.29 | Deposit ACH VENMO<br>TYPE: CASHOUT CO: VENMO |
| 09/09/2020 | | 730.00 | 4,858.29 | Deposit ACH Square Inc<br>TYPE: * Cash App CO: Square Inc |
| 09/09/2020 | -8.39 | | 4,849.90 | Withdrawal POS #163511<br>THE HOME DEPOT #3822 CINCINNATI OH |
| 09/10/2020 | | 500.00 | 5,349.90 | Deposit ACH VENMO<br>TYPE: CASHOUT CO: VENMO |
| 09/10/2020 | -38.66 | | 5,311.24 | Withdrawal Debit Card CHECK CARD<br>09/09 0461043000000271 8027180 THE HOME DEPOT #3822 CINCINNATI OH |
| 09/14/2020 | | 651.30 | 5,962.54 | Deposit XXSOC SEC |
| 09/14/2020 | -185.00 | | 5,777.54 | Withdrawal ACH STATE FARM RO 27<br>TYPE: SFPP CO: STATE FARM RO 27 |
| 09/16/2020 | -36.03 | | 5,741.51 | Withdrawal Debit Card CHECK CARD<br>09/15 0427074000007003 4700340 DEPS FINE WINE & SPIRI COVINGTON KY |
| 09/16/2020 | | 736.00 | 6,477.51 | Deposit |
| 09/16/2020 | -100.00 | | 6,377.51 | Withdrawal |
| 09/17/2020 | -29.57 | | 6,347.94 | Withdrawal POS #132408<br>SPEEDWAY 05268 5 595 ANDE CINCINNATI OH |
| 09/17/2020 | -24.74 | | 6,323.20 | Withdrawal POS #195271<br>BP#3747110HEBRON TRAVEL 10679 LANCASTR RD HEBRON OH |
| 09/18/2020 | -53.11 | | 6,270.09 | Withdrawal POS #516652<br>SPEEDWAY 09271 P 1711 HIL PICKERINGTON OH |
| 09/19/2020 | -10.00 | | 6,260.09 | Recurring Withdrawal Bill Payment #068018<br>TWP*SUB28626861 WAPO.COM DC |
| 09/20/2020 | -13.90 | | 6,246.19 | Recurring Withdrawal Bill Payment #091645<br>Amazon Prime*M45J830F2 Amzn.com/bill WA |
| 09/20/2020 | -15.01 | | 6,231.18 | Withdrawal POS #632479<br>KROGER FUEL #443 2310 FERGUSON RD CINCINNATI OH |
| 09/20/2020 | -96.14 | | 6,135.04 | Withdrawal Debit Card CHECK CARD<br>09/17 0413746000003703 8370380 U-HAUL MOVING & STORAGE A CINCINNATI OH |
| 09/21/2020 | -10.51 | | 6,124.53 | Withdrawal POS #898020<br>THE HOME DEPOT #3822 CINCINNATI OH |
| 09/23/2020 | -2.00 | | 6,122.53 | Withdrawal Debit Card CHECK CARD<br>09/22 0405522000004051 2405120 CINCINNATI PARKING FEE CINCINNATI OH |
| 09/25/2020 | -8.02 | | 6,114.51 | Withdrawal POS #466678<br>Lyft *Ride Fri 2pm SAN FRANCISCO CA |

*8.20 AM* (handwritten)

*10:46* (handwritten)

HAMILTON COUNTY MUNICIPAL COURT
JOURNAL ENTRY - MITTIMUS

PAGE: _____

PRE-ROLL: **GREENBERG/BRAD**
ACTIVATE DATE: 09/23/2020

CASE: **/20/CRB/17905**      COMM. CONTROL
VIOL.:

DEFENDANT: **KLOSTERMAN/JOHN**
CTLNO: **778594**        TICKET:
SEC. VIOL: **2903-211 ORCN**
CHARGE: **MENACING BY STALKING**
ARREST DATE: **09/22/2020**
JMS_NUMBER: **1718141**
SEX: **M**        D.O.B. **10/13/1949**
DEF. COUNSEL:
PROS. WIT: **HELTON/PO**

| CLERK'S USE ONLY |
| --- |
| INITIALS: _____ |
| PAYMENT DATE: _____ |
| RECEIPT NO: _____ |
| FINE: _____ |
| COSTS: _____ |
| CONCAR: _____ |
| WIT FEES: _____ |
| JURY FEES: _____ |
| P.D. FEES: _____ |
| LIP FEE: _____ |
| BMV FEE: _____ |
| TOTAL PAID: _____ |

