RECEIVED

JUN 0 4 2026

KELLY L. STEPHENS, Clerk

No. 26-3149

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

JOHN KLOSTERMAN,
Plaintiff-Appellant,

v.

CITY OF CINCINNATI; TERRY JAMES; KONZA, LLC; RICHARD BOYDSTON;
DENTONS BINGHAM GREENEBAUM LLP; FRI MASON, LLC (d/b/a KELLER
WILLIAMS REALTY); JENNIFER DONATHAN; et al.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Southern District of Ohio, Western Division
Case No. 1:25-cv-00312-SJD-KLL  (Hon. Susan J. Dlott)

---

**APPELLANT'S CONSOLIDATED REPLY BRIEF**
(Responding to the Separate Answer Briefs of All Appellees)

---

John Klosterman
Pro Se Appellant
5615 Sidney Road, Cincinnati, Ohio 45238
(513) 250-2610 | johncklosterman@gmail.com

1

**TABLE OF CONTENTS**

INTRODUCTION: A CONFESSED RICO ENTERPRISE, MET WITH SILENCE ........... 1

PART ONE — THE LEDGER: WHAT THE RECORD ALREADY PROVES .................. 5

PART TWO — THE EMPEROR HAS NO CLOTHES: THE APPELLEES'

    FIFTY PAGES NEVER REACH THE FRAUD ...........................................................10

    I.  Jurisdiction Cannot Be Forfeited ................................................................ 10

    II.  Barton Does Not Shield Acts Reaching Outside the Estate ......................... 10

    III. Rooker-Feldman Does Not Bar Conduct-Based Fraud ................................ 11

    IV.  The City Adopts Boydston's Doctrines — Which Part III Defeats ....................... 12

    V.  Keller Williams / Donathan: Threshold Defenses Fail; 2022 Timely ....................... 16

    VI.  The Pattern Is Open-Ended and Continuing ................................................ 16

PART THREE — THE DISTRICT COURT'S REVERSIBLE ERRORS ........................... 17

CONCLUSION AND ORDERS REQUESTED ON REMAND ....................................... 19

CERTIFICATE OF COMPLIANCE / CERTIFICATE OF SERVICE ................................. 21

**INTRODUCTION: A CONFESSED RICO ENTERPRISE, MET WITH SILENCE**

This is the rare civil RICO appeal in which the defendants have already confessed — not through cooperating witnesses or wiretaps, but through their own sworn testimony and their own filed court papers. The court-appointed receiver, Richard Boydston/Konza, testified under oath that the price paid for Appellant's fifty-nine properties was not their value but a figure "calculated to satisfy the expenses of the receivership." In a filing of his own, he described his role as incurring fees to "obtain" the sale and to make "delivery" of the estate to the Hamilton County Land Reutilization Corporation — and he called the order silencing Appellant a "fix." A receiver conducting a lawful auction does not "deliver" property to a pre-selected recipient. He sells it. Deliveries go to people promised the goods in advance.

Against that record, the three appellee groups filed roughly fifty pages between them — and said nothing about any of it. The Boydston Defendants wrote fifty-seven pages without once denying the engineered-sale admission. The City wrote about jurisdiction and immunity, but did not deny that it funded and directed the receivership whose costs the price was reverse-engineered to cover. Keller Williams and Donathan did not mention the $25,000 their agent offered a federally indicted witness to sign a non-disclosure agreement and disappear. A brief that means to defend a receivership against a charge of fraud does not pass over the fraud in silence. These briefs do. Their silence is not advocacy; it is admission.

What the appellees offer instead is a tactical maze — forfeiture, *Barton*, *Rooker-Feldman*, *Colorado River*, a page limit — every doctrine that lets a court avoid the merits, and not one that meets them. This Reply is organized so the Court need not enter that maze. Part One sets out, line by line, the violations the record already establishes and the appellees do not deny. Part Two shows why each threshold argument fails on its own terms. Part Three identifies the specific, reversible errors in the

dismissal. The throughline is simple: a complaint the defendants have admitted under oath cannot be dismissed as "implausible," and a fraud committed through a courthouse is still a fraud.