TO THE SHERIFF OF HAMILTON COUNTY, GREETINGS: Where as, the above defendant was arrested and charged with the above section number. For good cause shown, the defendant is ordered to give bail in the sum indicated below. You are, therefore, commanded to receive the defendant into your custody until the trial date, or until he/she gives bail as ordered. Or, whereas, the above defendant, having been tried and convicted of said charge(s) is sentenced, as indicated below. Therefore, we command you to receive the defendant into your custody, there to remain until he/she has fully executed the terms of the sentence, or until otherwise discharged by due course of law.

| DATE | ACTION | SIGNATURE OF JUDGE/MAGISTRATE |
| --- | --- | --- |
| 09/23/2020 9:00 am ENTERED SEP 23 2020 | JCA Arraignment - Probable cause to hold demonstrated ( ) YES ( ) NO OR/ $_____ Unsecured bond per Crim.R.46(A)(1) $ _2500_ Bond @10% per Crim.R.46(A)(2) or (3) $_____ Secured Bond per Crim.R.46(A)(3) Only Conditions: + EMU/JM q regtd/GPS + "stay away" Angela Strunk NG etc | BRATTON/JANAYA/TRO *(signature)* |
| | **NOT GUILTY** **REFER TO AC** /20/CRB/17905   KLOSTERMAN/JOHN    PC   CDOO COURT DATE:10/05/20 AT  9:00 AM IN ROOM 164 COURTHOUSE | |
| Date | The decision of the magistrate is adopted and the recommended sentence is entered as the judgment of the court. | Judge |

**EXHIBIT**
**T**



**D137844386**

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

CITY OF CINCINNATI, HCLRC

    Plaintiff's,

(

       v.

JOHN KLOSTERMAN,et al.

    Defendants.,

Case No. A2300473

(     Judge Jody M. Luebbers
(     Magistrate Anita Berding

(

(   LETTER INFORMING THE COURTS

(   OF AN IMPENDING RICO ACTION

---

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238

April 3, 2023

  Dear The Honorable Jody M. Luebbers, and

The Honorable Anita Berding,

    Defendant is writing to bring attention to a matter of concern related to the ongoing cases involving Defendant and The City of Cincinnati, its agents, and Hamilton County Land Reutilization Corporation (HCLRC) as the plaintiff's in your respective courts.

    Defendant has reason to believe that the plaintiffs filed a vexatious litigation against me without merit. Furthermore, it is known by plaintiff that Defendant is preparing to file a civil RICO action against some of the (unnamed) plaintiffs, which may be causing the plaintiffs to file a flurry of motions against Defendant in order to prevent this action.

    Defendant also understands that Mr. Boydston is seeking approval of fraudulent payments even before the closing has been approved before the RICO action is filed, which.



EXHIBIT
U

further suggests a coordinated effort by the plaintiffs to harass and damage Defendants legal position.

Defendant has been stonewalled at every step of this case by the Plaintiffs. The Plaintifs have made obfuscation an art form. Defendant, after 10 request still has no bank statements to review from TSO, as well as dozens of business documents.

The RICO action called THE RECEIVERSHIP SCHEME will highlight : Wire faud, Collusion, Obstruction of Justice, Money Laundering, Conspiracy, and Racketeering in a skillfully planned enterprise scheme. The predicate claims which the Plaintiff has clearly defined, are closely related to the U.S. Government case No. 1:21mj633. The FBI's arrest of two of the defendants Mr Lentine and Ms. Strunk, dovetail with indisputable evidence with the cases before each of you.

Defendant wants to assure the court that the upcoming RICO action is based on solid evidence, and is not to delay the closing of this action. Defendant wants nothing to do with the properties after what Konza, LLC and Mr. Boydston allowed happen to them. They are a disaster. As Ms Allesee attested to Magistrate Berding, in a recent hearing, the issues before us "are the tip of the iceberg" she stated. Mr. Lentine should have been fired 33 months ago.

Defendant's actions and motions for 3 years have been exactly what the HCLRC filed in its first substantive motion asking for a review of TSO's accounting and the work performed. That is a lose term for AUDIT in the business world. TSO had no Standard Accounting Standards employed, even when Quick Books was ready to use.

Defendant believes that this action is necessary to bring to light the illegal activities of the plaintiffs and seek redress for the damages they have caused Defendant and his family where to date Defendant has found none.