## <u>PART ONE — THE LEDGER: WHAT THE RECORD ALREADY PROVES</u>

If this were a criminal RICO prosecution, the conduct catalogued below would carry prison time. Two of the enterprise's own agents already received it — property manager Joseph Lentine, sixty-three months in federal prison; bookkeeper Angel Strunk, a guilty plea and restitution. But the architects who built the pipeline and divided the proceeds face only a civil suit — and a District Court dismissed even that before a single deposition. White-collar crime is supposed to carry consequences. Here it has so far carried a profit. The violations below are drawn from the sworn record, the appellees' own filings, and the exhibits to the original complaint. Each is presented for the Court to check against the appellees' briefs — and to confirm, item by item, that not one is denied.

The appellant produced this proof *without any discovery*. The bank records have never been opened. The accounting has never been rendered. And still the record shows the following:

☐ **1. Five years of obfuscation and concealment.**
For five years the receivership operated without producing complete bank records, an executive summary, or a final accounting — obligations mandatory under Ohio Rev. Code § 2735.04.
*Record: March 2, 2026 Mem. § IV.*

☐ **2. False statements to the courts.**
The receiver repeatedly characterized his fee applications as "approved" when they had been challenged by Appellant and by HCLRC itself.
*Record: March 2, 2026 Mem. § V; Receiver's Mem. 2, 11.*

☐ **3. Refusal to produce bank records.**
Six years after appointment, the Konza LLC and Tri-State bank records for the 34-month receivership period have never been independently audited or produced.
*Record: March 2, 2026 Mem. § IV.*

☐ **4. Breach of every fiduciary duty owed to the estate.**
The receiver owed Appellant, as the estate's residual beneficiary, the duties of loyalty, care, and accounting; the record shows each was breached.
*Record: Op. Br. (Boydston breach); R.C. § 2735.04(B).*

☐ **5. A convicted felon allowed to loot $437,000 in rents and deposits.**

Joseph Lentine, installed and retained despite a known record, collected $423,169+ in rent and deposits; 34 consecutive months of deposits went uncollected or unaccounted.

*Record: Op. Br. Step Four; March 2, 2026 Mem..*

☐ **6. Theft of over $60,000 in Community Action Agency funds.**

Lentine fraudulently completed government rental-assistance applications in tenants' names, diverting Community Action Agency money through Appellant's properties.

*Record: Op. Br. Step Four; complaint exhibits.*

☐ **7. Double billing reported to the receiver's own firm — ignored.**

Appellant identified more than $300,000 in double billing across the receiver's two fee applications; the firm took no corrective action.

*Record: March 2, 2026 Mem. § V; R.C. §§ 2913.42, 2913.02.*

☐ **8. The owner written out of the proceeds.**

The sale was structured so surplus contractually reverted to the buyer rather than the owner; Appellant received nothing from a $3.5 million estate.

*Record: Op. Br. Step Five.*

☐ **9. Secret, pre-arranged agreements.**

HCLRC was "actively involved" since early 2022 and its board authorized the acquisition in October 2022 — months before the January 2023 auction which never happened; the City's funding agreement was signed in September 2022.

*Record: Receiver's Mem. 8; HCLRC board minutes.*

☐ **10. The receiver admits he "delivered," not sold, the estate.**

He sought fees "for delivery of the property through the HCLRC Sale" and "to obtain the HCLRC Sale" — the vocabulary of a pre-arranged transfer, not an auction. It was theater.

*Record: Receiver's Mem. 11, 14.*

☐ **11. There was no arm's-length sale.**

Appellant had assembled all 60 properties through arm's-length purchases; the disposition to HCLRC was an engineered transfer, not an arm's-length sale.

*Record: Op. Br. § II.*

☐ **12. A reverse-engineered price based on expenses.**

The receiver testified the price was "calculated to satisfy the expenses of the receivership" — value flowed from his costs, not the market.