"It is dangerous to be right when the government is wrong." Voltaire (1694-1778)

Sincerely,

John Klosterman

johncklosterman@gmail,com
All parties have been served via Email



D138716398

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

HAMILTON COUNTY LAND

REUTILIZATION CORPORATION          Case No. A2300473

HCLRC,

    Plaintiff's,                          (Judge Wende C. Cross)

                            (Magistrate A. Berding)

    v.

JOHN KLOSTERMAN,

Defendants,

---

**AFFIDAVIT of John Klosterman**

---

**STATE OF OHIO**          )

                 ) ss:

**COUNTY OF HAMILTON** )



1. I john Kosterman purchased and rehabbed my first house at 638 Steiner Avenue in 1979.

2. Over 35 years I have purchased and paid for 24 real properties and about 40 empty lots. I have personally managed the rehabilitation of most of them.

3. March 2020 COVD 19 struck.

4. I was originally satisfied with Mr. Boydston and Joseph Lentine, who had worked together in another case. It made me feel comfortable that, in the generally promised time frame the case would come to a close.

5. Mr Lentine told me personally that he was going to take advantage of the PPP funds under the Cares Act. Little did I know that he was going to pursue it in an illegal manner.

6. The receivership began on March 1. Joseph Lentine introduced me to Keith Lee, his contractor on or about March 2020. He and his 2 experienced professionals would do all the work to ready them for rent and sale under the guidance of receiver Konza, LLC.

7. Mr. Lee stated that the monies available to him ($6000.00) would be sufficient to complete the tasks. The easily completed rentals, the "low hanging fruit" would provide the additional resources needed to complete the project in the time frame estimated to be no more than 4 months. He and I agreed on the estimated budget. Job costing software would handle the reporting.

8. "Due diligence", Klosterman took the time to review completed jobs. I visited the current work sites of Mr. Lee and was satisfied that he could easily perform the tasks. It would be nearly 12 months before rental income reached just under $10,000.00, after beginning with nearly $8,500.00. The units were completed with unskilled personnel from a pizza operation, and the units looked terrible on inspection.

9. Klosterman never saw Keith Lee again. I asked time and time again where he was. No reliable answer was given. Mr. Keith Lee became one of Mr. Lentines PPP fraud customers in the U.S. case against Mr. Lentine and his co-defendant Angel Strunk.

10. I had in the early 90s developed accounting packages for computers and sold them for many years to doctors in the City of Cincinnati, so I was well versed in accounting procedures and audits of troubled accounting practices in doctors offices and what automation would do to solve many of the issues that are associated with manual accounting.

11. Dentons agent Mr Boydston and I agreed on a "cash" accounting basis instead of accrual. I volunteered to purchase QuickBooks and paid Angel Strunk to set up each of the properties for Job Costing as well as Payroll. It was ready March 1, 2020.

12. The first month, I received the management report early in April 2020. It had very questionable charges listed. There was no accounting to speak of, no balance sheet, no bank statements, no payroll records. (exhibit a)

13. I called and emailed Konza, LLC,s manager, Dentens agent Richard Boydston and shared my concerns with regard to the accounting and work performed. I asked both Mr Lentine and Mr Boydston where Keith Lee was, because nothing was getting done.

No answers.

14. At the end of the second month when I received the management report in early May, I was more disturbed. I emailed my deep concerns and suspicions at why Mr. Boydston, an experienced bankruptcy attorney, plus the agreement to use QuickBooks for job cost, and regular accounting was not being used.

15. The FBI visits me at my home the 1st of 2 times, to discuss Mr. Lentine's financial crimes which included Sedamsville and the laundering of money using the receivership properties.

16. I now have a convicted financial felon who is managing millions of dollars worth of historic properties and over 34 months collected and kept $437,000.00 in rents and deposits with no accounting whatsoever. Konza, LLC said, and did nothing. HCLRC and Dinsmore & Shohl LLP , in their affidavit, blames TSO and Joseph Lentine for the now known tragic disaster that happened to historic buildings.

17. Dinsmor's Ms. Fischer's affidavit, nor the HCLRC in their first statement to the court never mention who possibly could have let all this criminality happen. No one and no organization was mentioned. It seemed that Mr. Lentine answered to no one. How could Dentions agent, Richard Boyston the manager and sole owner of Konza, LLC the receiver, who is an experienced bankruptcy attorney, could possibly allow this to be happening in 2020.