*Record: Bench trial (Jan. 2025); Op. Br. § II.*

☐ **13. Lentine confirmed an engineered sale to benefit HCLRC.**

The manager's own sworn account corroborated that the transaction was engineered for HCLRC's benefit.

*Record: Bench trial testimony.*

☐ **14. The Knoppe bid — auction theater.**

Independent bidder Ken Knoppe bid $1,000,000 cash; he was told the City/HCLRC were not interested, his bid amount was known to them, and he was outbid by exactly $200,000, surprised he had 'won.'

*Record: March 2, 2026 Mem. (Knoppe).*

☐ **15. The $200,000 church-stabilization charge on a nonprofit's property.**
637 Steiner Ave. was owned by a nonprofit — not Appellant, and not part of the receivership estate — yet roughly $200,000 in stabilization cost was folded into Appellant's personal foreclosure judgment with no basis to disregard the separate ownership (about 36% of the underlying amount).

*Record: Cross-ref § III; auditor & City records.*

☐ **16. Coordination to jail the property owner, and a City solicitor who built the judgment.**
Assistant City Solicitor Jacklyn Martin built the fines and fees assembled into the foreclosure judgment and stood behind the appointment of Konza as receiver; the receiver's billing records also document twelve communications among Martin, prosecutor Susan Zurface, and Lentine/Strunk during the period they worked to have Appellant jailed.

*Record: March 2, 2026 Mem. 9; RE 17; RE 89.*

☐ **17. A year of wrongful imprisonment.**
False stalking reports by Lentine and Strunk led to Appellant's wrongful imprisonment for approximately one year.

*Record: Am. Compl. PageID 366–367.*

☐ **18. The $25,000 offer to a federal witness (to be established on remand).**
After Lentine's federal arrest, the enterprise offered him $25,000 to sign an NDA and "go away"; his refusal led to the testimony underlying this case. This fact is not yet in the appellate record and is identified here as a matter for discovery and amendment on remand, not as a basis for reversal.

*Record: For development on remand.*

☐ **19. Inflated commission tied to the 2022 disposition.**
Donathan/Keller Williams collected ~$147,401, calculated on a ~$1,470,000 figure inflated by ~$670,000 in judgment amounts — roughly $67,000 above a legitimate commission. The commission was earned on the 2022 sale, within the limitations period.

*Record: Receiver's Mem.; sale records (confirm RE cite).*

☐ **20. The vexatious-litigator "fix".**
When Appellant tried to expose the scheme, the enterprise obtained a VL designation to silence him; the receiver later called it a "fix." The issuing judge recused, finding the procedure 'procedurally unworkable.'

*Record: Receiver's Mem. 13; Luebbers recusal.*

☐ **21. The City funded the VL lawsuit to silence a federal whistleblower.**
Appellant is an FBI whistleblower whose 2020 cooperation produced the federal convictions of Lentine and Strunk. HCLRC board minutes document that the City of Cincinnati funded the

vexatious-litigator lawsuit — a board member called it 'the City legal actions' — used to silence him during the very proceedings in which the fraud was unfolding. A government does not fund the silencing of the witness whose cooperation convicted its own contractors unless it has something to silence.

*Record: HCLRC board minutes; Cross-ref § II.*

☐ **22. HCLRC closed despite knowing the books were false.**
HCLRC's own general counsel documented $423,169 in unaccounted funds and $168,000 in undocumented expenses — and HCLRC closed the purchase anyway.

*Record: Op. Br. timeline; Allesee Feb. 2023 letter.*

☐ **23. The enterprise is still running.**
The receivership remains open; the parties still fight over escrow and the receiver's unpaid invoice; HCLRC holds and leases the former properties — open-ended continuity as this brief is filed.

*Record: Op. Br. § V.*

Twenty-three documented violations. Two federal convictions. One sworn confession in four words — "engineered," "obtain," "delivery," "fix." And, from the appellees, not one denial. That is the record this Court reviews.