18. I filed a motion in court in the third month that an audit was needed on the business records and of the work that was being done.

19. Klosterman's motions early in 2020 were all dismissed having no merit. I knew from my over 20 years of accounting experience that there was a criminal enterprise underway and it was verified by the meetings with the FBI.

20. In early July when I received the Third management report I knew that I had made the wrong decision or that the receiver and the management company were not the right people to ready the properties for sale to satisfy the city of Cincinnati's judgment against me.

21. I told the courts in motions that there was criminal activity happening. I knew I was becoming a thorn in both Mr Lentine's operations. I was questioning Mr Boydston's motives for keeping Mr Lentine and TSO on the job.

22. On or about July the 15th 2020 the FBI visited me at my home and questioned me concerning financial crimes Joseph Lentini was involved in. I was sworn to secrecy while the investigation progressed.

23. I shared the management reports and the fraudulent activity that he had been perpetrating. I suspected and told them that he was planning to obtain PPP funds. It was verified by the fact of no accounting. There were no bank deposit sheets, balance sheets or job costing which I had paid for and set up for them early in March.

24. I felt that very soon there would be a change in the management of my properties, and that Konza, LLC and its manager would potentially be replaced for failure of their fiduciary duties. Shockingly it did not happen.

25. In the meantime I kept letting the courts and Mr Boydston in no uncertain terms that

TSO was running a criminal enterprise and Mr Boydston was allowing it to happen.

26. On September 17th 2020 , at 8:15 am I stopped at U-Haul and picked up a six foot by 12 ft covered trailer for my truck and stopped in Sedamsville to drop off pet supplies for my cats at my office and headed to Pittsburgh to assist my daughter with her move to Indianapolis at close to 9:00 am on the 17th I set out.

27. I returned on Sunday the 19th. The 20th I found that I was charged with stalking Angel Strunk . She was my tenant, and I knew where she worked, so I knew it was a setup immediately. It was my first criminal charge in my entire life.

28. The FBI finally arrested Lentine and his co-defendant Angel Strunk on 8/31/2021.

29. Keith Lee was one of their customers and was arrested as well.

30. The nightmare began and continues to this very day.

31. The criminal charges were weaponized against me to protect Mr Boydston and Konza LLC's inactions.

32. The arrest of Mr Lentine and Angel Strunk in August 2021 made no difference, and they continued with their operation. They needed time to launder the money which was why the project was entering its second full year, and finally they were fired with pressure from the City and HCLRC. They were on the take for 34 months.

33. I reviewed 4100 business records of TSO. They prove that there was truly a criminal enterprise happening. However, still, no bank statements have ever been seen after

multiple requests. It further proves that Dentons agent Mr Boydston allegedly was in on the fix and that he himself was involved in racketeering with Denton full knowledge.

34. I receive Mr. Boydston's "Legal Billings" for 34 months in December 2022, not only for himself but billings for Konza, LLC, the receiver.   Billings of about $200,000.00.

35. It was not only fraudulent double billing. It was filed and approved to be paid out of the proceeds of the sale of the properties. Four sheets shown side by side show the fraudulent double billing. ( exhibit b)

### IN CLOSING

All the receiver had to do was to hire a competent licensed Real Estate Management Company and ready the properties, which would have taken three to four months. Conduct a fair and legitimate sales auction. Settle the debts of the defendant. The defendant would walk away with the balance in what would have been the highest valuation of properties ever in the CIty of Cincinnati and nationwide.

Instead we have a failed receivership, Konza, LLC, and for whatever reason a compromised receivership's manager. That was not to be, it was ripe with fraud from the beginning. Over $300,000.00 in damages to the properties with 3 uninsured fires of 3 of the most historic units in Sedamsville. Historic Sedamsville , and its housing stock, which 98% of the 135 properties are on theNational Register of Historic Palaces has been set back over 3 years.  It did not have to happen that way.

FURTHER  AFFIANT SAYETH NAUGHT.

I affirm under the penalties for perjury that the above and foregoing statements and representations are true and correct.

STATE OF OHIO              )                    John Klosterman

                          ) ss:

COUNTY OF HAMILTON   )

Sworn to and subscribed before me, a Notary Public, on this 14 day of July,2023.

Notary Public

**AUSTIN T. STEPHENS**
Notary Public, State of Ohio
My Commission Expires
February 05, 2028
COMMISSION: 2023-RE-859414