## AND THE TWENTY-FOURTH — THE SELF-PARDON

**24. Boydston drafted his own absolution — and the other defendants' — and asked the court to sign it.** After years of the conduct catalogued above, the receiver did not await a judgment of vindication. He drafted one. He moved the court to enter an order forgiving and immunizing his own conduct, and that of the other actors in the scheme, from the very claims Appellant raised — a blanket release prepared by the wrongdoer and presented to the judge for signature. This is the receivership's method in its purest form: the interested party writes the order, and asks the court to make it law.

A man who believes he sold an estate at a fair price in an arm's-length auction does not need a pardon. He asks for one only when he knows what the bank records would show. That a receiver would draft his own immunity — and reach to shield his confederates with it — is not a defense to the fraud alleged. It is the confession completing itself.

*Record: Boydston/Konza Motion for order of immunity and release (drafted by the receiver); cf. blanket-immunity order drafted in A-1905588 that the trial court declined to sign.*

8

Twenty-four entries. Not one denied. And the last of them is the receiver asking this system to forgive him before anyone is permitted to look at the books.

## PART TWO — THE EMPEROR HAS NO CLOTHES: THE APPELLEES' FIFTY PAGES NEVER REACH THE FRAUD

### I.  Subject-Matter Jurisdiction Cannot Be Forfeited — the Appellees' Lead Argument Defeats Itself.

The appellees' most-repeated argument is not *Barton* or *Rooker-Feldman* on the merits — it is forfeiture. But they invoke both as doctrines of *subject-matter jurisdiction,* and subject-matter jurisdiction cannot be forfeited or waived; it may be raised at any stage and must be assured by the court itself. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). They cannot have it both ways: if the doctrines are jurisdictional, their scope is before this Court regardless of how the issue was framed below — and if the absence of jurisdiction may be raised anytime, so may its presence. A pro se litigant's filings are construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and Appellant's opposition squarely placed the engineered sale and the receiver's self-dealing at the center of the case. Forfeiture is a way of not answering. It is not an answer.

### II.  Barton Does Not Shield Acts Reaching Property Outside the Receivership Estate — and the Appellees Quote the Rule That Defeats Them.

The Boydston Defendants treat *Barton* as a blanket immunity. It is not, and this Circuit has drawn the line precisely. *Barton* requires leave of the appointing court before suing a receiver *for acts within the scope of the receivership*; the recognized exception reaches the receiver who deals with property that is not part of the estate. As this Court explained, a receiver "is most commonly found to have acted outside of his authority" in the "actual wrongful seizure of property" not belonging to the estate, and one so wronged may proceed against him without leave. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993); see *In re McKenzie*, 716 F.3d 404, 416–17 (6th Cir. 2013); *Barton v. Barbour*, 104 U.S. 126, 134 (1881).

That is this case. The receiver did not confine himself to the fifty-nine parcels within the receivership estate. He reached property that was never his to administer. The Steiner Avenue church

parcel belonged to a 501(c)(3) nonprofit — not to Appellant and not to the estate — yet its $200,000 stabilization cost was folded into Appellant's personal foreclosure judgment. And 621 Delhi Avenue was never part of the foreclosure action at all, as the District Court itself acknowledged; the receiver's conduct touching that property reached outside the four corners of the appointment. Acts that reach property outside the estate are the paradigm of the *Barton* exception. As to that conduct, no leave of the appointing court was required, and dismissal on *Barton* grounds was error.

The engineered sale of the estate parcels supports Appellant's fraud and RICO theory and falls outside *Rooker-Feldman* under *McCormick*, addressed in Part III. But *Barton* does not save the appellees even on its own terms: a doctrine built on respect for the appointing court's control of its officer cannot shield a receiver who reached beyond the estate, nor one who drafted an order immunizing his own conduct and asked the court to sign it. A receiver who must manufacture his own absolution understood that his exposure lay beyond anything the appointment authorized.

### III. Rooker-Feldman Does Not Bar Conduct-Based Fraud — the Appellees' Own Authority Says So.

All three appellee groups lean on *Rooker-Feldman* and all cite *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006) — the case that defeats them. *McCormick* bars only claims of injury from the state-court judgment itself, not claims that an adverse party committed fraud during the proceeding, even where the misconduct produced the judgment. *Id.* at 392–94; accord *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020). Appellant does not ask this Court to vacate any foreclosure. His injuries are the engineered transfer, the suppressed bid, the silencing order, the looting, and the offer to buy a witness's silence — conduct of the appellees, actionable without disturbing any judgment. A RICO damages award against these racketeers would not reverse one line of any decree.

**IV.  The City Retreats Entirely to Threshold Doctrines — and Adopts the Very Barton and Rooker-Feldman Arguments Part III Defeats.**

The City's thirty-four-page brief is notable for what it does not contain: a defense of the City's conduct. The City does not deny that it assembled the fines and fees that became the foreclosure judgment; does not deny that it stood behind the appointment of Konza as receiver; does not deny that it funded the litigation used to silence Appellant; and does not deny the engineered disposition that followed. It retreats, instead, to abandonment, standing, limitations, and — expressly under Fed. R. App. P. 28(i) — it adopts the Boydston Defendants' *Rooker-Feldman* and *Barton* arguments as its own. That adoption is dispositive in Appellant's favor: the City's jurisdictional defense rises or falls with Boydston's, and for the reasons in Parts II and III, it falls. *McCormick* places conduct-based fraud claims outside *Rooker-Feldman*, and *Barton* does not reach a receiver who dealt with property outside the estate. Appellant briefed both doctrines in his opening brief; neither is abandoned as to the City, because the City chose to litigate this appeal on those same doctrines.

On the municipal-intent holding, the City argues that a governmental entity cannot form the specific intent for a RICO violation. The authorities it cites address whether a *municipal corporation* may itself be named as a culpable RICO "person"; they do not hold that the City's officials are immune, or that the City's conduct is irrelevant to the existence of the enterprise or to the § 1962(d) conspiracy among the other defendants. Appellant's opening brief challenged the dismissal of the RICO claims as a whole and identified the City's role within the enterprise; construed with the liberality owed a pro se litigant, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that challenge reaches the municipal-intent ground. The remedy for any defect in naming the City as the RICO "person" is leave to name the responsible officials — not dismissal of the enterprise and conspiracy claims with prejudice.

The City's conduct ran through identifiable officials. Jacklyn Martin, the Assistant City Solicitor on the foreclosure, built the fines and fees that were assembled into the judgment against Appellant, and

was the City official behind the appointment of Konza, LLC as receiver — the entity whose fee applications Appellant has documented as inflated by more than $300,000, and which Martin's office approved. One charge folded into that judgment was approximately $200,000 for stabilization of the former church at 637 Steiner Avenue — a property owned by a nonprofit, not by Appellant and not part of the receivership estate. A municipal officer who loads a nonprofit's repair bill onto an individual's foreclosure judgment, with no basis to disregard the separate ownership, is not performing a neutral governmental function; that conduct, like the receiver's reach beyond the estate addressed in Part II, lies outside any doctrine of deference.

Terry James, for his part, was the instrument by which the City initiated the code enforcement that fed the same machinery. As to 621 Delhi Avenue, the record reflects that the City moved to clear and condemn the building notwithstanding contemporaneous evidence of the soundness of its original structure: the GEI Engineering Structural Investigation Report identified no structural deficiencies in the original brick portion of the building. The City removed Appellant's two tenants regardless and expended public funds to pay their security deposit and first month's rent elsewhere — an outlay that makes sense only if the object was to empty and condemn a building that was not, in fact, unsafe. Once vacated, the building was stripped of its copper plumbing and wiring, roughly $50,000 in damage, and lost approximately $1,000 per month in rent over the ensuing five years. Appellant acknowledges that the District Court dismissed the 621 Delhi claims on standing and limitations grounds that his opening brief did not separately contest; he does not relitigate those discrete rulings here. He presents this conduct for the purpose it properly serves — as evidence of the City's method within the racketeering pattern that cost him the portfolio he built, an injury he suffered personally and for which he has standing under 18 U.S.C. § 1964(c) independent of any entity that held record title.

Appellant's standing is personal, not derivative. He does not appear on behalf of the property-owning entities, and he does not contend that the words "et al." in his caption made them parties. He contends that he, individually, was injured in his business and property — the assembled Sedamsville enterprise he built and controlled — by a pattern of racketeering directed at that business. That is precisely the injury § 1964(c) makes actionable, and it does not depend on which entity held a given deed.

Finally, as to the individuals the City says should have been named earlier: the conduct of City Prosecutor Susan Zurface is bound up with Appellant's 2021 menacing-by-stalking and protection-order convictions, secured on testimony by Lentine and Strunk — the same actors since convicted in federal court. Appellant recognizes that, under *McDonough v. Smith*, 588 U.S. 109 (2019), a fabricated-evidence claim against a prosecutor does not accrue until the criminal proceeding terminates in the accused's favor, and that those convictions presently stand. He therefore does not press a damages claim against Zurface in this appeal; he expressly preserves it, to be brought if and when those convictions are vacated. Appellant intends to seek a new trial once Lentine and Strunk are restored as parties and discovery opens, and that discovery is expected to reach the extent of Zurface's participation. Martin, by contrast, is named for her documented conduct in assembling the judgment and installing the receiver — conduct for which no prosecutorial immunity applies. Leave to add Martin, and to preserve the Zurface claim for accrual, should be granted on remand.

## V. Keller Williams and Donathan: Their Threshold Defenses Fail, and Donathan's 2022 Conduct Is Timely.

Keller Williams and Donathan rest on four threshold defenses — forfeiture, *Rooker-Feldman*, futility, and the statute of limitations, with *Colorado River* abstention as a fallback. None requires affirmance.

14

On forfeiture, these appellees overstate the record. The Amended Complaint did plead Donathan's role in the enterprise: paragraph 32 identifies "Sales: Donathan artificially reduced values and facilitated [the] engineered sale," and paragraph 58 places "disposition (Donathan/Keller Williams)" within the enterprise's coordinated structure. Construed with the liberality owed a pro se litigant, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), those allegations preserve Donathan's role as the enterprise's disposition arm — the agent who supplied the artificially reduced valuations that made the engineered transfer possible.

On *Rooker-Feldman*, these appellees cite the controlling case against their own position. *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), holds that the doctrine bars only injuries caused by the state-court judgment itself, not injuries caused by an adverse party's conduct during the proceeding. *Id.* at 392–94. Donathan's submission of artificially low valuations is her conduct; a damages judgment against her would not disturb any foreclosure decree. Part III applies in full.

On limitations, these appellees reach for an accrual date that does not fit Donathan. They argue the claims accrued at the receiver's takeover in early 2020 and expired four years later. But Donathan's alleged wrong was not the 2020 takeover — it was her participation in the disposition of the portfolio, which the receiver's own filings place in the 2022–2023 sale to HCLRC. A commission earned on a 2022 transaction, and valuations submitted to enable it, accrued well within four years of the May 2025 filing. The limitations defense the appellees borrow from the 2020 events does not reach the 2022 conduct that is the gravamen of the claim against Donathan.

On the fiduciary-duty count, these appellees may be correct that the Amended Complaint does not plead a fiduciary relationship between Donathan and Appellant with the specificity Ohio law requires — a listing agent retained by the receiver does not necessarily owe the former owner a fiduciary duty. But that defeats only one count. It does not reach the RICO claims, which rest not on any duty

15

Donathan owed Appellant but on her participation in the enterprise's pattern. The proper course as to any inadequately pleaded count is leave to amend, Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962), not dismissal with prejudice before discovery.

Finally, *Colorado River* abstention is not warranted. That doctrine permits a federal court to defer to a parallel state proceeding only in exceptional circumstances; it is not a license to decline a RICO action because related foreclosure litigation exists. The state foreclosure resolved the validity of the liens and the sale; it did not adjudicate — and could not award — the federal RICO remedies Appellant seeks against the enterprise. The proceedings are not parallel in the sense the doctrine requires, and the strong federal interest in adjudicating RICO claims weighs against abstention.

## VI. The Pattern Is Open-Ended and Continuing — Not a Single-Victim Skirmish.

The appellees recite *Moon*, *Vemco*, and *Bachi-Reffitt* as though this were a one-property quarrel. It is not. The conduct spans years and multiple predicate categories — manufactured liens, mail and wire fraud across dozens of parcels, diversion of rents, theft of Community Action funds, a fabricated criminal prosecution producing a year of imprisonment, witness tampering, and the silencing VL "fix." That is continuity under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241–43 (1989) — both a threat of repetition and the enterprise's regular way of doing business. The enterprise has not wound down. Even if the Court harbored doubt, the answer is leave to amend, not dismissal with prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## PART THREE — THE DISTRICT COURT'S REVERSIBLE ERRORS

The appellees' briefs are silent about the fraud. The District Court's order, respectfully, never engaged it. Judge Dlott dismissed the entire case — including the claims involving Community Action fund theft, Lentine, and Strunk — with prejudice, before any discovery, without ruling on the merit-laden matters carried from the state record, including sworn confessions. The errors below are set against the record they overlooked. Each is reviewed de novo. *Booth Fam. Tr. v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011).

### THE ERRORS OF THE DISTRICT COURT, IN CONTRAST TO THE RECORD

| What the District Court Did (Error) | What the Record Shows (Reversible) |
|---|---|
| **1. Dismissed the RICO core under Rooker-Feldman as an attack on the state judgment.** | Appellant attacks the appellees' conduct, not any judgment. McCormick, 451 F.3d at 392–94, places conduct-based fraud claims outside the doctrine. A damages award vacates no decree. |
| **2. Applied Barton to immunize the receiver wholesale.** | Barton's exception, as this Circuit defines it (DeLorean, 991 F.2d at 1241), reaches a receiver who deals with property outside the estate. The receiver reached the Steiner church parcel (a nonprofit's) and 621 Delhi (never in the foreclosure) — and drafted his own immunity order. |
| **3. Found the RICO pattern inadequate as a 'single scheme, single victim.'** | The record shows years of conduct, dozens of parcels, a fabricated prosecution, witness tampering, and a continuing enterprise — open-ended continuity under H.J. Inc., 492 U.S. at 241–43. |
| **4. Dismissed as 'implausible' a complaint the defendant confessed under oath.** | Boydston testified the price was 'calculated to satisfy the expenses of the receivership' and wrote of 'obtain,' 'delivery,' and 'fix.' A confessed allegation is not implausible; Iqbal/Twombly require accepting well-pleaded facts as true. |
| **5. Dismissed WITH PREJUDICE and denied leave to amend as futile.** | The futility ruling rested on the erroneous Rooker-Feldman and pattern holdings. Once those fall, futility falls. Leave is freely given. Rule 15(a)(2); Foman, 371 U.S. at 182. |

| What the District Court Did (Error) | What the Record Shows (Reversible) |
|---|---|
| 6. Faulted the pleading for thinness it had ordered into existence. | The Magistrate compressed a 104-page complaint to 20 pages, then the pleading was dismissed for lacking Rule 9(b) detail. A court cannot order brevity and punish it with dismissal with prejudice. |
| 7. Never ruled on the meritorious matters carried from A-1905588, including the sworn confessions. | The bench-trial admissions and documented double billing were before the court in substance and were never addressed — the heart of the case left unexamined. |
| 8. Dismissed the Community Action, Lentine, and Strunk components without merits analysis. | Two of these actors stand federally convicted (Lentine: 63 months; Strunk: guilty plea, restitution). Their convicted conduct corroborates the enterprise; it is no basis for dismissal. |

Eight errors, each independently sufficient for reversal, together describing a dismissal that never reached the case actually pleaded. The District Court treated a continuing, confessed enterprise as a closed dispute over a single parcel, and closed the courthouse door before discovery could open the bank records that would prove the rest.

## CONCLUSION AND ORDERS REQUESTED ON REMAND

The receivership began as a fraud and continues as one; the only change is that the participants have begun to fight over the proceeds, and in that fight, under oath and in their own filings, they have told the truth — to the point that the receiver now asks the court to pardon him before anyone reads the books. The appellees' fifty pages confirm it by what they refuse to say. This Court should **REVERSE** the judgment of dismissal, **VACATE** the dismissal with prejudice, and remand. Appellant respectfully requests that this Court hold:

- That neither Barton nor Rooker-Feldman deprives the district court of jurisdiction over claims whose source is the appellees' conduct rather than any state-court judgment;

- That the RICO claims are adequately pleaded against all appellees, and that the convicted conduct of Lentine and Strunk, the receiver's sworn confession, and the $25,000 witness-silencing offer establish a pattern and an enterprise;

- That dismissal of the Community Action, Lentine, and Strunk components was error; and

- That leave to amend cannot be denied as futile where the dispositive evidence was never evaluated.

And Appellant requests that, on remand, this Court direct the reassigned district judge to enter the following orders without delay:

ORDER ONE — Reassignment. Remand to a different district judge, given the wholesale dismissal of a confessed enterprise before discovery.

ORDER TWO — Preserve the res. Preserve the escrowed sale proceeds and enjoin further dissipation or sale of the transferred properties under 18 U.S.C. § 1964, pending resolution, so constructive-trust and disgorgement relief remains possible.

ORDER THREE — Special Master and forensic accounting. Appoint a Special Master and forensic accountant to open the receivership bank records, quantify the double billing, account for 34 months of uncollected deposits and $400,000+ in real-estate taxes, and value the estate at the time of sale against the $800,000 paid.

ORDER FOUR — Produce the bank records. Direct production of the Boydston/Konza LLC and Tri-State financial records the receiver has withheld for four-plus years.

ORDER FIVE — Leave to amend. Grant leave to file a RICO complaint of adequate length to satisfy Rule 9(b), and to add the responsible parties — including HCLRC, Jaci Martin, and prosecutor Susan Zurface — as defendants.

This pro se Appellant stands on the law and on a record his adversaries dare not deny. He asks only that the courthouse door, closed before discovery, be reopened — so the bank records may be opened, the accounting rendered, and the looting of a 76-year-old preservationist's life's work answered in the one forum with the power to answer it. If that is not a civil RICO case, Congress wasted its time writing 18 U.S.C. § 1962.

Respectfully submitted,

John Klosterman, Pro Se Appellant

5615 Sidney Road,
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com
Dated: June 5, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the reply-brief limit of Fed. R. App. P. 32(a)(7)(B)(ii). It contains [INSERT WORD COUNT] words, excluding the parts exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b), and is prepared in a proportionally spaced 14-point serif typeface. [CONFIRM FINAL WORD COUNT BEFORE FILING.]

_____

John Klosterman, Pro Se Appellant

**CERTIFICATE OF SERVICE**

I certify that on _____, 2026, I filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit through the CM/ECF system, which will serve all counsel of record — counsel for the Boydston Defendants (Konza, LLC, Richard Boydston, and Dentons Bingham Greenebaum LLP); counsel for FRI Mason, LLC d/b/a Keller Williams Realty and Jennifer Donathan, Jeffrey M. Nye and Paul T. Saba (SSP Law Co., LPA); and counsel for the City of Cincinnati and Terry James.

_____

John Klosterman, Pro Se Appellant

21